IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| BEVERLY THROGMORTON, DELORES HENRY, and PATRICIA PHILLIPS, on behalf of themselves and a class of others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>Lincoln Correctional Center Former Assistant Warden REYNOLDS in his individual capacity, Lincoln Correctional Officers ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, and KRUDUP, and Unknown Illinois Department of Corrections Employees, )<br><br>Defendants. ) | JURY TRIAL DEMANDED |

## **COMPLAINT**

Named Plaintiffs BEVERLY THROGMORTON, DELORES HENRY, and PATRICIA PHILLIPS, on behalf of themselves and a class of others similarly situated, through their attorneys, LOEVY & LOEVY, complaining of Defendants Lincoln Correctional Center Former Assistant Warden REYNOLDS in his individual capacity, Lincoln Correctional Officers ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, and KRUDUP, and Unknown Illinois Department of Corrections Employees, state as follows:

## Introduction

1. This is an action pursuant to 42 U.S.C. § 1983 challenging the unjustified, invasive and humiliating public strip search inflicted upon female inmates at Lincoln Correctional Center ("Lincoln") on March 31, 2011.

2. On the morning of March 31, 2011, Assistant Warden Reynolds, members of Lincoln's "Orange Crush" tactical team, and other Lincoln correctional officers stormed the dormitories of Housing Units 2B and 4B and ordered all of the women to line up by the beds. The officers handcuffed the women and marched them to the gym, yelling obscenities and threats as they walked. Once in the gym, the officers forced the women to stand facing the wall, shoulder to shoulder, for more than one hour. The women were then publicly strip searched in groups of four to six, within plain view of male correctional officers, male cadets, and civilians. As the women were being strip searched, many of the correctional officers made derogatory comments and insulting gestures about the women's body parts and odors. The women were forced to wait until everyone had been strip searched before being permitted to return to their dormitories.

3. The incident lasted nearly four hours and was unsanitary, sexually invasive, degrading, and dehumanizing. The women were never told why they were being searched, and when they inquired, the officers ignored their questions and threatened to punish them if they didn't stay quiet.

4. In fact, this group strip search was a "training exercise" for Illinois Department of Corrections cadets, organized by one or more as-yet unknown Illinois Department of Corrections employees. There was no legitimate purpose for subjecting the women to this public group strip

search – it was unrelated to institutional security, discipline or order, and none of the women searched were suspected of possessing contraband or having committed other prohibited activity.

5. Lincoln Correctional Center had no justification to force the women to submit to this public group strip search or to force them to endure such an unsanitary, humiliating and degrading process. Nevertheless, as-yet unknown Illinois Department of Corrections employees organized and approved of this cadet training exercise, thereby instituting an unconstitutional public group strip search and turning a blind eye to the dehumanizing way in which the search was conducted.

6. Plaintiffs bring this class action to compensate those who were victimized by this public group strip search and, hopefully, to bring change.

## Jurisdiction and Venue

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiffs assert claims under federal law and the state law claim arises out of the same facts as the federal claims.

8. Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

9. Named Plaintiff BEVERLY THROGMORTON is 46 years old. She resides in Decatur, Illinois. At the time of the events at issue in this case, Ms. Throgmorton was incarcerated at Lincoln Correctional Center, and was one of the women in Housing Unit 2B that was forcibly and publicly strip searched on March 31, 2011.

10. Named Plaintiff DELORES HENRY is 57 years old. She is an inmate at Lincoln Correctional Center, and was one of the women in Housing Unit 2B that was forcibly and publicly strip searched on March 31, 2011.

11. Named Plaintiff PATRICIA PHILLIPS is 44 years old. She is an inmate at Lincoln Correctional Center, and was one of the women in Housing Unit 2B that was forcibly and publicly strip searched on March 31, 2011.

12. Lincoln Correctional Center is one of three facilities run by the Illinois Department of Corrections ("IDOC") that houses female inmates. It is a medium security prison and houses approximately one thousand women.

13. On or about March 31, 2011, and at all times relevant to the events at issue in this case, Defendants EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, and as-yet Unknown Correctional Officers were employed by the IDOC and worked as "Orange Crush" tactical team members at Lincoln Correctional Center. As such, these Defendants (hereinafter, the "Orange Crush Defendants") were acting under color of law.

14. On or about March 31, 2011, and at all times relevant to the events at issue in this case, Defendants DALLAS, ANDERSON, KRUDUP, and as-yet Unknown Correctional Officers were employed by the IDOC and worked as correctional officers at Lincoln Correctional Center. As such, these Defendants (hereinafter, the "Defendant Officers") were acting under color of law.

