E-FILED
Monday, 31 March, 2014  12:48:43 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| BEVERLY THROGMORTON, DELORES HENRY, PATRICIA PHILLIPS, JACQUELINE HEGWOOD, SANDRA BROWN, and IESHIA BROWN, on behalf of themselves and a class of others similarly situated, ) ) ) ) ) ) ) | Case No. 3:12-cv-3087 |
| ) | |
| Plaintiffs, ) ) | Judge Richard Mills |
| v. ) ) | |
| MELODY HULETT, in her official capacity as Warden of Lincoln Correctional Center, Lincoln Correctional Center Former Assistant Warden REYNOLDS in his individual capacity, Lincoln Correctional Officers ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, KRUDUP, KRULL, M. BROOKS, BUTLER, LAST, BENDER, BOCH, BROWN, DILLEY, HINTON, JOHNER, JOHNSON, KENNEY, KILLAM, MATHIAS, RICKORD, SPANIOL, VAN MIDDLESWORTH, and WARDEN, IDOC Employees RENEE HATFIELD and ALAN PASLEY, IDOC Chief of Operations EDDIE JONES, ANGELA LOCKE, in her official capacity as Warden of Logan Correctional Center, FELIPE ZAVALA, in his official capacity as Manager of Staff Development and Training at the Illinois Department of Corrections Training Academy, JOSEPH YURKOVICH, in his official capacity as IDOC Chief of Operations, and Unknown Illinois Department of Corrections Employees, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |

## SIXTH AMENDED COMPLAINT

Named Plaintiffs BEVERLY THROGMORTON, DELORES HENRY, PATRICIA

PHILLIPS, JACQUELINE HEGWOOD, SANDRA BROWN, and IESHIA BROWN, on behalf

of themselves and a class of others similarly situated, through their attorneys, LOEVY &
LOEVY, complaining of Defendants MELODY HULETT, in her official capacity as Warden of
Lincoln Correctional Center, Lincoln Correctional Center Former Assistant Warden
REYNOLDS in his individual capacity, Lincoln Correctional Officers ANDERSON, DALLAS,
EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, KRUDUP,
KRULL, M. BROOKS, BUTLER,  LAST, BENDER, BOCH, BROWN, DILLEY, HINTON,
JOHNER, JOHNSON, KENNEY, KILLAM, MATHIAS, RICKORD, SPANIOL, VAN
MIDDLESWORTH, and WARDEN, IDOC Employees RENEE HATFIELD and ALAN
PASLEY, IDOC Chief of Operations EDDIE JONES, ANGELA LOCKE, in her official
capacity as Warden of Logan Correctional Center, FELIPE ZAVALA, in his official capacity as
Manager of Staff Development and Training, JOSEPH YURKOVICH, in his official capacity as
IDOC Chief of Operations, and Unknown Illinois Department of Corrections Employees, state as
follows:

## **Introduction**

1.      This is an action pursuant to 42 U.S.C. § 1983 challenging the unjustified,
invasive and humiliating public strip search inflicted upon female inmates at Lincoln
Correctional Center ("Lincoln") on March 31, 2011.

2.      On the morning of March 31, 2011, Assistant Warden Reynolds, members of
Lincoln's "Orange Crush" tactical team, and other Lincoln correctional officers stormed the
dormitories of Housing Units 2B and 4B and ordered all of the women to line up by the beds.
The officers handcuffed the women and marched them to the gym, yelling obscenities and
threats as they walked.  Once in the gym, the officers forced the women to stand facing the wall,
shoulder to shoulder, for more than one hour.  The women were then publicly strip searched in

2

groups of four to six, within plain view of male correctional officers, male cadets, and civilians. As the women were being strip searched, many of the correctional officers made derogatory comments and insulting gestures about the women's body parts and odors. The women were forced to wait until everyone had been strip searched before being permitted to return to their dormitories.

3.     The incident lasted nearly four hours and was unsanitary, sexually invasive, degrading, and dehumanizing. The women were never told why they were being searched, and when they inquired, the officers ignored their questions and threatened to punish them if they didn't stay quiet.

