UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BEVERLY THOGMORTON, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | 12-CV-3087 |
| RUSSELL REYNOLDS, et al., | ) | |
| Defendants. | ) | |

## ORDER

RICHARD MILLS, U.S. District Judge.

Plaintiffs in this class action—former and current female inmates—seek damages for a group strip search conducted in Lincoln Correctional Center on March 31, 2011, as part of a cadet training exercise. The plaintiffs also seek to put a stop to the practice.

Before the Court are several motions filed by Defendants: Defendants' motion for summary judgment; Defendants' motion to strike Plaintiffs' response thereto; and, Defendants' motion to strike the report and testimony of Plaintiffs' expert.

## I.     Defendants' Motion to Strike Plaintiffs' Summary Judgment Response

Defendants' move to strike Plaintiffs' response on the grounds that Plaintiffs' additional proposed facts are too numerous and many of Plaintiffs' proposed facts are disputed or immaterial to the limited nature of Defendants' motion for summary judgment. Defendants ask the Court to strike the entire response or strike certain paragraphs and give Defendants additional time to file a reply.

The Court has reviewed Plaintiffs' response to the summary judgment motion and does not find the response improper.  That some of Plaintiffs' proposed facts are disputed and immaterial to deciding Defendants' summary judgment motion is not grounds for striking the response and does not preclude a reply.

An extension to file a reply is also not warranted. Defendants do not adequately explain why they did not file a timely reply, particularly given the limited nature of their summary judgment motion.  Further, granting an extension would only unnecessarily delay the trial.  It is clear from the record that disputed questions of fact exist for trial.

## II. Defendants' Motion for Summary Judgment

Plaintiffs state in footnote one of their response to the summary judgment motion that they are no longer pursuing their claims against the following 15 Defendants: M. Brooks, Last, Bender, Boch, Brown, Dilley, Hinton, Johner, Kenney, Killam, Mathias, Rickord, Van Middlesworth, the current Warden of Lincoln Correctional Center,[1] and Eddie Jones. Summary judgment will be granted to these Defendants.

This appears to leave the following 17 Defendants sued for damages in their individual capacities: Hulett, Reynolds, Dawdy,[2] Craig, Edmonson, Johnson,[3] Leonetti, Pfeiffer, Slater, Krull, Dallas, Anderson, Crudup,[4] Butler, Spaniol, Hatfield, and Pasley. (Pls.' Resp. d/e 113, footnote 1 and p. 51.) Defendants Yurkovich, Zavala and Locke were sued in their official capacities only for purposes of injunctive relief. (Sixth Amended Complaint, d/e 83.) According to Defendants, Yurkovich and Locke are now replaced by Christine

---

[1] Plaintiffs say only "Warden" in their footnote, but they appear to mean the current Warden of Lincoln Correctional Center. The current Warden of Lincoln Correctional Center was not involved in the strip search and is not an appropriate party for injunctive relief because the female inmates are now housed in Logan Correctional Center, not Lincoln Correctional Center.

[2] This Defendant's name is spelled "Dowdy" in the sixth amended complaint, but from Defendants' Answer the correct spelling appears to be "Dawdy."

[3] Two "Johnsons" are listed in the Sixth Amended Complaint. Whether there are two separate Johnson Defendants is not clear.

[4] This Defendant's name is spelled "Krudup" in the sixth amended complaint, but from Defendants' Answer the correct spelling appears to be "Crudup."

Brannon (the current warden of Logan) and Michael Atchison (the current IDOC Deputy Chief of Operations) pursuant to Federal Rule of Civil Procedure 25(d).

Moving to the merits of Defendants' summary judgment motion, the following facts are recounted in the light most favorable to Plaintiffs. On March 31, 2011, female inmates in two housing units in Lincoln Correctional Center were strip-searched as part of a cadet training exercise. According to Plaintiffs, they were required to stand naked, nearly shoulder to shoulder with 8-10 other inmates in a room where they could be seen by others not conducting the searches, including male officers. Menstruating inmates had to remove their tampons and sanitary pads in front of others, were not given replacements, and many got blood on their bodies and clothing and blood on the floor. The naked inmates had to stand barefoot on a floor dirty with menstrual blood and raise their breasts, lift their hair, turn around, bend over, spread their buttocks and vaginas, and cough. (Defs.' Proposed Undisp. Facts 56-62, 73, 74, d/e 113.)

