IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| DELORES HENRY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | No.   12-3087-SEM |
| | ) | |
| MELODY HULETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT

Defendants, Peter Leonetti, Courtney (Krull) Edwards, Abraham Anderson, and Dominique Crudup, by and through their attorney, Kwame Raoul, Attorney General of the State of Illinois, hereby move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### Introduction

This case was brought on behalf of a class of current and former inmates who allege they were subjected to mass strip searches at Lincoln Correctional Center that violated their civil rights. The plaintiffs claimed violations of their Eighth and Fourth Amendment rights and sought both injunctive relief and damages. The defendants moved for summary judgment, arguing among other things that the Fourth Amendment did not apply to strip searches of prison inmates. The Court, after a thorough analysis of the existing case law, agreed and dismissed the Fourth Amendment claims. The parties proceeded to trial on plaintiffs' claims under the Eighth Amendment. The jury found in favor of all defendants. The plaintiffs appealed the Court's ruling on the Fourth Amendment and that decision was affirmed by the Seventh Circuit. The plaintiffs then petitioned for a rehearing *en banc*. The petition was granted and the Seventh Circuit reversed the decisions of this Court and the original panel and found that inmates are protected from unreasonable searches under the Fourth Amendment. In so doing, the Court

noted it was explicitly overturning existing authority in this area of the law. Because the defendants did not include a qualified immunity argument in their motion for summary judgment, the Seventh Circuit remanded the case for further proceedings. The Court further noted that the affirmative defense of qualified immunity was still available on remand. The defendants now move for summary judgment on the issue of qualified immunity based on the Court's announcement of a change in the applicable law after the defendants took the actions challenged in this suit.

## Undisputed Material Facts[1]

1. Three plaintiffs, Throgmorton, Henry and Phillips, filed the complaint in this matter on March 20, 2012. In that complaint, they challenged a large-scale series of strip searches conducted at Lincoln Correctional Center on March 31, 2011. The plaintiffs sought to certify a class of all inmates subjected to the searches. (Doc. 1)

2. The plaintiffs, all women, allege the strip searches were conducted in an abusive manner. This included performing the searches where males and other inmates could view the unclothed women, subjecting the women to vulgar and threatening language, forcing the women to remain standing for prolonged periods of time, and performing the searches in an unsanitary manner. The searches were conducted as part of a training exercise for cadets. (Doc. 1)

3. The plaintiffs brought claims under both the Fourth and Eighth Amendments for damages. (Doc. 1)

4. On June 22, 2012, the plaintiffs filed their First Amended Complaint, asserting the same claims as in their original complaint.[2] (Doc. 17)

---

[1] These facts are presented in the light most favorable to the plaintiff and are undisputed only for the purposes of this motion. These facts may be disputed if this matter proceeds to trial.

[2] Plaintiffs' original complaint included a count seeking to compel indemnification of the defendants. That count was not included in the amended complaint and is not relevant to this motion.

5. On August 24, 2012, the plaintiffs filed their Second Amended Complaint, asserting the same claims and adding a claim for injunctive relief. (Doc. 25)

6. On February 28, 2013, the plaintiffs filed their Third Amended Complaint, asserting the same claims as in their Second Amended Complaint. This version added plaintiff Hegwood and some defendants, and clarified that the plaintiffs were seeking certification of two classes, one for damages and one for injunctive relief. (Doc. 34)

7. On March 26, 2013, plaintiffs filed their Fourth Amended Complaint, asserting the same claims as the previous two versions and correcting the first name of one defendant. (Doc. 41)

8. On July 29, 2013, the Court granted certification of a class, including two subclasses, of all individuals who were subjected to strip searches on March 31, 2011 at Lincoln Correctional Center. (Doc. 68)

9. On February 17, 2014, plaintiffs filed their Fifth Amended Complaint, reasserting the existing claims, adding plaintiff S. Brown and adding allegations of another set of strip searches conducted at Logan Correctional Center on October 31, 2013. (Doc. 73)

10. On March 31, 2014, plaintiffs filed their Sixth Amended Complaint, reasserting the same claims and adding plaintiff I. Brown. (Doc. 83)

11. In every answer by a defendant against whom damages were sought, those defendants asserted the affirmative defense of qualified immunity. (Docs. 14, 19, 29, 39, 64, 67, 75 and 84)

12. On October 21, 2014, the Court granted certification of a second class consisting of all current and future inmates of Logan Correctional Center for purposes of injunctive relief. (Doc. 87).