15. On or about March 31, 2011, and at all times relevant to the events at issue in this case, Defendant REYNOLDS was employed by the IDOC in the capacity of Assistant Warden of Lincoln Correctional Center. As such, Defendant Reynolds was acting under color of law.

16. On or about March 31, 2011, and at all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees at Lincoln Correctional Center were in charge of permitting the IDOC cadets to perform this public group strip search at Lincoln. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

17. On or about March 31, 2011, and at all times relevant to the events at issue in this case, one or more as-yet Unknown IDOC employees were in charge of organizing and arranging for the IDOC cadets to perform the public group strip search at Lincoln Correctional Center. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

### Facts Relating to the Named Plaintiffs

18. On the morning of March 31, 2011, Named Plaintiffs Throgmorton, Henry, and Phillips (the "Named Plaintiffs") were in Housing Unit 2B at Lincoln Correctional Center when the Orange Crush Defendants, Defendants Reynolds and Dowless, and IDOC cadets stormed the Unit. Immediately thereafter, the Defendants and IDOC cadets stormed Housing Unit 4B.

19. The Defendants walked through the Units yelling and banging their batons, and ordered all the inmates to the dormitory. Once in the dormitory, the Defendants searched the women, handcuffed their hands behind their backs, and marched them to the day room. During the walk, several of the Orange Crush Defendants screamed obscenities at the women, called them derogatory names, and threatened to place them in segregation if they disobeyed. There was no need for this abuse, as the women were all compliant.

20. From the day room, the handcuffed women were taken to the gym, where the remaining Defendant Officers were waiting. The Orange Crush Defendants, the Defendant

Officers and Defendant Reynolds forced the women to stand shoulder to shoulder facing the gym wall for approximately one hour. At no point did any of the Defendants tell Plaintiffs Throgmorton, Henry, Phillips, or any of the other women what was happening, or why. Instead, they continued to scream at and threaten the women.

21. Forced to stand for such a lengthy duration under stress and intimidation, some of the women experienced seizures; others soiled themselves.

22. When approximately one hour had passed, the female Defendants began to take groups of women, ranging in size from four to six women, into two rooms abutting the gym: the bathroom and the beauty shop. The bathroom was open to the gym, giving the male Defendants and the male IDOC cadets clear views of the women. The beauty shop had mirrored walls and a door that remained open for the duration of the strip searches, subjecting the naked women to stares from the correctional officers, civilian employees and cadets who walked by. The beauty shop also had a window that faced the outdoors, permitting anyone outside to observe the women inside. The civilian beauty shop supervisor was never told to leave, and remained in the shop for the duration of the strip searches.

23. Named Plaintiff Henry was among the groups of women taken into the bathroom for public group strip searches. In the bathroom, groups of four to six women were forced to remove their clothing and stand in a line. Due to the number of inmates, cadets, and correctional officers occupying the cramped space, the naked women were forced to stand nearly shoulder to shoulder. The women on their menstrual cycles were told to take out their tampons, but were not permitted to do so privately, so they had to remove them in plain view of the other inmates, correctional officers, and cadets. Because they were not allowed to use the toilets, the women were forced to discard their used tampons into a communal garbage bin.

6

24. Standing close together, shoulders touching, the women were forced to raise their breasts, lift their hair, and cough and squat several times. They were then forced to turn their backsides to the cadets, bend over and spread open their buttocks and vaginas. As they did this, male cadets and correctional officers could, and did, watch them from the gym. Some of the Defendant Officers and Orange Crush Defendants made insulting and derogatory comments about the women's odors and body parts.

25. Throughout the strip searches, the women were forced to stand barefoot on the bathroom floor, which was dirty with menstrual blood and other bodily fluids. The women's clothes were discarded on that floor during the searches. At no point did any Defendant or other IDOC employee make any attempt to clean the area where the women were standing.

26. Women on their menstrual cycle were not given tampons after the strip searches. Rather, they were forced to put their clothing back on with glib suggestions that they use toilet paper if necessary. Many of these women got blood on their legs, feet, and clothes. They were then sent back to the gym to wait until everyone had been strip searched.

27. Ms. Henry had been strip searched on numerous occasions at Lincoln Correctional Center prior to the March 31, 2011 public group strip search. Those strip searches were conducted privately and efficiently.

28. Named Plaintiffs Throgmorton and Phillips were among the women taken to the beauty shop for public group strip searches. One or more Defendants and several IDOC cadets were in the beauty shop, along with the civilian beauty shop supervisor. The Defendants chatted with the beauty shop supervisor and paid little attention to the strip searches taking place before them.