4.     In fact, this group strip search was a "training exercise" for Illinois Department of Corrections cadets, organized by Defendants Hulett, Reynolds, Jones, Hatfield, Pasley, and as-yet unknown Illinois Department of Corrections employees. There was no legitimate purpose for subjecting the women to this public group strip search – it was unrelated to institutional security, discipline or order, and none of the women searched were suspected of possessing contraband or having committed other prohibited activity.

5.     Lincoln Correctional Center had no justification to force the women to submit to this public group strip search or to force them to endure such an unsanitary, humiliating and degrading process. Nevertheless, Defendants organized and approved of this cadet training exercise, thereby instituting an unconstitutional public group strip search and turning a blind eye to the dehumanizing way in which the search was conducted.

6.     Plaintiffs bring this class action to compensate those who were victimized by this public group strip search and, hopefully, to bring change.

**Jurisdiction and Venue**

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as

Plaintiffs assert claims under federal law.

8.      Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims

in this case all occurred in this judicial district.

**Parties**

9.      Named Plaintiff BEVERLY THROGMORTON is 48 years old.  She resides in

Bloomington, Illinois.  At the time of the events at issue in this case, Ms. Throgmorton was

incarcerated at Lincoln Correctional Center, and was one of the women in Housing Unit 2B that

was forcibly and publicly strip searched on March 31, 2011.

10.     Named Plaintiff DELORES HENRY is 57 years old.  She resides in Peru, Illinois.

At the time of the events at issue in this case, Ms. Henry was incarcerated at Lincoln

Correctional Center, and was one of the women in Housing Unit 2B that was forcibly and

publicly strip searched on March 31, 2011.

11.     Named Plaintiff PATRICIA PHILLIPS is 44 years old.  She resides in

Washington, Illinois.  At the time of the events at issue in this case, Ms. Phillips was incarcerated

at Lincoln Correctional Center, and was one of the women in Housing Unit 2B that was forcibly

and publicly strip searched on March 31, 2011.

12.     Named Plaintiff JACQUELINE HEGWOOD is 49 years old.  She resides in

Chicago, Illinois.  At the time of the events at issue in this case, Ms. Hegwood was incarcerated

at Lincoln Correctional Center, and she was one of the women in Housing Unit 2B at Lincoln

Correctional Center that was forcibly and publicly strip searched on March 31, 2011.  In 2013,

Ms. Hegwood was transferred to Logan Correctional Center because Lincoln Correctional Center

was being converted to an all-male facility.  On October 31, 2013, while incarcerated at Logan Correctional Center, Ms. Hegwood was forcibly and publicly strip searched during another "cadet training exercise".

13.     Named Plaintiff SANDRA BROWN is an inmate at Logan Correctional Center. On October 31, 2013, Ms. Brown was forcibly and publicly strip searched during a "cadet training exercise".

14.     Named Plaintiff IESHIA BROWN is an inmate at Logan Correctional Center.  On March 31, 2011, Ms. Brown was an inmate at Lincoln Correctional Center, and she was one of the women in Housing Unit 2B who was forcibly and publicly strip searched.  In 2013, Ms. Brown was transferred to Logan Correctional Center because Lincoln Correctional Center was converted to an all-male facility.  On October 31, 2013, while incarcerated at Logan Correctional Center, Ms. Brown was forcibly and publicly strip searched during another "cadet training exercise".

15.     On or about March 31, 2011, and until approximately March 2013, Lincoln Correctional Center was one of three facilities run by the Illinois Department of Corrections ("IDOC") that housed female inmates.  At all times relevant to the events at issue in this case, it was a medium security prison and housed approximately one thousand women.

16.     On or about March 31, 2011, and at all times relevant to the events at issue in this case, Defendants EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, KRULL, and as-yet Unknown Correctional Officers were employed by the IDOC and worked as "Orange Crush" tactical team members at Lincoln Correctional Center.  As such, these Defendants (hereinafter, the "Orange Crush Defendants") were acting under color of law.

17.     On or about March 31, 2011, and at all times relevant to the events at issue in this case, Defendants DALLAS, ANDERSON, KRUDUP, M. BROOKS, BUTLER, LAST, BENDER, BOCH, BROWN, DILLEY, HINTON, JOHNER, JOHNSON, KENNEY, KILLAM, MATHIAS, RICKORD, SPANIOL,  VAN MIDDLESWORTH, WARDEN, and as-yet Unknown Correctional Officers were employed by the IDOC and worked as correctional officers.  As such, these Defendants (hereinafter, the "Defendant Officers") were acting under color of law.