Defendants wisely do not dispute that Plaintiffs' descriptions support an Eighth Amendment claim if true. A strip search

conducted in an unnecessarily humiliating manner for no legitimate reason can "'involve the unnecessary and wanton infliction of pain' in violation of the Eighth Amendment." *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015); *Mays v. Springborn,* 575 F.3d 643, 649 (7th Cir. 2009)(The Eighth Amendment prohibits strip searches conducted "in a harassing manner intended to humiliate and cause psychological pain."); *Calhoun v. DeTella,* 319 F.3d 936, 939 (7th Cir. 2003)("the Eighth Amendment prohibits unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'")(quoted cite omitted).

The individual capacity Defendants argue instead that the evidence does not support a finding that they were personally responsible for the manner in which the strip search was conducted.  A government employee must be personally responsible for the alleged constitutional violation in order to be liable under 42 U.S.C. § 1983.  *Kuhn v. Goodlow,* 678 F.3d 552, 556 (7th Cir. 2012)( "'An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.'")(quoted cite omitted); *Chavez v. Illinois State Police,*

251 F.3d 612, 651 (7th Cir. 2001)(no respondeat superior liability under § 1983).

However, Defendants' proposed undisputed facts do not preclude a finding of personal responsibility against any Defendants, even with no response from Plaintiffs.  Only a few of Defendants' proposed facts address personal involvement, and even those few facts address only a few of the Defendants.  According to Defendants' proposed facts relevant to personal responsibility, the Warden decided which units to search; Defendants Pasley and Hatfield accompanied the cadets; Defendant Pasley was not aware of complaints about the search; Defendant Pasley remained in the living units during the shakedowns; and Defendant Reynolds "was in and out of the housing units."  (Defs.' proposed undisputed facts 9, 10, 20, 32.)  None of these proposed facts demonstrates the *absence* of a material dispute over each Defendants' knowledge, authority, and participation in the incident.

Further, Defendants' personal responsibility argument avoids confronting evidence in Plaintiffs' favor.  *Goka v. Bobbitt*, 862 F.2d 646, 650 (7th Cir. 1988)(Defendants bear the burden of demonstrating that no material factual disputes exist by pointing

out evidence favorable to them as well as addressing known evidence contrary to their position.)  Defendants Hulett (the Warden) and Reynolds (the Assistant Warden of Operations) arguably knew of and approved of, facilitated, or turned a blind eye to the manner in which the strip search was conducted.  *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir.2012)(a supervisor is personally responsible for constitutional violations if the supervisor knew of the violation and facilitated, approved, condoned, or turned a blind eye)**.**  Looking at the evidence in the light most favorable to Plaintiffs, Defendant Hulett ordered and was ultimately in charge of the shakedown.  (Hulett Dep. p. 76, 78.) Defendant Reynolds also instructed and oversaw the cadets and, if Plaintiffs are believed, called the prisoners "bitches."  (Reynolds' Dep. pp. 85-86; Ieshia Brown Aff. para. 8.)  Both Hulett and Reynolds were arguably in a position to intervene and turned a blind eye to how the searches were carried out.

     Defendants Pasley and Hatfield, the training instructors, were involved in the training and oversight of the cadets, according to Plaintiffs.  Pasley knew that strip searches were occurring and his presence on the housing units allows an inference that he heard the

derogatory comments and threats made to Plaintiffs by the officers on those units.  (Hulett Dep. p.77, 79; Pasley Dep. pp. 6, 7.)  Hatfield was present in the gym and observed at least some of the strip searches.  (Hatfield Dep. pp. 15-19.)  The rest of the individual Defendants, according to Plaintiffs, were directly involved in the unconstitutional aspects of the searches or were present and failed to intervene.  For example, Defendants Dawdy, Johnson, Leonetti, Edmonson, Craig, Slater, Pfieiffer, and Krull were part of the tactical team.  (Thogmorton Aff. paras. 3, 20; Iesha Brown Aff. para. 2).  Defendant Crudup was present during the strip searches and made rude comments.  (Crudup Aff. para. 18.)  Defendants Dallas, Anderson, and Butler also played a part in the training exercise.  (Reynolds Dep. pp. 42-43; Pfieffer's Resp. to Pls.' first interrogatory 2; Pfieffer's Resp. to Pls.' first interrogatory 2).