13. On November 30, 2015, the defendants moved for summary judgment. They argued that existing case law, specifically *Hudson v. Palmer*, 104 S.Ct. 3194 (1984) and *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995) established that prison inmates have no Fourth

Amendment protection against searches. They further argued that the record was insufficient to support a violation of the Eighth Amendment and that there was no ongoing violation of the plaintiffs' rights that would justify injunctive relief. (Docs. 102, 103)

14. On April 14, 2016, the Court granted in part defendants' motion for summary judgment, relying on *Johnson* and *King v. McCarty*, 781 F.3d 889 (7th Cir. 2015). The Court found that claims related to visual strip searches of inmates were not cognizable under existing case law and a change in the law was needed before the plaintiffs could pursue such a claim. The Court granted the motion for summary judgment as to the Fourth Amendment claim and denied the remainder of the motion. (Doc. 122)

15. The case proceeded to trial on plaintiffs' Eighth Amendment claims on November 14, 2016. The jury found in favor of all defendants. (Doc. 175)

16. Plaintiffs appealed the Court's decision to grant summary judgment against them on the Fourth Amendment claim. (Doc. 186)

17. The Court of Appeals affirmed this Court's grant of summary judgment on plaintiffs' Fourth Amendment claim. Relying on *Hudson* and *King*, the Court found that prison strip searches fell outside of that amendment's protection.

18. Plaintiffs petitioned for a rehearing *en banc*. The Court granted that petition on December 18, 2019. (Appellate Doc. 78)

19. The Seventh Circuit, *en banc*, vacated the opinion of the original panel and found that the Fourth Amendment does protect inmates from unreasonable strip searches. In so doing, the Court explicitly overruled its earlier decisions in *King* and *Johnson* that found the Fourth Amendment inapplicable to visual inspections of inmates. In overruling those cases, the Court changed the way the Supreme Court's decision in *Hudson* is interpreted and applied in this circuit. (Doc. 209)

20. The Seventh Circuit did not rule on whether the defendants are entitled to qualified immunity for the plaintiffs' Fourth Amendment claim because that issue was not raised in the defendants' motion for summary judgment. However, the Court stated that affirmative defense is still available for the defendants to raise in a subsequent motion. (Doc. 209)

## Argument

**The defendants are entitled to qualified immunity for the plaintiffs' Fourth Amendment claim.**

On March 31, 2011, when the defendants conducted the searches at issue in this case, the settled law in this circuit was that the Fourth Amendment did not protect prison inmates from searches. The defendants performed their official duties in compliance with the Eighth Amendment. On appeal, the Seventh Circuit overruled its earlier decisions in this area and found that the Fourth Amendment is applicable. Because there was no way for the defendants to know in 2011 that their actions would be judged by a standard announced in 2020, they are entitled to qualified immunity.

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738, 457 U.S. 817, 818 (1982). To determine if an official is entitled to qualified immunity, a two part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 2155 (2001). Whether a right is clearly established hinges on the "objective legal reasonableness of the action, assessed at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009), quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999). A clearly established right is one that is "dictated by a 'controlling

authority.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 589-90 (2018), quoting *Ashcroft v. Kidd*, 563 U.S. 731, 741-42 (2011).

In this case, not only was it not clearly established that visual strip searches of inmates were subject to Fourth Amendment scrutiny, the controlling case law said they were not. The Supreme Court found in 1984 that the Fourth Amendment does not protect inmates against searches of their cells and property. *Hudson v. Palmer*, 104 S.Ct. 3194 (1984). It did not decide at that time whether the Fourth Amendment protected inmates against searches of their bodies.

The Seventh Circuit did address whether inmates subject to strip searches have a right to privacy. In *Canedy v. Boardman*, 16 F.3d 183 (7th Cir. 1993), the Court found that male prisoners strip searched by female guards had a constitutional right to privacy in their bodies. The Court later clarified that opinion was based on the Eighth Amendment, not the Fourth. *Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995). In *Peckham v. Wisconsin Dept. of Corrections*, 141 F3d 694 (7th Cir. 1998), the Court stated that prisoners may have some protection from strip searches under the Fourth Amendment, but that the Eighth was more properly applied. Finally, in *King v. McCarty*, 781 F.3d 889 (7th Cir. 2015), the Court stated that the Fourth Amendment protects prisoners against intrusions into their bodies, but the Eighth Amendment was the proper test for visual searches of prisoners' bodies.

Applying these cases, this Court determined that plaintiffs' claims regarding abusive visual strip searches could be brought under the Eighth Amendment but not the Fourth. The Court granted the defendants' motion for summary judgment as to the Fourth Amendment claim and dismissed that claim. (Doc. 122, p. 15) The Court stated that a change in the law would be necessary for the plaintiffs to pursue their claims under the Fourth Amendment. *Id*.

Plaintiffs appealed the Court's dismissal of their Fourth Amendment claim. A Seventh Circuit panel affirmed this Court's decision. *Henry v. Hulett*, 930 F.3d 836 (7th Cir. 2019). The panel stated that, based on the Seventh Circuit's ruling in *King*, there was no other decision this

Court could have made. *Id*. at 838. The panel also declined to overrule *King* and other cases addressing the issue and stated it is established law in the Seventh Circuit that the Fourth Amendment does not apply to visual strip searches of prisoners. *Id*. at 839.