29. In the beauty shop, the IDOC cadets initially ordered the women, one at a time, to stand in front of the other women and remove all of their clothes. In front of the other inmates and the civilian beauty shop supervisor, and in plain view of the window to the outdoors, Ms. Throgmorton was forced to lift her breasts, raise her hair, hold her buttocks open with her hands and squat and cough three times. Ms. Throgmorton was then forced to stand with her backside facing the inmates, bend over, and spread her buttocks and vagina, in plain view of the other women and any passersby. Ms. Throgmorton was kept naked for 15 to 20 minutes.

30. During her term of incarceration at Lincoln, Ms. Throgmorton was strip searched regularly for her job. Ms. Throgmorton estimates that she was strip searched between 150 and 200 times. Those strip searches were conducted professionally, privately, and quickly.

31. When one or more of the Defendants commented that the individual strip searches were taking too long, the IDOC cadets began to strip search the women in the beauty shop in groups. Ms. Phillips was ordered to disrobe and stand in a group with four other women, nearly touching. Ms. Phillips was subjected to the same strip search process as Ms. Throgmorton: the breast raising, the squat and coughs, and the bending over to expose her private parts. At some point, Ms. Phillips observed one of the Defendant Officers put a bandana over her nose, gesturing rudely about the women's odors. When it was over, the women were sent back to the gym to wait.

32. Ms. Phillips had experienced other routine strip searches at Lincoln Correctional Center. Those strip searches were conducted privately and professionally.

33. After everyone had been strip searched, the women were finally dismissed. The line to the showers that afternoon was twenty women long. The women were later told that the incident had been a training exercise for the IDOC cadets.

34. Throughout the incident, Ms. Throgmorton, Ms. Phillips, Ms. Henry, and the other women were forced to endure humiliation, degradation, and threats. These highly intrusive strip searches afforded no privacy to the women; were conducted under unsanitary, harassing and humiliating conditions; and were carried out by the Defendants in an abusive manner.

35. There was no valid justification for these public group strip searches. They were not driven by concerns regarding Lincoln's institutional security or employee or inmate safety, and there was no suspicion that any of the women in Housing Units 2B and 4B were participating in illicit conduct requiring further investigation, discipline or punishment.

36. The public group strip searches inflicted on the women at Lincoln are the most intrusive types of searches the government can conduct, and the manner in which they were conducted was degrading, dehumanizing, and humiliating.

37. All of the Defendants, from Assistant Warden Reynolds to the individual correctional officers, participated in and were present for the entire duration of the incident.

38. Ms. Throgmorton, Ms. Phillips, Ms. Henry, and others promptly wrote grievances about the strip searches. Their grievances were left in the grievance boxes for days, even as the Named Plaintiffs repeatedly asked Defendants and other correctional officers to attend to them. Although the grievances were finally taken out of the boxes, in the nearly one year that has passed, not a single woman has received a response to her grievance.

## Class Allegations

39. Lincoln Correctional Center, located in Logan County, Illinois, is one of three prisons within the Illinois Department of Corrections that houses female inmates.

40. Named Plaintiffs THROGMORTON, HENRY and PHILLIPS seek to pursue claims both for themselves and for a class of others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(3).

41. Named Plaintiffs THROGMORTON, HENRY and PHILLIPS seek to represent a class consisting of the following people: All individuals who were subjected to the March 31, 2011 public group strip search at Lincoln Correctional Center.

42. The individuals in this class are so numerous that joinder of all members is impractical. The Named Plaintiffs estimate that at least one hundred women are members of the Class.

43. There are questions of law and fact common to the claims of the Class. Among these common questions are:

   a. Whether the public strip search was an unreasonable search in violation of the Fourth and/or the Eighth Amendments;

   b. Whether the use of the public strip search and/or the way in which it was conducted violates the inmates' rights under the Fourth and/or Eighth Amendments;

   c. Whether the responsible IDOC employees instituted, condoned, and/or were deliberately indifferent to the risk of the violations of the Class members' rights; and

   d. Whether the responsible IDOC employees at Lincoln Correctional Center failed in their supervisory responsibilities to have avoided and/or put a stop to the violations of the Class members' rights.

44. The claims of the Named Plaintiffs are typical of the claims of the Class. The Named Plaintiffs were inmates at Lincoln Correctional Center and were subjected to the March 31, 2011 public group strip search. They seek to prove that the public group strip search violated

their rights under the Fourth, Fourteenth, and Eighth Amendments, and that each of the Defendants is liable as a result.