18.     On or about March 31, 2011, and at all times relevant to the events at issue in this case, Defendant REYNOLDS was employed by the IDOC in the capacity of Assistant Warden of Lincoln Correctional Center.  As such, Defendant Reynolds was acting under color of law.

19.     On or about March 31, 2011, and at all times relevant to the events at issue in this case, Defendants HATFIELD and PASLEY, IDOC Chief of Operations EDDIE JONES, Defendants REYNOLDS, Lincoln Correctional Center Warden HULETT, and one or more as-yet Unknown IDOC employees at Lincoln Correctional Center were in charge of permitting the IDOC cadets to perform this public group strip search at Lincoln.  These Defendants were employed by IDOC and, as such, were acting under color of law.

20.     On or about March 31, 2011, and at all times relevant to the events at issue in this case, Defendants HATFIELD and PASLEY, IDOC Chief of Operations EDDIE JONES, Defendant REYNOLDS, Lincoln Correctional Center Warden HULETT, and as-yet Unknown IDOC employees were in charge of organizing and arranging for the IDOC cadets to perform the public group strip search at Lincoln Correctional Center.  These Defendants were employed by IDOC and, as such, were acting under color of law.

21.     On or about March 31, 2011, and at all times relevant to the events at issue in this case, Defendant MELODY HULETT was the Warden of Lincoln Correctional Center. Defendant Hulett is sued in her official capacity for the challenged acts and omissions.

22.     As of March 2013, Logan Correctional Center is one of four facilities run by the Illinois Department of Corrections that houses female inmates.  It is a multi-level security prison and houses approximately two thousand women.  Defendant ANGELA LOCKE is the Acting Warden of Logan Correctional Center and is sued in her official capacity for the challenged acts and omissions.

23.     Defendant FELIPE ZAVALA is employed by the IDOC as the IDOC Training Academy Manager of Staff Development and Training and is sued in his official capacity for the challenged acts and omissions.

24.     Defendant JOSEPH YURKOVICH is employed by IDOC as the Chief of Operations and is sued in his official capacity for the challenged acts and omissions.

**Facts Relating to the Named Plaintiffs**

25.     On the morning of March 31, 2011, Named Plaintiffs Throgmorton, Henry, Phillips, Hegwood, and Ieshia Brown (the "Named Plaintiffs") were in Housing Unit 2B at Lincoln Correctional Center when the Orange Crush Defendants, Defendants Reynolds and Dowless, and IDOC cadets stormed the Unit.  Immediately thereafter, the Defendants and IDOC cadets stormed Housing Unit 4B.

26.     The Defendants walked through the Units yelling and banging their batons, and ordered all the inmates to the dormitory.  Once in the dormitory, the Defendants searched the women, handcuffed their hands behind their backs, and marched them to the day room.  During the walk, several of the Orange Crush Defendants screamed obscenities at the women, called

7

them derogatory names, and threatened to place them in segregation if they disobeyed.  There
was no need for this abuse, as the women were all compliant.

27.     From the day room, the handcuffed women were taken to the gym, where the
remaining Defendant Officers were waiting.  The Orange Crush Defendants, the Defendant
Officers and Defendant Reynolds forced the women to stand shoulder to shoulder facing the gym
wall for approximately one hour.  At no point did any of the Defendants tell Plaintiffs
Throgmorton, Henry, Phillips, Hegwood, or any of the other women what was happening, or
why.  Instead, they continued to scream at and threaten the women.

28.     Forced to stand for such a lengthy duration under stress and intimidation, some of
the women experienced seizures; others soiled themselves.

29.     When approximately one hour had passed, the female Defendants began to take
groups of up to seven women at a time into either of two rooms abutting the gym: the bathroom
and the beauty shop.  The bathroom was open to the gym, giving the male Defendants and the
male IDOC cadets clear views of the women.  The beauty shop had mirrored walls and a door
that remained open for the duration of the strip searches, subjecting the naked women to stares
from the correctional officers, civilian employees and cadets who walked by.  The beauty shop
also had a window that faced the outdoors, permitting anyone outside to observe the women
inside.  The civilian beauty shop supervisor was never told to leave, and remained in the shop for
the duration of the strip searches.