In short, the extent of these Defendants' knowledge and participation in the strip search are disputed questions of fact on this record.  Defendants' personal responsibility argument may ultimately prevail at trial, but that is for the jury to decide.

Defendants next argue that Plaintiffs' Fourth Amendment claim is not legally viable under Seventh Circuit case precedent.

The Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979) held that visual cavity searches of pretrial detainees after contact visits did not violate the Fourth Amendment, "assuming for present purposes that inmate, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections facility . . . ." 441 U.S. at 558. *Bell*, however, involved pretrial detainees, not convicted prisoners.

After *Bell,* the Seventh Circuit recognized in some cases a convicted inmate's limited constitutional privacy right in his or her body. In *Forbes v. Trigg*, 976 F.2d 308 (7th Cir. 1992), the Seventh Circuit upheld a habeas challenge to an inmate's discipline for refusing to provide urine sample but acknowledged that "[u]rine tests are searches for Fourth Amendment purposes, and prison inmates retain protect privacy rights in their bodies, although these rights do not extend to their surroundings." 976 F.2d at 312-13. In *Canedy v. Boardman,* 16 F.3d 183 (7th Cir. 1993), the Seventh Circuit reversed the dismissal at the notice pleading stage of a claim by a male prisoner that female guards strip searched him and regularly observed his naked body. The *Canedy* Court acknowledged a convicted inmate's constitutional right to privacy in

his or her body, a right to be balanced against legitimate prison interests. 16 F.3d at 185, 188 (characterizing the adoption of reasonable measures to protect an inmate's bodily privacy as a "constitutional mandate.")

Two years after *Canedy*, in *Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995), the Seventh Circuit upheld the dismissal at the notice pleading stage of a pretrial detainee male prisoner's claim challenging cross-sex monitoring. The Court in *Johnson* stated that "[w]e think it best to understand the references to 'privacy' in *Canedy* and similar cases as invocations of the eighth amendment's ban on cruel and unusual punishments." 69 F.3d at 147. The majority opinion based its conclusion in part on *Hudson v. Palmer*, 468 U.S. 517 (1984), a Supreme Court case which held that prisoners have no Fourth Amendment right of privacy in their cells. 468 U.S. at 536. Judge Posner dissented in part in *Johnson*, apparently agreeing that the claim fell under the Eighth Amendment but arguing that dismissal was premature and that liability could exist under the deliberate indifference standard of the Eighth Amendment. 69 F.3d at 155-56 ("If prison officials know that they are subjecting male prisoners to gratuitous humiliation,

the infliction is deliberate, even if the officials are not actuated by any punitive purpose . . . .")(Judge Poser, concurring and dissenting).

A few years after *Johnson,* in *Peckham v. Wisconsin Dept. of Corrections*, 141 F.3d 694 (7th Cir. 1998), the Seventh Circuit upheld strip searches of a female inmate under the Eighth Amendment, and, arguably, also under the Fourth Amendment. The majority in *Peckham* wrote:

> So, does a prison inmate enjoy any protection at all under the Fourth Amendment . . .?  Although we acknowledge the tension between *Johnson* and *Canedy*, we think the answer is "yes," but we hasten to add that given the considerable deference prison officials enjoy to run their institutions it is difficult to conjure up too many real-life scenarios where prison strip searches of inmates could be said to be unreasonable under the Fourth Amendment.

141 F.3d at 697.  The Court also stated that "regardless of how one views the Fourth Amendment in this context, it is the Eighth Amendment that is more properly posed to protect inmates from unconstitutional strip searches, notably when their aim is punishment, not legitimate institutional concerns."  141 F.3d at 697.  Judge Easterbrook concurred separately, characterizing the above indented quote as dicta

and arguing that *Johnson* required strip searches of convicted inmates to be analyzed under Eighth Amendment, not the Fourth Amendment. Id at 698-99. Later in an unpublished opinion in a different case, the Court characterized *Peckham* as holding that "prisoner strip-search claims are better addressed under the Eighth Amendment." *Payette v. Hoenisch*, 284 Fed.Appx. 348 * 5 (7th Cir. 2008)(not reported in Fed. Rptr).