Plaintiffs petitioned for a rehearing *en banc* and that petition was granted. The Seventh Circuit, *en banc*, stressed that *Hudson* had addressed the search of cells and property but left open the question of whether the Fourth Amendment protects the bodily privacy of inmates. *Henry v. Hulett*, 969 F.3d 769, 777 (7th Cir. 2020). The Court resolved that question and found that both convicted prisoners and pretrial detainees maintain a diminished privacy interest in their bodies protected by the Fourth Amendment. *Id*. at 779. The Court overruled the panel and this Court and reinstated the plaintiffs' Fourth Amendment claims.

The Seventh Circuit also acknowledged that its other decisions in this case did not clearly state that inmates have a right to privacy during visual strip searches. *Id*. at 781. The Court noted that *Peckham* and *Canedy*, among other cases, recognized some degree of Fourth Amendment protection for bodily privacy of inmates. *Id*. at 781-82. But the Court also cited to *Johnson*, which held that inmates have no Fourth Amendment right to privacy and that *King* clarified *Johnson* by stating there was a privacy right against intrusive searches but not visual searches. *Id*. at 782. To find for the plaintiffs and establish that inmates have a Fourth Amendment privacy right applicable to visual searches, the Court had to overrule *Johnson* and *King*. *Id*. at 783.

Whether the defendants' actions on March 31, 2011 are examined under an Eighth Amendment or Fourth Amendment standard is an important distinction. Under the Eight Amendment, the defendants can only be held liable if the strip searches were subjectively intended as punishment. *Id*. at 781. Under the Fourth Amendment, the question is whether the defendants' actions were objectively reasonable. *Id*. A jury has already determined the defendants did not intend to punish the plaintiffs and are not liable under the Eighth Amendment.

For the defendants to be found liable now, it would have to be under the Fourth Amendment test, a test that was not established to apply until this year, nine years after the searches in question.

There is no way the defendants could have anticipated they would be held responsible under the Fourth Amendment standard. This Court and a panel of appellate judges both agreed with the defendants' understanding that the Fourth Amendment did not apply to the searches conducted in 2011. The Seventh Circuit, *en banc*, agreed with the defendants, this Court and the panel by finding it necessary to overrule its own precedent in order to establish the applicability of the Fourth Amendment. This is exactly why qualified immunity exists, to protect officials from liability where the law at the time they are judged is different than the law when they acted.

The Supreme Court has frequently applied qualified immunity in cases involving the Fourth Amendment. In one case, police officers in Utah entered a suspect's home under the "consent-one-removed" doctrine, where undercover officers who have earlier been permitted entry and observed illegal activity can return and perform a warrantless search. *Pearson* at 229. The Tenth Circuit, where the officers operated, had not ruled on the constitutionality of that practice, but other circuits had approved it. *Id*. at 244. The Tenth Circuit first announced the practice was unconstitutional in the *Pearson* case. The Supreme Court found the defendants could not be held liable in the first case to decide an issue where other circuits had approved the same practice. *Id*. at 244-45.

The defendants in the instant case are even more clearly entitled to qualified immunity than the *Pearson* defendants. The Seventh Circuit was not silent on the applicability of the Fourth Amendment to visual inspection of inmates, it had explicitly found it did not apply. The Seventh Circuit was not disagreeing with precedent in other circuits, it overruled its own decisions. Further, the question in *Pearson* was how the Fourth Amendment was to be interpreted, not whether it applied at all to the defendants' actions.

Starting this year, correctional staff are on notice that the Fourth Amendment protects inmates from unreasonable visual strip searches. They can conduct themselves in a manner consistent with the Fourth Amendment standard or they can be held liable. But for any prison official conducting searches before the *en banc* decision in this case, including the defendants in this case, this legal principle was not clearly established. The defendants are entitled to qualified immunity against damages in plaintiffs' Fourth Amendment claims.

For the above and foregoing reasons, defendants ask this Court to grant summary judgment in their favor on the issue of qualified immunity as it applies to the Fourth Amendment claim in this matter.

Respectfully submitted,

Peter Leonetti, Courtney (Krull) Edwards,
Abraham Anderson, and Dominique Crudup,

Defendants,

| | |
|---|---|
| Christopher L. Higgerson #6256085 | Kwame Raoul, Illinois Attorney General, |
| Assistant Attorney General | |
| 500 South Second Street | Attorney for Defendants, |
| Springfield, Illinois 62701 | |
| (217) 782-1841 Phone | By: s/ Christopher L. Higgerson |
| (217) 787-8767 Fax | CHRISTOPHER L. HIGGERSON |
| Email: c.higgerson@ilag.gov | Assistant Attorney General |