45. The Named Plaintiffs will fairly and adequately represent the interests of the Class. They have retained skilled counsel with experience in class action, constitutional, and strip search litigation.

46. The questions of law and fact common to the Class predominate over any individual issues. In addition, a class action would be the most fair and efficient method of adjudicating the Class members' claims.

## Count I – Claims Pursuant to 42 U.S.C. § 1983
## Violations of the Fourth & Fourteenth Amendments

47. Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

48. There was no valid penological justification for the March 31, 2011 public group strip search.

49. By instituting and continuing the public group strip search described in fuller detail above, Defendants subjected Named Plaintiffs and the members of the Class to an unreasonable search in violation of the Fourth Amendment.

50. As a direct result of the express decisions of the as-yet Unknown Illinois Department of Corrections employees in charge of organizing, approving, and/or arranging for this public group strip search, the Named Plaintiffs and members of the Class were subjected to unreasonable body searches that were demeaning, dehumanizing, and humiliating. Furthermore, these as-yet unknown Defendants had supervisory responsibility to terminate the public group strip search and failed to do so.

WHEREFORE, Named Plaintiffs THROGMORTON, HENRY and PHILLIPS respectfully demand judgment on behalf of themselves and the Class, awarding costs, fees,

attorneys' fees, actual damages, and any other appropriate relief against Defendants REYNOLDS, ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, and KRUDUP, and the as-yet Unknown Illinois Department of Corrections Employees. Named Plaintiffs THROGMORTON, HENRY and PHILLIPS further demand an award of punitive damages on behalf of themselves and the Class against Defendants REYNOLDS, ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, and KRUDUP, and the as-yet Unknown Illinois Department of Corrections Employees.

## Count II – Claims Pursuant to 42 U.S.C. § 1983
## Violations of the Eighth Amendment

51. Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

52. There was no valid penological justification for the March 31, 2011 public group strip search.

53. By instituting and continuing the group strip search described in fuller detail above, Defendants subjected Named Plaintiffs and the members of the Class to punishment in violation of the Eighth Amendment.

54. As described more fully above, the Defendants conducted the public group strip search in a harassing manner intended to humiliate the inmates.

55. As a direct result of the express decisions of the as-yet Unknown Illinois Department of Corrections employees in charge of organizing, approving, and/or arranging for this public group strip search, the Named Plaintiffs and members of the Class were subjected to unreasonable body searches that were demeaning, dehumanizing, and humiliating. Furthermore, these as-yet unknown Defendants had supervisory responsibility to terminate the public group strip search and failed to do so.

WHEREFORE, Named Plaintiffs THROGMORTON, HENRY and PHILLIPS respectfully demand judgment on behalf of themselves and the Class, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendants REYNOLDS, ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, and KRUDUP, and the as-yet Unknown Illinois Department of Corrections Employees. Named Plaintiffs THROGMORTON, HENRY and PHILLIPS further demand an award of punitive damages on behalf of themselves and the Class against Defendants REYNOLDS, ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, and KRUDUP, and the as-yet Unknown Illinois Department of Corrections Employees.

**Count III – State Law Claim: Indemnification**

56. Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

57. By all of the above, Defendants REYNOLDS, ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, and KRUDUP, and as-yet Unknown Illinois Department of Corrections Employees, subjected Named Plaintiffs THROGMORTON, HENRY and PHILLIPS, and the members of the Class, to the public group strip search described above.

58. These persons' actions and omissions were taken within the scope of their employment for the Illinois Department of Corrections.

59. Pursuant to 5 ILCS 350/2, the State of Illinois is therefore required to indemnify a judgment awarded in this case against Defendants REYNOLDS, ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, and KRUDUP, and as-yet Unknown Illinois Department of Corrections Employees.

WHEREFORE, Named Plaintiffs THROGMORTON, HENRY and PHILLIPS respectfully demand judgment on behalf of themselves and the members of the Class, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against the State of Illinois.

### Further Request for Relief

WHEREFORE, Plaintiffs respectfully request that this Court certify this case as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and appoint the undersigned as class counsel pursuant to Rule 23(g).

### Jury Demand

Named Plaintiffs THROGMORTON, HENRY and PHILLIPS respectfully demand a trial by jury on behalf of themselves and the Class Members on all issues so triable.

                                              RESPECTFULLY SUBMITTED,

                                              /s/ Michael Kanovitz
                                              Attorneys for Plaintiffs

Arthur Loevy
Michael Kanovitz
Jon Loevy
Rachel Steinback
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312) 243-5900