30.     Named Plaintiffs Henry, Hegwood, and Brown were among the groups of women
taken into the bathroom for public group strip searches.  In the bathroom, the groups of women
were forced to remove their clothing and stand in a line.  Due to the number of inmates, cadets,
and correctional officers occupying the cramped space, the naked women were forced to stand

8

nearly shoulder to shoulder.  The women on their menstrual cycles were told to take out their

tampons, but were not permitted to do so privately, so they had to remove them in plain view of

the other inmates, correctional officers, and cadets.  Because they were not allowed to use the

toilets, the women were forced to discard their used tampons into a communal garbage bin.

31.     Standing close together, shoulders touching, the women were forced to raise their

breasts, lift their hair, and cough and squat several times.  They were then forced to turn their

backsides to the cadets, bend over and spread open their buttocks and vaginas.  As they did this,

male cadets and correctional officers could, and did, watch them from the gym.  Some of the

Defendant Officers and Orange Crush Defendants made insulting and derogatory comments

about the women's odors and body parts.

32.     Throughout the strip searches, the women were forced to stand barefoot on the

bathroom floor, which was dirty with menstrual blood and other bodily fluids.  The women's

clothes were discarded on that floor during the searches.  At no point did any Defendant or other

IDOC employee make any attempt to clean the area where the women were standing.

33.     Women on their menstrual cycle were not given tampons after the strip searches.

Rather, they were forced to put their clothing back on with glib suggestions that they use toilet

paper if necessary.  Many of these women got blood on their legs, feet, and clothes.  They were

then sent back to the gym to wait until everyone had been strip searched.

34.     Ms. Henry, Ms. Hegwood, and Ms. Brown had been strip searched on numerous

occasions at Lincoln Correctional Center prior to the March 31, 2011 public group strip search.

Those strip searches were conducted privately and efficiently, and there is no valid reason for

failing to conduct the March 31, 2011 strip searches in that manner.

35.    Named Plaintiffs Throgmorton and Phillips were among the women taken to the beauty shop for public group strip searches.  One or more Defendants and several IDOC cadets were in the beauty shop, along with the civilian beauty shop supervisor, and they carried on casual conversations amidst the humiliating public group strip searches.

36.    In the beauty shop, the IDOC cadets initially ordered the women, one at a time, to stand in front of the other women and remove all of their clothes.  In front of the other inmates and the civilian beauty shop supervisor, and in plain view of the window to the outdoors, Ms. Throgmorton was forced to lift her breasts, raise her hair, hold her buttocks open with her hands and squat and cough three times.  Ms. Throgmorton was then forced to stand with her backside facing the inmates, bend over, and spread her buttocks and vagina, in plain view of the other women and any passersby.  Ms. Throgmorton was kept naked for 15 to 20 minutes.

37.    During her term of incarceration at Lincoln, Ms. Throgmorton was strip searched regularly for her job.  Ms. Throgmorton estimates that she was strip searched between 150 and 200 times.  Those strip searches were conducted professionally, privately, and quickly.

38.    When one or more of the Defendants commented that the individual strip searches were taking too long, the IDOC cadets began to strip search the women in the beauty shop in groups.  Ms. Phillips was ordered to disrobe and stand in a group with four other women, nearly touching.  Ms. Phillips was subjected to the same strip search process as Ms. Throgmorton: the breast raising, the squat and coughs, and the bending over to expose her private parts.  At some point, Ms. Phillips observed one of the Defendant Officers put a bandana over her nose, gesturing rudely about the women's odors.  When it was over, the women were sent back to the gym to wait.

10

39.     Ms. Phillips had experienced other routine strip searches at Lincoln Correctional Center. Those strip searches were conducted privately and professionally.

40.     After everyone had been strip searched, the women were finally dismissed. The line to the showers that afternoon was twenty women long. The women were later told that the incident had been a training exercise for the IDOC cadets.

41.     Throughout the incident, Ms. Throgmorton, Ms. Phillips, Ms. Henry, Ms. Hegwood, Ms. Brown, and the other women were forced to endure humiliation, degradation, and threats. These highly intrusive strip searches afforded no privacy to the women; were conducted under unsanitary, harassing and humiliating conditions; and were carried out by the Defendants in an abusive manner.