Defendants do not address the Seventh Circuit's most recent discussion of privacy rights of convicted prisoners in their bodies: *King v. McCarty*, 781 F.3d 889 (7th Cir. 2015). Plaintiffs address the case in a notice of supplemental authority filed on March 30, 2016.

In *King*, a per curiam decision, the Seventh Circuit held that the Eighth Amendment, not the Fourth Amendment, applied to a convicted prisoner's claim that he had to wear a "see-through jumpsuit that exposed his genitals and buttocks while he was transported from a county jail to a state prison." 781 F.3d at 892. The *King* Court reasoned:

> The Supreme Court has adhered to the importance of the subjective element of Eighth Amendment claims by convicted prisoners like King, and the Court has never

> extended Fourth Amendment protection to a prisoner's claim like King's. In light of those facts, we do not believe we should expand the scope of Fourth Amendment protection to strip-searches of convicted prisoners to create an Eighth–Amendment–light standard in which the subjective purposes of prison officials would not be relevant. We conclude that King has failed to state a claim upon which relief may be granted under the Fourth Amendment.

781 F.3d at 900-901. The Court acknowledged that "case law indicates that the Fourth Amendment protects, to some degree, prisoners' bodily integrity against unreasonable intrusions *into* their bodies[,]" but pointed out that the plaintiff in *King* had alleged "only a prolonged form of visual search in which he was not touched." 781 F.3d at 900 (emphasis in original). The Court in *King* characterized the statements in *Peckham* as dicta and seemed to confirm *Johnson's* interpretation that *Canedy's* statements about privacy invoked the Eighth Amendment, not the Fourth Amendment.

Judge Hamilton wrote separately in *King* to urge that the Fourth Amendment claim proceed for further development. Judge Hamilton noted the tension between cases in the Seventh Circuit like *Johnson, Canedy,* and *Forbes,* a tension also recognized in the majority opinion in *King.* 781 F.3d at

900-904. Judge Hamilton argued that, "we should recognize that the Fourth Amendment's focus on objective reasonableness may preserve some outer limit on the actions of even well-meaning prison administrators where such bodily searches are involved, while it also requires courts to give substantial—but not complete—deference to the warden's judgment." 781 F.3d at 904. Judge Hamilton wrote that "a single panel obviously cannot resolve this tension in our circuit's case law." 781 F.3d at 903. Petition for rehearing en banc was denied, with Judge Hamilton concurring but noting that the tension about the Fourth Amendment's application to convicted prisoners would need to be addressed at some point. *King v. McCarty*, Appeal No. 13-1769 (7th Cir., 6/1/15 order denying rehearing en banc). The case settled on remand. *King v. McCarty*, 11-CV-1126 (C.D. Ill.)

    Plaintiffs argue that *King* is distinguishable because in this case Plaintiffs had to remove tampons, bend over, and subject their anal and vaginal cavities to inspection. However, Plaintiffs do not appear to allege that officers touched Plaintiffs bodies during the search. The search was limited to visual

inspection of the naked body as the Court understands the claim, just like in *King* and *Johnson*. Plaintiffs point to no controlling case in the Seventh Circuit in which a strip search claim by a convicted prisoner—strip search meaning a visual inspection of the naked body, including the anus and/or vaginal cavities—actually proceeded to disposition under the Fourth Amendment rather than the Eighth Amendment. In the Court's opinion, a change in the law would be needed for Plaintiffs to pursue a Fourth Amendment claim. This might be the case to push for a change, but that is a decision for the Seventh Circuit Court of Appeals, not this Court. The Fourth Amendment claim will be dismissed.[5]

Defendants next argue that no injunctive relief is warranted because IDOC policy specifically prohibits how the search was allegedly conducted here, except for allowing group strip searches in general under certain circumstances. However, the IDOC allowance of mass group strip searches is one of the main focuses of Plaintiffs' request for injunctive