42.     There was no valid justification for these public group strip searches. They were not driven by concerns regarding Lincoln's institutional security or employee or inmate safety, and there was no suspicion that any of the women in Housing Units 2B and 4B were participating in illicit conduct requiring further investigation, discipline or punishment.

43.     The public group strip searches inflicted on the women at Lincoln are the most intrusive types of searches the government can conduct, and the manner in which they were conducted was degrading, dehumanizing, and humiliating.

44.     All of the Defendants named in their individual capacities, from Assistant Warden Reynolds to the individual correctional officers, participated in and were present for the entire duration of the incident.

45.     Ms. Throgmorton, Ms. Phillips, Ms. Henry, Ms. Hegwood, Ms. Brown, and others promptly wrote grievances about the strip searches. Their grievances were left in the grievance boxes for days, even as the Named Plaintiffs repeatedly asked Defendants and other

correctional officers to attend to them.  Although the grievances were finally taken out of the

boxes, in the nearly one year that has passed, not a single woman has received a response to her

grievance.

46.    In approximately March 2013, all of the female inmates at Lincoln Correctional

Center were transferred out of the facility and it was converted to an all-male prison.  The

women, including Ms. Brown and Ms. Hegwood, were primarily transferred to nearby Logan

Correctional Center.

47.    On the morning of October 31, 2013, a virtually identical "cadet training

exercise" occurred at Logan Correctional Center.  Named Plaintiffs Jacqueline Hegwood, Sandra

Brown, Ieshia Brown, and more than one hundred and fifty other female inmates at Logan were

subjected to degrading and humiliating public group strip searches in full view of male

corrections officers, cadets, and other individuals not involved in the strip searches.

48.    All of the "cadet training exercises" are organized and approved by the IDOC

Training Academy and its Manager of Staff Development and Training, the IDOC Chief of

Operations, and the Warden of the facility.

## Class Allegations

49.    Named Plaintiffs THROGMORTON, HENRY, PHILLIPS, HEGWOOD,

BROWN, and BROWN (the "Named Plaintiffs") seek to pursue claims both for themselves and

for a class of others similarly situated.  Named Plaintiffs believe the class should be organized

into the following two subclasses.

50.    Class I consists of:

All individuals who were subjected to the March 31, 2011 public group strip search at
Lincoln Correctional Center.

Class I brings claims pursuant to the Fourth Amendment, the Fourteenth Amendment, and the

Eighth Amendment.  Named Plaintiffs THROGMORTON, HENRY, PHILLIPS, HEGWOOD,

and BROWN seek to represent this class.

51.     The members of Class I include inmates who are presently in-custody as well as

former Lincoln Correctional Center inmates who were released at some time after March 31,

2011.  Because the claims of the in-custody class members will be analyzed through the lens of

the Prison Litigation Reform Act, it is appropriate to divide Class I into two separate subclasses:

> Subclass A consists of:  All individuals who were subjected to the March 31, 2011 public
> group strip search at Lincoln Correctional Center, and who have remained in the custody
> of the Illinois Department of Corrections since that time.

> Subclass B consists of:  All individuals who were subjected to the March 31, 2011 public
> group strip search at Lincoln Correctional Center, and who were subsequently released
> from the custody of the Illinois Department of Corrections.

52.     The individuals in Class I are so numerous that joinder of all members is

impractical.  The Named Plaintiffs estimate that more than 150 women are members of Class I.

53.     There are questions of law and fact common to the claims of the Class.  Among

these common questions are:

a.     Whether the public strip search was an unreasonable search in violation of the

Fourth and/or the Eighth Amendments;

b.     Whether the use of the public strip search and/or the way in which it was

conducted violates the inmates' rights under the Fourth and/or Eighth Amendments;

c.     Whether the responsible IDOC employees instituted, condoned, and/or were

deliberately indifferent to the risk of the violations of the Class members' rights; and

d.      Whether the responsible IDOC employees at Lincoln Correctional Center failed in their supervisory responsibilities to have avoided and/or put a stop to the violations of the Class members' rights.

54.      The claims of the Named Plaintiffs are typical of the claims of Class I.  The Named Plaintiffs were inmates at Lincoln Correctional Center and were subjected to the March 31, 2011 public group strip search.  Named Plaintiffs THROGMORTON, HENRY, PHILLIPS, and HEGWOOD are no longer in IDOC custody, and will represent the interests of Subclass A. Named Plaintiff BROWN remains within the custody of IDOC and will represent the interests of Subclass B.  Collectively, they seek to prove that the public group strip search violated their rights under the Fourth, Fourteenth, and Eighth Amendments, and that each of the Defendants is liable as a result.