---

[5] Concepts of "reasonableness" may still be relevant to the subjective and objective inquiries under the Eighth Amendment. An unreasonable response to a known, substantial risk of serious harm or an objectively serious condition of confinement would support liability under the Eighth Amendment.

relief.  (Pls.' Sixth Amended Complaint, Count III; Pls.' Resp. p. 113.)  Further, Plaintiffs assert that the IDOC written policies differ from the actual practice which the policymakers knowingly allow to occur. At this point, the Court cannot conclude that no possibility of injunctive relief exists.[6]

### III.  Defendants' Motion to Strike the Report and Testimony of Plaintiffs' Expert

Plaintiffs proffer Wendy Still as an expert, whom Defendants appear to agree is qualified "to testify about general correctional standards with respect to strip searches." (Defs. Mot. Strike Pls.' Expert, p. 5.)  The problem is Ms. Still's expert report, which Defendants argue, and the Court agrees, contains many conclusions that belong to the jury.  (Still Expert Report, d/e 110-24.)

Ms. Still's report reads like a closing argument.  She accepts all of Plaintiffs' contentions as true and concludes that the March 2011 strip search was abusive, without legitimate purpose, and caused severe pain and suffering.  A long section recounts the Defendants' subjective intent, what actually happened during the

---

[6] Another case is pending about an allegedly similar group strip search of female inmates at Logan Correctional Center on October 31, 2013.  *Brown v. Locke,* 15-CV-1447 (C.D. Ill.)

strip search, and what kind of harm Plaintiffs suffered. Her general knowledge of correctional standards is admissible, but not her opinions on what the jury must ultimately decide. Ms. Still's report will not be admitted, and she will be limited to testifying about correctional standards regarding strip searches. Admissible testimony would include issues that are relevant to Plaintiffs' claims such as generally accepted correctional standards for the planning, overseeing, and conducting of strip searches, but would not include the resolution of disputed questions of fact. Plaintiffs appear to agree. (Pls. Resp., d/e 118, pp. 1, 9-13) If the parties seek further guidance, they may make an offer of proof regarding Ms. Still's testimony outside of the jury.

### IV.   Conclusion

Material disputes of fact remain for the jury on Plaintiffs' Eighth Amendment claim, but Plaintiffs' Fourth Amendment claim is not viable under *King* and *Johnson.* The possibility of injunctive relief cannot be ruled out at this time. Plaintiffs' expert may testify, but only as to correctional standards regarding strip searches, not to disputed questions of fact.

*Ergo*,

Defendants' Motion to Strike Plaintiff's Response is DENIED (114).

Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART (102).  Summary judgment is granted to the following Defendants:   M. Brooks, Last, Bender, Boch, Brown, Dilley, Hinton, Johner, Kenney, Killam, Mathias, Rickord, Van Middlesworth, the current Warden of Lincoln Correctional Center, and Eddie Jones.  Summary judgment is granted to Defendants on Plaintiff's Fourth Amendment claim (Count I of the Sixth Amended Complaint).  Summary judgment is otherwise denied.

Defendants' Motion to Strike the report and testimony of Plaintiff's expert is GRANTED IN PART and DENIED IN PART (115).

CHRISTINE BRANNON, in her official capacity, is SUBSTITUTED for Defendant Locke pursuant to Federal Rule of Civil Procedure 25(d).

MICHAEL ATCHISON, in his official capacity, is SUBSTITUTED for Defendant Yurkovich pursuant to Federal Rule of Civil Procedure 25(d).

The CLERK IS DIRECTED TO TERMINATE the following Defendants:  M. Brooks, Last, Bender, Boch, Brown, Dilley, Hinton, Johner, Kenney, Killam, Mathias, Rickord, Van Middlesworth, the current Warden of Lincoln Correctional Center, Eddie Jones, and the "Unknown Illinois Department of Corrections Employees."[7]

The CLERK IS DIRECTED TO UPDATE THE DOCKET to substitute Christine Brannon for Defendant Locke and Michael Atchison for Defendant Yurkovich.

IT IS SO ORDERED.

ENTER: April 14, 2016

FOR THE COURT:

                                      **s/Richard Mills**
                                        Richard Mills
                                 United States District Judge

---

[7] No additional Defendants have been identified, and the time has passed to do so.