55.      The Named Plaintiffs will fairly and adequately represent the interests of Class I. They have retained skilled counsel with experience in class action, constitutional, and strip search litigation.

56.      The questions of law and fact common to Class I predominate over any individual issues.  In addition, a class action would be the most fair and efficient method of adjudicating the Class members' claims.

57.      Named Plaintiffs seek to pursue an injunctive relief claim both for themselves and for a class of others similarly situated.

58.      Class II consists of:

All women who are currently incarcerated at Logan Correctional Center, and all women who will be incarcerated at Logan Correctional Center in the future.

14

Class II brings claims pursuant to the Fourth Amendment, the Fourteenth Amendment, and the Eighth Amendment in order to secure injunctive relief.  Named Plaintiffs BROWN and BROWN seek to represent this class.

59.     The individuals in Class II are so numerous that joinder of all members is impractical.  Named Plaintiffs BROWN and BROWN estimate that approximately 2,000 women are members of Class II.

60.     There are questions of law and fact common to the claims of the Class.  Among these common questions are:

a. Whether the public strip search of the type used during the cadet training exercises at Lincoln Correctional Center and Logan Correctional Center was an unreasonable search in violation of the Fourth and/or the Eighth Amendments;

b. Whether the use of the public strip search and/or the way in which it was conducted violates the inmates' rights under the Fourth and/or Eighth Amendments;

c. Whether the responsible IDOC employees instituted, condoned, and/or were deliberately indifferent to the risk of the violations of the Class members' rights;

d. Whether the responsible IDOC employees failed in their supervisory responsibilities to have avoided and/or put a stop to the violations of the Class members' rights; and

e. Whether there is a cognizable danger that Plaintiffs will be subject to recurring violations of their constitutional rights in the manner described herein.

61.     The claims of Named Plaintiffs BROWN and BROWN are typical of the claims of Class II.

62.     Named Plaintiffs BROWN and BROWN will fairly and adequately represent the interests of Class II.  They have retained skilled counsel with experience in class action, constitutional, and strip search litigation.

63.     The questions of law and fact common to Class II predominate over any individual issues.  In addition, a class action would be the most fair and efficient method of adjudicating the Class members' claims.

### Count I – Claims Pursuant to 42 U.S.C. § 1983
### Violations of the Fourth & Fourteenth Amendments

64.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

65.     There was no valid penological justification for the March 31, 2011 public group strip search.

66.     By instituting and continuing the public group strip search described in fuller detail above, Defendants subjected Named Plaintiffs and the members of Class I to an unreasonable search in violation of the Fourth Amendment.

67.     As a direct result of the express decisions of the Defendants who were in charge of organizing, approving, and/or arranging for this public group strip search, the Named Plaintiffs and members of Class I were subjected to unreasonable body searches that were demeaning, dehumanizing, and humiliating.  Furthermore, these Defendants had supervisory responsibility to terminate the public group strip search and failed to do so.

WHEREFORE, Named Plaintiffs THROGMORTON, HENRY, PHILLIPS, HEGWOOD, and BROWN respectfully demand judgment on behalf of themselves and Class I, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendants REYNOLDS, ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, KRUDUP, KRULL, M. BROOKS, BUTLER, LAST,

BENDER, BOCH, BROWN, DILLEY, HINTON, JOHNER, JOHNSON, KENNEY, KILLAM, MATHIAS, RICKORD, SPANIOL,  VAN MIDDLESWORTH, and WARDEN, IDOC Employees RENEE HATFIELD and ALAN PASLEY, IDOC Chief of Operations EDDIE JONES, and the as-yet Unknown Illinois Department of Corrections Employees.  Named Plaintiffs THROGMORTON, HENRY, PHILLIPS, and HEGWOOD further demand an award of punitive damages on behalf of themselves and Class I against Defendants REYNOLDS, ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, KRUDUP, KRULL, M. BROOKS, BUTLER, LAST, BENDER, BOCH, BROWN, DILLEY, HINTON, JOHNER, JOHNSON, KENNEY, KILLAM, MATHIAS, RICKORD, SPANIOL, VAN MIDDLESWORTH, and WARDEN, IDOC Employees RENEE HATFIELD and ALAN PASLEY, IDOC Chief of Operations EDDIE JONES, and the as-yet Unknown Illinois Department of Corrections Employees.

### Count II – Claims Pursuant to 42 U.S.C. § 1983
### Violations of the Eighth Amendment

68.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

69.     There was no valid penological justification for the March 31, 2011 public group strip search.

70.     By instituting and continuing the group strip search described in fuller detail above, Defendants subjected Named Plaintiffs and the members of Class I to punishment in violation of the Eighth Amendment.

71.     As described more fully above, the Defendants conducted the public group strip search in a harassing manner intended to humiliate the inmates.

72.     As a direct result of the express decisions of Defendants who were in charge of organizing, approving, and/or arranging for this public group strip search, the Named Plaintiffs

and members of Class I were subjected to unreasonable body searches that were demeaning, dehumanizing, and humiliating.  Furthermore, these Defendants had supervisory responsibility to terminate the public group strip search and failed to do so.

WHEREFORE, Named Plaintiffs THROGMORTON, HENRY, PHILLIPS, HEGWOOD, and BROWN respectfully demand judgment on behalf of themselves and the Class, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against Defendants REYNOLDS, ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, KRUDUP, KRULL, M. BROOKS, BUTLER, LAST, BENDER, BOCH, BROWN, DILLEY, HINTON, JOHNER, JOHNSON, KENNEY, KILLAM, MATHIAS, RICKORD, SPANIOL,  VAN MIDDLESWORTH, and WARDEN, IDOC Employees RENEE HATFIELD and ALAN PASLEY, IDOC Chief of Operations EDDIE JONES, and the as-yet Unknown Illinois Department of Corrections Employees.  Named Plaintiffs THROGMORTON, HENRY, PHILLIPS, and HEGWOOD further demand an award of punitive damages on behalf of themselves and the Class against Defendants REYNOLDS, ANDERSON, DALLAS, EDMONSON, JOHNSON, LEONETTI, DOWDY, PFEIFFER, CRAIG, SLATER, KRUDUP, KRULL, M. BROOKS, BUTLER, LAST, BENDER, BOCH, BROWN, DILLEY, HINTON, JOHNER, JOHNSON, KENNEY, KILLAM, MATHIAS, RICKORD, SPANIOL, VAN MIDDLESWORTH, and WARDEN, IDOC Employees RENEE HATFIELD and ALAN PASLEY, IDOC Chief of Operations EDDIE JONES, and the as-yet Unknown Illinois Department of Corrections Employees.

## Count III – Injunctive Relief

73.     The Illinois Department of Corrections permits and often conducts public group strip searches during "cadet training exercises" in the manner described herein.  Indeed, since the

initial filing of this lawsuit, and following the transfer of the female inmates from Lincoln to Logan, a virtually identical public group strip search took place during a "cadet training exercise" at Logan Correctional Center.  There is thus a cognizable danger that Plaintiffs will be subjected to recurrent violations of their constitutional rights in the manner described herein.  An injunction prohibiting such strip searches is an appropriate judicial remedy to prevent the recurrence of these improper procedures.

WHEREFORE, Named Plaintiffs BROWN and BROWN, on behalf of themselves and Class II, respectfully demand that the Court enjoin Defendants LOCKE, YURKOVICH, and ZAVALA, in their official capacities, from continuing the acts and practices set forth in paragraphs 25-48, and for any other and further equitable relief as it may deem just and proper.

### Further Request for Relief

WHEREFORE, Plaintiffs respectfully request that this Court certify this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) for injunctive relief and (b)(3) for damages, and appoint the undersigned as class counsel pursuant to Rule 23(g).

### Jury Demand

Named Plaintiffs THROGMORTON, HENRY, PHILLIPS, HEGWOOD, BROWN, and BROWN respectfully demand a trial by jury on behalf of themselves and the Class Members on all issues so triable.

RESPECTFULLY SUBMITTED,


/s/  Rachel Steinback
Attorneys for Plaintiffs

Arthur Loevy
Michael Kanovitz
Jon Loevy
Rachel Steinback
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312) 243-5900