E-FILED
Friday, 16 September, 2022  03:55:15 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PATRICIA PHILLIPS, et al, on behalf of themselves and a class of others similarly situated, | ) ) ) ) | Case No. 3:12-cv-3087 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Sue E. Myerscough |
| MELODY HULETT, et al. | ) ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**RESPONSE TO DEFENDANTS'
POST-TRIAL MOTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................2

I.     Plaintiffs prevailed at the trial on their Fourth Amendment claims....................................2

II.    After the close of the evidence, Defendants brought a Rule 50(a) motion attempting to resuscitate previously abandoned defenses and arguments. ................................................2

     A.    Abandoned qualified immunity defense. .................................................2

     B.    Abandoned damages challenges. .........................................................3

     C.    Challenges to class-action related procedures Defendants had themselves agreed to....................................................................................4

III.   Defendants renewed some arguments in their Rule 50(b) motion but declined to cite any record evidence in support. ..............................................................6

RESPONSE TO DEFENDANTS' UNSUPPORTED CHARACTERIZATION OF THE EVIDENCE ................................................6

LEGAL STANDARD............................................................................................6

ARGUMENT .......................................................................................................7

I.     Defendants' qualified immunity defense fails. ..............................................7

     A.    Defendants waived (or forfeited) their qualified immunity defense by failing to preserve it in the pretrial order...............................................8

     B.    Defendants waived (or forfeited) their specific qualified immunity challenges by failing to preserve them in a Rule 50(a) motion. ............................................ 11

     C.    The evidence at trial construed in favor of the liability verdict was sufficient to overcome a qualified immunity defense..........................................................13

          1.    The evidence at trial showed that Defendants carried out strip and body cavity searches that unreasonably involved spectators including men, degrading insults, a failure to accommodate bathroom and menstruation needs, and unhygienic conditions, without any legitimate penological purpose. ...............................................................15

          2.    The strip searches were obviously unreasonable. .....................................19

3.      Controlling authority and a robust consensus of persuasive authority gave Defendants further notice of the unconstitutionality of their conduct. ..... 20

4.      Fair notice that Defendants' conduct would violate the Eighth Amendment is sufficient to defeat qualified immunity. ..................................................29

5.      Although immaterial to the qualified immunity analysis, Defendants had fair notice that their conduct would also violate the Fourth Amendment.................................................................................................35

6.      The Eighth Amendment jury verdict does not entitle Defendants to qualified immunity on the Fourth Amendment claim...............................39

II.     Defendants' challenge to compensatory damages based on the PLRA physical injury provision defense fails. ........................................................................................... 42

A.      Defendants waived (or forfeited) their PLRA physical injury defense by failing to identify it as a barrier to compensatory damages in the pretrial order..................42

B.      Defendants doubly forfeited any physical injury provision defense by failing to timely raise it by the Court's December 2020 deadline.........................................43

C.      Defendants triply forfeited any PLRA physical injury defense by failing to assert it any time in the pleadings or during the discovery period........................44

D.      The PLRA physical injury requirement does not apply to the Plaintiff class........46

1.      The PLRA physical injury requirement does not apply to class members in a suit that was "brought" by at least one named plaintiff unbound by its rule. ........................................................................................47

2.      Class members cannot be fairly said to have "brought" any suit, regardless of the incarceration status of any named plaintiffs. ................49

3.      At a minimum, no class members can be fairly said to have "brought" any suit until they had notice of the litigation and an opportunity to opt-out. ........................................................................................50

4.      Even if class members are held to have "brought" this suit at the time of the filing of the case, there remains a subset of class members who were out of prison at the pertinent time. ............................................51

5.      The physical injury requirement is satisfied in a class action if one class member suffered a physical injury.............................................52

E.      Plaintiffs can prove that they suffered qualifying physical injuries. ....................53

III.    Defendants' challenge to punitive damages fails. ...............................................56

A.      Defendants' challenge has been forfeited as conclusory and unsupported............56

B.      To the extent Defendants assert an issue preclusion affirmative defense, that
        defense has been forfeited through untimely assertion..........................................57

C.      The Eighth Amendment liability verdict does not foreclose punitive damages
        on Plaintiffs' Fourth Amendment claim. ...............................................................59

IV.     Defendants' laundry-list of challenges to class action procedure fail.  ............................62

A.      Defendants' conclusory and unsupported list of class-related gripes has been
        forfeited....................................................................................................................62

B.      Any arguments as to commonality, typicality, or class certification have been
        forfeited and fail.......................................................................................................62

        1.      Defendants' conclusory and unsupported arguments have been
                forfeited...................................................................................................63

        2.      Defendants have waived any challenges to class certification through their
                delay, their omission of such challenges in the pretrial order, and their
                contrary stipulations.................................................................................63

        3.      Defendants are judicially estopped from challenging certification,
                commonality, typicality, or the class representatives. .............................68

        4.      Defendants did not preserve any challenge to commonality, typicality,
                or certification in their Rule 50(a) motion. .............................................69

        5.      The evidence at trial did not defeat class certification.............................70

C.      Defendants waived any challenges to delineation between damages
        representatives, injunctive representatives, and testifying class members. ...........75

D.      Defendants waived any challenges to inclusion of individual class members on
        the verdict form as to liability. ...............................................................................78

E.      Defendants waived any challenges to damages adjudications of the testifying
        class members who were not damages class representatives....................................79

F.      Any argument claiming cumulative error fails. .......................................................80

V.   The Court properly instructed the jury about deference and did not err in rejecting Defendants' Additional Instruction No. 1. ............................................................. 80

    A.   Defendants waived this challenge by agreeing to the Court's instruction. ............... 81

    B.   The Court's instruction correctly guided the jury as to the law. ............................... 82

    C.   Defendants identify no prejudice, let alone prejudice sufficient to justify a new trial. ............................................................................................................ 86

CONCLUSION ..................................................................................................................... 87

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Sangamon County*, 705 F.3d 706 (7th Cir. 2013)............................................................23

*Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000) ...................................................................40, 59

*Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.*, 968 F.2d 707 (8th Cir. 1992)...........................57

*Am. Cas. Co. of Reading, Pa. v. B. Cianciolo, Inc.*, 987 F.2d 1302 (7th Cir. 1993) ..............42, 59

*Am. Nat. Bank & Tr. Co. of Chicago v. Reg'l Transp. Auth.*, 125 F.3d 420 (7th Cir. 1997) ........57

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) .............................70, 71

*Anderson v. Creighton*, 483 U.S. 635 (1987) ..............................................................................30

*Armstrong v. Daily*, 786 F.3d 529 (7th Cir. 2015)...............................................9, 29, 30, 33, 34

*Arruda v. Fair*, 710 F.2d 886 (1st Cir. 1983) .............................................................................24

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...................................................................................30

*Auriemma v. Rice*, 910 F.2d 1449 (7th Cir. 1990) (en banc)...............................................8, 29, 34

*Bell v. Wolfish*, 1 U.S. 520 (1979) .........................................................................................83, 84

*Bell v. Wolfish*, 441 U.S. 520 (1979) .................................................................................22, 23, 28

*Bennett v. Dart*, 953 F.3d 467, 469 (7th Cir. 2020)................................................................68, 71

*Blihovde v. St. Croix Cty., Wis.*, 219 F.R.D. 607 (W.D. Wis. 2003) ............................................37

*Bogan v. Chicago*, 644 F.3d 563 (7th Cir. 2011)............................................................................6

*Bonitz v. Fair*, 804 F.2d 164 (1st Cir. 1986)...........................................................................24, 27

*Booker v. S.C. Dep't of Corr.*, 855 F.3d 533 (4th Cir. 2017)......................................14, 20, 21, 35

*Brooks v. O'Leary*, 33 F.3d 56 (7th Cir. 1994)..............................................................................70

*Brown v. Battle Creek Police Dep't.*, 844 F.3d 556 (6th Cir. 2016)............................................36

*Burgess v. Lowery*, 201 F.3d 942 (7th Cir. 2000)................................................14, 23, 35, 38

*Bushee v. Angelone*, 7 F. App'x 182 (4th Cir. 2001) .................................................................24

*Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135 (9th Cir. 2011) (en banc) ........................26

*Caldwell v. Dist. of Columbia*, 201 F. Supp. 2d 27 (D.D.C. 2001) .........................................45, 54

*Calhoun v. DeTella*, 319 F.3d 936 (7th Cir. 2003) ........................................................21, 25, 26, 56

*Calhoun v. Ramsey*, 408 F.3d 375 (7th Cir. 2005) .................................................................80, 82

*Campbell v. Miller*, 499 F.3d 711 (7th Cir. 2007) .....................................................................25, 84

*Canedy v. Boardman*, 16 F.3d 183 (7th Cir. 1994)........................................................23, 25, 36, 38

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ..........................................68, 69

*Castillo v. Bobelu*, 1 F. Supp. 3d 1190 (W.D. Okla. 2014) ...........................................................45

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*,
797 F.3d 426 (7th Cir. 2015) ...................................................................................................70. 73

*Chlopek v. Fed. Ins. Co.*, 499 F.3d 692 (7th Cir. 2007)................................................................79

*Clark v. Trammell*, No. 18-cv-05142, 2021 WL 979157 (N.D. Ill. Mar. 16, 2021).....................53

*Coady v. Steil*, 187 F.3d 727 (7th Cir. 1999) ...............................................................................14

*Consumer Prods. Rsch. & Design, Inc. v. Jensen*, 572 F.3d 436 (7th Cir. 2009) ........................57

*Cookish v. Powell*, 945 F.2d 441 (1st Cir. 1991)...........................................................................24

*Cornwell v. Dahlberg*, 963 F.2d 912 (6th Cir. 1992) .................................................24, 84, 85, 86

*Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992)...........................................................................24

*Cruz v. Beto*, 405 U.S. 319 (1972)................................................................................................22

*Cruz v. Cicero*, 275 F.3d 579 (7th Cir. 2001) ...............................................................................7

*Cyrus v. Laino*, No. 4:CV-08-1085, 2008 WL 2858290 (M.D. Pa. July 22, 2008).....................53

*D.C. v. Wesby*, 138 S. Ct. 577 (2018) ...................................................................................14, 20

*Davis v. Wessel*, 792 F.3d 793 (7th Cir. 2015) ......................................................................13, 76

*Doe v. Johnson*, 52 F.3d 1448 (7th Cir. 1995)..............................................................................82

*Doe v. Renfrow*, 631 F.2d 91 (7th Cir. 1980) ............................................................19

*Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008) .............................................45, 46

*Draine v. Bauman*, 708 F. Supp. 2d 693 (N.D. Ill. 2010).........................................13

*Dunn v. White*, 880 F.2d 1188 (10th Cir. 1989) .......................................................38

*Dyer v. Houston*, 964 F.3d 374 (5th Cir. 2020) ........................................................32

*E.E.O.C. v. Century Broad. Corp.*, 957 F.2d 1446 (7th Cir. 1992) ......................41, 59

*Easterling v. Connecticut Dept. of Corr.*, 278 F.R.D. 41 (D. Conn. 2011) ...............66

*Elliott v. Lynn*, 38 F.3d 188 (5th Cir. 1994)........................................................24, 38

*Estate of Clark v. Walker*, 865 F.3d 544 (7th Cir. 2017)...........................................14

*Estate of Miller v. Marberry*, 847 F.3d 425 (7th Cir. 2017)......................................35

*Estate of Perry v. Wenzel*, 872 F.3d 439 (7th Cir. 2017)...........................................14

*Evans v. Fogarty*, 241 F. App'x 542 (10th Cir. 2007)................................................10

*F.T.C. v. QT, Inc.*, 236 F.R.D. 402 (N.D. Ill. 2006) .................................................59

*Farmer v. Perrill*, 288 F.3d 1254 (10th Cir. 2002)..............................................24, 26

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) ........................................29, 33, 34

*Forbes v. Trigg*, 976 F.2d 312-13 (7th Cir. 1992) ....................................................38

*Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993)..................................................24

*Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010) .............................................................13

*Franklin v. Lockhart*, 769 F.2d 509 (8th Cir. 1985) .................................................24

*Fromer v. Corizon, Inc.*, 54 F. Supp. 3d 1012 (S.D. Ind. 2014).................................45

*Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013)........................................14, 20, 21

*Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*, 710 F.3d 527 (4th Cir. 2013) ...................57

*Giles v. United Airlines, Inc.*, 213 F.3d 365 (7th Cir. 2000)......................................78

*Gorlikowski v. Tolbert*, 52 F.3d 1439 (7th Cir. 1995) ...................................................9

*Gortat v. Capala Bros., Inc.*, 2012 WL 1116495 (E.D.N.Y. Apr. 3, 2012) .................................66

*Greig v. Goord*, 169 F.3d 165 (2d Cir. 1999) ..............................................................47

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...............................................................29

*Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005)..........................................................9

*Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303
(7th Cir. 1995)...........................................................................40, 59, 62

*Henderson v. Sheahan*, 196 F.3d 839 (7th Cir. 1999) ...................................................54

*Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020)........................................................... *passim*

*Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1022 (8th Cir. 2019) ................................................57

*Hicks v. Forest Pres. Dist. of Cook County,* 677 F.3d 781 (7th Cir. 2012)........................................87

*Hope v. Pelzer*, 536 U.S. 730 (2002) ...............................................14, 19, 20, 21

*Hopper v. Plummer*, 887 F.3d 744 (6th Cir. 2018).........................................................31

*Houchins v. KQED, Inc.*, 438 U.S. 1 (1978)...............................................................22

*Hudson v. Palmer*, 468 U.S. 517 (1984).............................................................22, 38

*Hurley v. Ward*, 584 F.2d 609 (2d Cir. 1978) ............................................................24

*Hutchins v. McDaniels*, 512 F.3d 193 (5th Cir. 2007).................................................24, 26

*In re Nassau Cty. Strip Search Cases*, No. 99-CV-2844 DRH, 2010 WL 3781563
(E.D.N.Y. Sept. 22, 2010)..............................................................47, 48

*In re Scrap Metal Antitrust Litig.,* 2006 WL 2850453 (N.D. Ohio Sept. 30, 2006)....................66

*In re Sulfuric Acid Antitrust Litig.*, 847 F. Supp. 2d 1079 (N.D. Ill. 2011)........................................66

*In re Urethane Antitrust Litig.*, 2013 WL 2097346 (D. Kan. May 15, 2013) ..............................66

*Irving v. Dormire*, 519 F.3d 441 (8th Cir. 2008) .......................................................35

*Iskander v. Village of Forest Park*, 690 F.2d 126 (7th Cir. 1982)................................................25

*Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019)..........................................................29

*Jackson v. Dist. of Columbia*, 254 F.3d 262 (D.C. Cir. 2001)........................................................52

*Jamie S. v. Milwaukee Public Schs.*, 668 F.3d 481 (7th Cir. 2012)...............................................71

*Jaskolski v. Daniels*, 427 F.3d 456 (7th Cir. 2005)........................................................................57

*Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999) ............................................................................45

*Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013) ...........................................................7

*Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995)........................................................36, 37, 38, 39

*Jones v. Bock*, 549 U.S. 199 (2007)..............................................................................................45

*Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011) ................................71

*Kelsey v. Cnty. of Schoharie*, 567 F.3d 54 (2d Cir. 2009) ...........................................................48

*Kelsey v. County of Schoharie,* 2007 WL 603406 (N.D.N.Y. 2007).............................................48

*Kerr v. Puckett,* 138 F.3d 321 (7th Cir. 1998) .........................................................................47, 48

*King v. McCarty*, 781 F.3d 889, 892 (7th Cir. 2015).......................................................36, 38, 39

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015).......................................................................30, 31

*Kingsley v. Hendrickson*, 801 F.3d 828, 832-33 (7th Cir. 2015)......................................... *passim*

*Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015) ...............................52

*Lasley v. Moss*, 500 F.3d 586 (7th Cir. 2007)........................................................................80, 82, 85

*Lee v. Downs*, 641 F.2d 1117 (4th Cir. 1981).............................................................................24

*Littler v. Indiana Dep't of Corr. Com'r*, No. 3:11-CV-218 CAN, 2013 WL 1149607
(N.D. Ind. Mar. 19, 2013).............................................................................................................45

*Lord-Butcher v. City of Newport Beach*, 79 F.3d 1153 (9th Cir. 1996) ......................................10

*Lovett v. Herbert*, 907 F.3d 986 (7th Cir. 2018)....................................................................34, 35

*Magee v. Cabana*, 35 F.3d 559 (5th Cir. 1994) .......................................................................9, 10

*Mansoori v. Shaw*, 2002 WL 1400300 (N.D. Ill. June 28, 2002).................................................54

*Marcus & Millichap Inv. Servs. v. Sekulovski*, 639 F.3d 301 (7th Cir. 2011) ................................7

*Martin v. Pittman*, 244 F. App'x 597 (5th Cir. 2007).................................................................45

*Mary Beth G. v. Chicago*, 723 F.2d 1263 (7th Cir. 1983) .......................................................23, 26

*Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999) .........................................................................52

*Maul v. Constan*, 928 F.2d 784 (7th Cir. 1991) ..............................................................................9

*May v. Trancoso*, 412 F. App'x 899 (7th Cir. Mar. 16, 2011).........................................22, 25, 26

*Mays v. Springborn*, 575 F.3d 643 (7th Cir. 2009).........................................22, 25, 26, 27

*Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016) ...................................................... 72-73, 74

*McBean v. City of New York*, 260 F.R.D. 120 (S.D.N.Y. 2009)..................................................49

*McCloud v. Harmon*, No. 20-cv-1043, 2021 WL 765773 (C.D. Ill. Feb. 26, 2021) ...................54

*McKinley v. Trattles*, 732 F.2d 1320 (7th Cir. 1984)...................................................................61

*Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64 (1st Cir. 2016)..................................................31

*Mitchenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988) ............................................................24

*Moore v. Carwell*, 168 F.3d 234 (5th Cir. 1999) ........................................................................24

*Moriarty v. Hills Funeral Home, Ltd.*, No. 98 C 773, 2000 WL 523188
(N.D. Ill. Apr. 18, 2000) ...............................................................................................................59

*Moriarty v. Pepper*, 256 F.3d 554 (7th Cir. 2001).......................................................................59

*Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849 (7th Cir. 2017)......................................71

*Nagy v. Riblet Prods. Corp.*, 79 F.3d 572 (7th Cir. 1996).............................................................9

*Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479 (1998).....................46

*New Burnham Prairie Homes v. Burnham*, 910 F.2d 1474 (7th Cir. 1990) ................................81

*New Hampshire v. Maine*, 532 U.S. 742 (2001)..........................................................................68

*Northbrook Excess & Surplus v. Proctor & Gamble*, 924 F.2d 633 (7th Cir. 1991) ............. 80-81

*Ogden v. Chesney*, No. Civ.A. 97–5869, 2003 WL 22225763 (E.D. Pa., Sept. 17, 2003)............55

*Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415 (2d Cir. 2009)............14, 20, 21

*Opp v. Wheaton Van Lines*, 231 F.3d 1060 (7th Cir. 2000) ........................11, 57, 62, 63

*Ortiz v. Jordan*, 562 U.S. 180 (2011) ......................................................................13

*Parkell v. Danberg*, 833 F.3d 313 (3d Cir. 2016)......................................................24

*Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 826 F.2d 712 (7th Cir. 1987) ......................7

*Passanati v. Cook County*, 689 F.3d 655 (7th Cir. 2013)........................................6, 13

*Pearson v. Callahan,* 555 U.S. (2009)................................................................32, 38

*Peckham v. Wisconsin Dep't of Corr.*, 141 F.3d 694 (7th Cir. 1998) ...........................37

*Pelfresne v. Village of Williams Bay*, 917 F.2d 1017 (7th Cir. 1990) ........................11, 57, 62, 63

*Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541 (7th Cir. 2016) .....................................73

*Pritchett v. Page*, no. 99 C 8174, 2000 WL 1129891 (N.D. Ill. Aug. 9, 2000)...........................53

*Pro v. Donatucci*, 81 F.3d 1283 (3d Cir. 1996) .........................................................38

*Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493 (N.D. Ill. Oct. 19, 2001).............48, 52, 53

*Rasho v. Elyea*, 856 F.3d 469 (7th Cir. 2017)..............................................................56

*Reed v. Palmer*, 906 F.3d 540 (7th Cir. 2018)..................................................... *passim*

*Robinson v. Costello*, No. CIV A 03-147 GMS, 2007 WL 675997
(D. Del. Mar. 2, 2007)..............................................................................................45

*Romaine v. Rawson*, 140 F.Supp.2d 204 (N.D.N.Y. 2001) ........................................54

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992)...............................................71, 73

*Ross v. Gossett*, 33 F.4th 433 (7th Cir. 2022).......................................................73, 74

*Ruffino v. Sheahan*, 218 F.3d 697 (7th Cir. 2000) ......................................................13

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d. Cir. 2007)............................................33

*Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009)....................22, 37, 38

*Salem v. Michigan Dep't of Corr.*, 643 F. App'x 526 (6th Cir. 2016) ...........................27

*Sanchez v. Pereira-Castillo*, 590 F.3d 31 (1st Cir. 2009) ...........................................................24

*Sandoval v. Cty. of San Diego*, No. 18-55289, 2021 WL 116539
(9th Cir. Jan. 13, 2021) ...........................................................................................31, 32

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................................................37

*Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725 (7th Cir. 2002) ...................................78

*Seaver v. Manduco*, 178 F. Supp. 2d 30 (D. Mass. 2002) ...........................................55

*Seltzer-Bey v. Delo*, 66 F.3d 961 (8th Cir. 1995)...................................................24, 38

*Smith v. Northeastern Ill. Univ.*, 388 F.3d 559 (7th Cir. 2004) ................................11, 62

*SNA Nut Co. v. Haagen-Dazs Co., Inc.*, 302 F.3d 725 (7th Cir. 2002) ......................9, 67

*Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997) .......................................................26

*Sommerfield v. City of Chicago*, No. 08 C 3025, 2014 WL 12802519
(N.D. Ill. June 26, 2014) ...........................................................................................58

*Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011).............................................71

*Sparks v. Stutler*, 71 F.3d 259 (7th Cir. 1995) ...........................................................38

*Stanley v. Page*, 44 Fed. App'x. 13 (7th Cir. 2002)....................................................54

*Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560 (6th Cir. Jan. 31, 2013) ....................24, 26

*Taylor v. Riojas*, 141 S. Ct. 52 (2020) ................................................................14, 19

*Turner v. Arkansas Insurance Dep't.*, 297 F.3d 751 (8th Cir. 2002).............................36

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .............................................79

*U.S. v. Eymann*, 962 F.3d 273 (7th Cir. 2020).......................................................40, 59

*U.S. v. Matthews*, 505 F.3d 698 (7th Cir. 2007) .......................................................77

*U.S. v. Powell*, 652 F.3d 702 (7th Cir. 2011)...........................................................80

*United States v. DiSantis*, 565 F.3d 354 (7th Cir. 2009) ...........................76, 78, 80, 82

*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991)....................................11, 12, 13

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006) ........................7, 11, 13, 70

*Unwin v. Campbell*, 863 F.2d 124 (1st Cir. 1988) ....................................................................27

*Vaughn v. King*, 167 F.3d 347 (7th Cir. 1999) ........................................................................57

*Vaughn v. Ruoff*, 253 F.3d 1124 (8th Cir. 2001) .....................................................................19

*Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997) .................................................45

*Wade v. Hegner*, 804 F.2d 67, 70 (7th Cir. 1986) .....................................................................8

*Walker v. Schult*, 463 F. Supp. 3d 323 (N.D.N.Y. 2020) ...................................................45, 46

*Wallace v. McGlothan*, 606 F.3d 410 (7th Cir. 2010) .......................................................7, 11, 13

*Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338 (2011) .............................................................73

*Walsh v. Mellas*, 837 F.2d 789 (7th Cir. 1988) ..................................................................60, 61

*Waters v. Andrews*, No. 97-CV-407, 2000 WL 1611126 (W.D.N.Y. Oct. 16, 2000) ................55

*Whitfield v. Snyder*, no. 03-CV-3014, 2005 WL 8166110 (C.D. Ill. Mar. 1, 2005) ..................55

*Williams v. Bitner*, 455 F.3d 186 (3d Cir. 2006) .....................................................................35

*Woe v. Cuomo,* 729 F.2d 96 (2d Cir. 1984) .............................................................................66

*Wood v. Milyard*, 566 U.S. 463 (2012) ....................................................................................44

*Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004) .........................61

## RULES

Fed. R. Civ. P. 8(c) ...................................................................................................45, 46

Fed. R. Civ. P 23(f) ...........................................................................................................64

Fed. R. Civ. P. 23(a)(2) .....................................................................................................71

Fed. R. Civ. P. 50(b) ......................................................................................................6, 11

## STATUTES

Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e) .......................................... *passim*

Ill. Admin. Code tit. 20, § 501.220(b)(2) ...........................................................................17, 27

Section 1977e(e) ...........................................................................................................50

## OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019).........................................................................49

Seventh Circuit's Civil Pattern Jury Instructions...........................................................83

Seventh Circuit's Settlement Conf. Instructions.............................................................58

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| PATRICIA PHILLIPS, et al., on behalf of themselves and a class of others similarly situated. | ) ) ) | |
| | ) | Case No. 3:12-cv-3087 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Judge Sue E. Myerscough |
| v. | ) | |
| | ) | |
| MELODY HULETT, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**RESPONSE TO DEFENDANTS'**
**POST-TRIAL MOTION**

Plaintiffs Patricia Phillips, Veela Morris, Ieshia Brown, and Miranda Howard, on behalf of themselves and others similarly situated, by their counsel, LOEVY & LOEVY, respectfully respond as follows to Defendants' renewed motion for judgment as a matter of law (Dkt. 273):

**INTRODUCTION**

For any trial that lasts over a week, there will be no shortage of rulings for the losing side to complain about. Against that backdrop, what is most telling about Defendants' motion is how few issues they raise. The four moving Defendants concede that the evidence was sufficient to establish a Fourth Amendment violation, that the evidence was sufficient to support liability against each of the four moving Defendants, that all the evidentiary rulings at trial were correct, that Plaintiffs' counsel's trial presentations were appropriate, and that nearly all of the jury instructions were correct. The few arguments that Defendants do raise should not give the Court pause. Most were either previously waived or forfeited—often in multiple independent ways— and none withstand scrutiny.

1

As to qualified immunity, not only did Defendants unequivocally forfeit this defense by abandoning it as of the pretrial order, but the trial evidence construed in Plaintiffs' favor easily overcomes the defense. As to Defendants' remedies challenges, they each, too, have been forfeited, are inapplicable to a class action, or do not meaningfully grapple with the distinction between Fourth and Eighth Amendment claims. Defendants assert a hodge-podge of underdeveloped gripes related to the class action procedure, yet Defendants themselves agreed to much of what they now complain about and none of their arguments are preserved or supported. In short, Defendants fail to identify any rulings that were erroneous, much less any significant enough to justify judgment as a matter of law or a new trial.

## STATEMENT OF FACTS

### I.    Plaintiffs prevailed at the trial on their Fourth Amendment claims.

After a lengthy trial beginning in May 2022, a jury found Defendants Melody Hulett, Russell Reynolds, Renee Hatfield, and Troy Dawdy liable for violating the rights of the Plaintiff class of women who were subjected to strip and body cavity searches during a March 31, 2011 cadet training exercise. Dkt. 261. The jury awarded both compensatory and punitive damages to each of the six testifying class members. *Id.* The pertinent trial evidence relevant to Defendants' qualified immunity and compensatory damages challenges is summarized in the brief below.

### II.   After the close of the evidence, Defendants brought a Rule 50(a) motion attempting to resuscitate previously abandoned defenses and arguments.

After the close of the evidence, Defendants brought a Rule 50(a) motion attempting to resuscitate abandoned defenses and arguments, which this Court denied. Exh. A, 6/6/2022 Trial Trans. Excerpts, at 21-26, 29.

#### A.    Abandoned qualified immunity defense

First, Defendants' Rule 50(a) motion asserted a qualified immunity defense that had been

previously abandoned. In December 2020, Defendants sought summary judgment on a qualified

immunity defense to Plaintiff's Fourth Amendment claim. Dkt. 211. Yet after the defense was

denied (Dkt. 217), Defendants declined to press qualified immunity in an interlocutory appeal of

the denial of summary judgment. Defendants then failed to preserve the defense in the pretrial

order (Dkts. 231 & 224), which does not mention any qualified immunity defense, including in

the sections on contested issues of fact and law (*id.* at 4-5). Nor did Defendants seek to amend

the pretrial order at any point to include a qualified immunity defense.

### B.   Abandoned damages challenges

Defendants' Rule 50(a) motion also attempted to resuscitate challenges to the Plaintiffs'

entitlement to compensatory and punitive damages that, too, had been abandoned. During the

first round of summary judgment briefing in this case, Defendants declined to raise any

challenge to Plaintiffs' entitlement to compensatory damages based on the PLRA's physical

injury requirement. Dkt. 102 & 103. On appeal, Defendants attempted to raise the issue, as well

as a challenge to Plaintiffs seeking punitive damages, but the Seventh Circuit *en banc* court

refused to consider those issues because they had not been raised below. *Henry v. Hulett*, 969

F.3d 769, 775, 787 (7th Cir. 2020).  On remand, the district court then gave Defendants a full

opportunity to raise any challenges to Plaintiff's remedies, making clear that such issues should

be raised in a summary judgment motion by December 18, 2020:

> On September 2, 2020, this Court received the mandate from the Seventh Circuit Court of
> Appeals reversing the grant of summary judgment to Defendants on Plaintiffs' Fourth
> Amendment claims. The mandate instructs the "district court to assess in the first instance
> whether Plaintiffs have demonstrated that an issue of fact exists as to the reasonableness
> of the strip and body cavity searches in question and for further proceedings consistent
> with this opinion." *The dispositive motion deadline on this question and any other
> dispositive issues is December 18, 2020.*

Text Order of Sept. 29, 2020 (emphasis added). Yet when Defendants filed their second

summary judgment motion, they *again* failed to raise any physical injury requirement defense. Dkt. 211.  Nor did any Defendants raise any challenge to the availability of punitive damages. Dkt. 211; Dkt. 241.  Nor, still yet, did Defendants file any motions *in limine* on the issue.

After long blowing this Court's deadline to raise dispositive issues, when Defendants submitted the final pretrial order, they *again* failed to identify the physical injury requirement as any barrier to damages. Dkt. 231. That order identifies only the contested legal issue of "whether Plaintiffs *suffered* damages" (Dkt. 231 at 4-5, emphasis added), a question that is factually and legally far removed from whether Plaintiffs meet the physical injury requirement of the PLRA. Defendants failed to identify the issue even though the pretrial order specifies that Plaintiffs sought compensation for "emotional injury including humiliation, embarrassment, shame, and degradation, as well as damages associated with the violation of their constitutional rights." Dkt. 231 at 6.

After previously agreeing to a trial on liability only, Defendants changed course and proposed deciding damages at the jury trial, again declining to raise any challenges to remedies available. Text Order of 5/27/2022. On May 27, the Court issued an order *sua sponte* seeking briefing from the parties, including on the availability of punitive damages. Dkt. 245. Defendants continued to ask the Court to allow the jury to decide damages at trial (Dkt. 252 at ¶1), which the Court agreed to do. At no time prior to trial did Defendants seek to amend the pretrial order to add a legal issue regarding the PLRA physical injury requirement.

### C.    Challenges to class-action related procedures Defendants had themselves agreed to

Defendants' Rule 50(a) motion also alluded to, without actually raising, challenges to the class action procedure. Yet Defendants had long since agreed to the class procedures. After this Court granted class certification in 2013 and 2014 to Plaintiffs' damages and injunctive classes

(Dkts. 68 & 87), Defendants did not raise any subsequent challenge to certification, commonality, or typicality of the class representatives at any time until after the close of evidence at trial in 2022. Defendants did not raise certification or class representation in their first summary judgment motion, at any time prior to the Eighth Amendment trial, or in the immediate aftermath of the Eighth Amendment trial, in which they *capitalized* on class status to foreclose the Eighth Amendment claims of the class.

When Defendants filed their second summary judgment motion, they again declined to raise any class-action related challenges, instead seeking a ruling on Defendants' qualified immunity defense that would bind the entire class. Dkt. 211; Dkt. 241. When Plaintiffs moved to substitute Veela Morris and Miranda Howard as class representatives in the place of previous representatives, Defendants did not oppose the motion and conceded that they had no challenge to them. *See* Group Exh. B, Correspondence, at 1-4; Dkt. 226, at 2; Text Order of 12/17/2021; Text Order of 5/18/2022. In the pretrial order, Defendants consistently agreed that the case was a proper class action. *E.g.*, Dkt. 231-1, Agreed Statement of Case, at 1 ("This is a class-action lawsuit . . . "); Dkt. 231, Pretrial Order, at 1 ("Because this is a class action, the parties jointly propose . . ."); *id.* at 4-5 (raising no legal or factual challenges to the propriety of class certification or to commonality). Defendants then *agreed* on the class action damages jury instruction and jointly submitted it with Plaintiffs. Dkt. 270 at 28, adopted by Court at Exh. A, 6/6/2022 Trial Trans. Excerpts, at 9:17-9:20. Defendants likewise failed to preserve any class-action related challenge in the pretrial order. Dkt. 231. It was only after the close of evidence, for the first time, when apparently Defendants began to worry about losing a liability verdict, that they first raised any class-action related issues.

5

**III.    Defendants renewed some arguments in their Rule 50(b) motion but declined to cite any record evidence in support.**

This Court denied Defendants' Rule 50(a) motion in full. After trial, Defendants filed a Rule 50(b) motion, renewing some arguments raised in their Rule 50(a) motion and improperly raising others for the first time. *See* Dkt. 273. Defendants did not cite to any transcripts of hearings or testimony at trial. *See id.* Plaintiffs immediately reached out to inquire whether Defendants intended to provide record evidence in support of their motion, citing authority requiring Defendants to do so should they wish to assert arguments that turned on the factual record at trial. *See* Group Exh. C, Correspondence. Defendants declined to do so. *Id.*

**RESPONSE TO DEFENDANTS' UNSUPPORTED**
**CHARACTERIZATION OF THE EVIDENCE**

Plaintiffs dispute Defendants' characterization of this case's "Procedural History" in their motion (Dkt. 273 at 2-7), improperly provided without record citations. For example, Plaintiffs dispute Defendants' incorrect and incomplete characterizations of their oral Rule 50(a) motion, provided without citation to the transcript; the Seventh Circuit's *en banc* decision in this case, provided without citation to the decision text; and the incomplete presentation of the trial evidence, provided without citation to the pertinent transcripts or exhibits. *See id.*

**LEGAL STANDARD**

Defendants can obtain judgment as a matter of law under Rule 50(b) only if no rational jury could have found for Plaintiffs. *Bogan v. Chicago*, 644 F.3d 563, 572 (7th Cir. 2011); Fed. R. Civ. P. 50(b). The Court construes the evidence strictly in Plaintiffs' favor, it "does not make credibility determinations or weigh the evidence," and it "disregard[s] all evidence favorable to the [Defendants] that the jury [was] not required to believe." *Passanati v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2013). Such challenges face a "daunting task, given the deferential standard

that applies to such reviews." *Cruz v. Cicero,* 275 F.3d 579, 586 (7th Cir. 2001). Rule 50(b)

motions are also limited to factual and legal arguments developed in earlier Rule 50(a) motions.

*Wallace v. McGlothan*, 606 F.3d 410, 418-19 (7th Cir. 2010).

"'Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be

granted only on grounds advanced in the preverdict motion.'" *Wallace*, 606 F.3d at 418 (quoting

committee note, 2006 amend.). Thus, a party forfeits an argument that is not both presented in a

Rule 50(a) motion and renewed in a Rule 50(b) motion. *Unitherm Food Sys., Inc. v. Swift-*

*Eckrich, Inc.*, 546 U.S. 394, 404-05 (2006).

Defendants also re-assert an unspecified set of their Rule 50(b) arguments pursuant to

Rule 59, seeking a new trial. "A court may only order a new trial if the jury's verdict is against

the manifest weight of the evidence, or if for other reasons the trial was not fair to the moving

party." *Marcus & Millichap Inv. Servs. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011)

(quotation omitted). When challenging a jury instruction, "the standard of review is a liberal one:

[the court] look[s] at jury instructions only to determine if taken as a whole they were sufficient

correctly to inform the jury of the applicable law. Even if the instruction contains errors or

misguides the jury the error is reversible only if a litigant is prejudiced." *Jimenez v. City of*

*Chicago*, 732 F.3d 710, 717 (7th Cir. 2013) (quotation omitted). Failure to assert arguments prior

to judgment forfeits them under Rule 59. *Jimenez*, 732 F.3d at 719-20; *Parts and Elec. Motors,*

*Inc. v. Sterling Elec., Inc.*, 826 F.2d 712, 717-18 (7th Cir. 1987).

## ARGUMENT

### I.   Defendants' qualified immunity defense fails.

Defendants first assert a narrow affirmative defense of qualified immunity. Dkt. 273 at 7-

14. Qualified immunity implicates "two questions: (1) whether the facts alleged show the

7

officer's conduct violated a constitutional right, and (2) whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Armstrong v. Daily*, 786 F.3d at 538 (7th Cir. 2015) (quotation omitted); *see also Auriemma v. Rice*, 910 F.2d at 1453(7th Cir. 1990) (en banc) (citing *Wade v. Hegner*, 804 F.2d 67, 70 (7th Cir. 1986)). Defendants concede that Plaintiffs satisfy the first prong: that Plaintiffs presented evidence from which a reasonable jury could conclude (and, indeed, did conclude) that their conduct violated the Fourth Amendment.

As to the second prong, Defendants raise certain arguments regarding whether they had notice of the unconstitutionality of their conduct. They contend that they lacked notice that the manner of the search was unconstitutional, specifically, as to verbal harassment, cross-gender viewing during strip searches, and group searches (Dkt. 273 at 14). They contend that they lacked notice that they could be held liable under the Fourth Amendment, as opposed to the Eighth Amendment, for prolonged handcuffing, forced standing, and deprivation of bathroom access conducted as part of the strip search procedures. Dkt. 273 at 13. Finally, they contend that they lacked notice that "the Fourth Amendment applied to visual strip searches of prisoners" and that the "Fourth Amendment's objective standard of reasonableness would apply to [strip] searches when they occurred" (*id.* at 8-12). Yet Defendants waived (or at least, forfeited) their qualified immunity defense; the trial evidence overcame any such defense; and Defendants' contrary arguments lack merit.

**A.** **Defendants waived (or forfeited) their qualified immunity defense by failing to preserve it in the pretrial order.**

This Court need not reach the merits of Defendants' qualified immunity defense because they unequivocally waived (or at least forfeited) the defense by omitting it from the pretrial order (Dkts. 231 & 224) and instead sought a trial win only on the merits of Plaintiff's Fourth

8

Amendment claim. Just as courts disallow plaintiffs from omitting a claim in the pretrial order and then surprising defendants with the claim at trial, defendants, too, are held to the same standard. The law is unequivocal: "a defense not raised in a pretrial order is deemed waived." *SNA Nut Co. v. Haagen-Dazs Co., Inc.*, 302 F.3d 725, 732 (7th Cir. 2002). This is because the pretrial conference and order are "vital parts of the procedural scheme" upon which the parties "rely . . . to inform them precisely what is in controversy." *Id.* (citing *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1443 (7th Cir. 1995)). "In order for a pretrial order to have any value as a procedural mechanism . . . , the parties must be held to the issues set forth in that order." *Harper v. Albert*, 400 F.3d 1052, 1063 (7th Cir. 2005) *(citing Nagy v. Riblet Prods. Corp.*, 79 F.3d 572, 575 (7th Cir. 1996)). A "pretrial order supercedes the pleadings" and defenses and legal issues omitted from that order are waived. *SNA Nut Co.*, 302 F.3d at 732 (further explaining: "While this result may seem harsh, pretrial orders help to prevent protracted litigation due to changing theories and arguments such as those that we are encountering in this case"). The Seventh Circuit has "consistently enforced a strict rule of forfeiture." *Gorlikowski*, 52 F.3d at 1444. This "'stringent standard' is required because otherwise the pretrial order would not serve its purpose: 'promoting efficiency and conserving judicial resources by identifying the real issues prior to trial.'" *Gorlikowski*, 52 F.3d at 1444 (quoting Fed. R. Civ. P. 16, advisory committee notes to subdivisions c & e (1983)).

Courts thus routinely hold that qualified immunity defenses omitted from the pretrial order have been waived. *See Maul v. Constan*, 928 F.2d 784, 786 (7th Cir. 1991) (finding waiver because "[p]retrial orders supersede the pleadings, and the pretrial order contained no mention of the qualified immunity issue."); *Magee v. Cabana*, 35 F.3d 559, *1 (5th Cir. 1994) (per curiam) (finding waiver and citing with approval the district court's reasoning that, "in the event the

Court permitted an amendment of the pretrial order at this juncture [just before the case was submitted to the jury] it would be totally unfair and unjust to the plaintiffs, who have relied on this order."); *Lord-Butcher v. City of Newport Beach*, 79 F.3d 1153 (9th Cir. 1996) (finding waiver because Defendants "failed to include the qualified immunity defense in their pretrial order."); *Evans v. Fogarty*, 241 F. App'x 542, 550 (10th Cir. 2007) ( "Although the defense of qualified immunity provides public officials important protection from baseless and harassing lawsuits, it is not a parachute to be deployed only when the plane has run out of fuel. Defendants must diligently . . . ensure it is included in the pretrial order.").

Here, Defendants made no mention of any qualified immunity defense in the pretrial order, including in sections on contested issues of fact and law and discussion of damages. Dkt. 231. Nor did Defendants seek to amend the pretrial order at any time through the start of trial to include a qualified immunity defense. There is no question that Defendants were on notice of the defense, having raised it in their second summary judgment motion. Dkt. 211.[1] Yet after the defense was denied (Dkt. 217), Defendants abandoned it, declining to press it in an interlocutory appeal and then failing to preserve it in the pretrial order (Dkts. 231 & 224).

Defendants' waiver must be recognized here. Defendants were not allowed to strategically seek a verdict on the merits at trial, and conceal from Plaintiffs that they maintained this defense, impacting Plaintiffs' trial strategy, and then, only when Defendants thought they might lose at trial, change course and raise the issue at the close of the evidence. *See Magee v. Cabana*, 35 F.3d 559, *1 (such a tactic is "totally unfair and unjust"); *Evans*, 241 F. App'x at

---

[1] Defendants listed a conclusory affirmative defense of qualified immunity in their answers (e.g., Dkt. 84), but did not press the defense in any motions to dismiss or in their initial summary judgment motion. It was only after Defendants were allowed a second summary judgment motion that they raised the defense as to Plaintiffs' Fourth Amendment claim. Dkt. 211. After the defense was denied (Dkt. 217), Defendants abandoned it.

550 (qualified immunity is "not a parachute to be deployed only when the plane has run out of

fuel"). Plaintiffs appropriately relied on the pretrial order, and Defendants' unfair tactic denied

Plaintiffs the opportunity to make decisions at trial about what evidence to press given a

qualified immunity defense, as well as the ability to timely propose special interrogatories, jury

instructions, or verdict forms. The defense has been unequivocally waived.

### B. Defendants waived (or forfeited) their specific qualified immunity challenges by failing to preserve them in a Rule 50(a) motion.

Given the absence of a qualified immunity defense in the pretrial order, this Court need

go no further in its analysis. However, Defendants also doubly waived (or forfeited), their

qualified immunity arguments by failing to preserve them in a Rule 50(a) motion at trial. As set

forth above, a party forfeits a Rule 50(b) argument that was not both presented in a Rule 50(a)

motion and renewed in a Rule 50(b) motion. *Unitherm Food Sys.*, 546 U.S. at 404-05; *Wallace*,

606 F.3d at 418.

To be preserved, an argument in a Rule 50(a) motion must "articulate the basis necessary

on which a judgment as a matter of law might be rendered." *Wallace*, 606 F.3d at 418. "A

skeletal 'argument', really nothing more than an assertion, does not preserve a claim." *United

States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Arguments that are perfunctory and

undeveloped, cite no legal authority or facts from the record are likewise insufficient to preserve

an argument. *See U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and

undeveloped arguments . . . are waived."); *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569-70

(7th Cir. 2004) (same); *Opp v. Wheaton Van Lines*, 231 F.3d 1060, 1066 (7th Cir. 2000) ("one-

paragraph argument" that "cites no legal authority nor any facts from the record" is forfeited);

*Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails

to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.").

Here, Defendants made only the following narrow, vague, and unsupported statements regarding qualified immunity arguments in their Rule 50(a) motion: (1) that "[a]t the time that [Defendants] acted and at the time of the first trial, the Fourth Amendment did not apply to these situations"; and (2) that "as to the specifics, because there's no developed case law in this area, having just changed in the appeal for this case, there's nothing that would have told the Defendants exactly how long they can leave somebody cuffed, whether or not more than one inmate could be searched at a time" or "what does or does not constitute a reasonable search." Exh. A, 6/6/2022 Trial Trans. Excerpts, at 21:21-22:13 (emphasis added). Defendants did not cite any legal authority or record evidence.

In their Rule 50(b) motion, Defendants now challenge whether they had fair notice of the unconstitutionality of conducting strip searches that were accompanied by verbal harassment, characterized by cross-gender viewing, and conducted in groups. Dkt. 273 at 12-14. Yet none of those issues was raised in Defendants' Rule 50(a) motion. *See* Exh. A at 21:21-22:13 (discussing only length of handcuffing and group searches). As to Defendants' statement that they did not know "what does or does not constitute a reasonable search," that contention is vague, skeletal, and perfunctory at best and thus inadequate to preserve the argument. *Supra* at 11 (citing, *e.g.*, *Dunkel*, 927 F.2d at 956).

As to Defendants' Rule 50(b) arguments regarding the clarity of the application of the Fourth Amendment as opposed to the Eighth (Dkt. 273 at 8-11), nowhere in Defendants' Rule 50(a) motion did Defendants argue that the Fourth Amendment did not clearly apply to visual strip searches. *See* Exh. A at 22:25 (stating vaguely only that it was unclear whether the Fourth

Amendment would "apply to these situations"). Nor did Defendants assert that they lacked notice

that they would be subject to an objective unreasonable standard rather than an Eighth

Amendment punitive intent standard. *See* Exh. A at 21:21-22:13. Neither issue was raised, and

even if either was vaguely alluded to, skeletal arguments and mere assertions do not suffice to

preserve an argument. *Supra* at 11 (citing, e.g., *Dunkel*, 927 F.2d at 956).

Defendants likewise failed to raise their argument (Dkt. 273 at 10), that the Eighth

Amendment verdict bore in any way on the qualified immunity analysis.  Nor, still yet did

Defendants argue in their Rule 50(a) motion that *Kingsley v. Hendrickson*, 801 F.3d 828 (7th Cir.

2015), was wrongfully decided. *See* Exh. A at 21:21-22:13. Those arguments, too, have been

forfeited. *Wallace*, 606 F.3d at 418; *Unitherm Food Sys.*, 546 U.S. at 404-05. This Court thus

need not reach these issues, because no qualified immunity arguments raised in Defendants' Rule

50(b) motion were sufficiently preserved in their Rule 50(a) motion.[2]

### C. The evidence at trial construed in favor of the liability verdict was sufficient to overcome a qualified immunity defense.

Even though Defendants had failed to preserve their qualified immunity defense in the

pretrial order such that Plaintiffs were required to overcome it at trial, the stipulations and trial

evidence were nonetheless sufficient to overcome the defense. "[O]nce trial has been had, the

availability of official immunity should be determined by the trial record." *Ortiz v. Jordan*, 562

U.S. 180, 184 (2011). "[T]he decisive question . .  is whether the evidence favoring the [plaintiff]

is legally sufficient to overcome the defense." *Id.*; *see also Davis v. Wessel*, 792 F.3d 793, 804

(7th Cir. 2015); *Fox v. Hayes*, 600 F.3d 819, 832 (7th Cir. 2010). The Court construes the

evidence strictly in Plaintiffs' favor, it "does not make credibility determinations or weigh the

---

[2] Any qualified immunity arguments not raised in Defendants' post-trial motion have also been waived. *Draine v. Bauman*, 708 F. Supp. 2d 693, 706 (N.D. Ill. 2010) (citing *Ruffino v. Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000)).

evidence," and it "disregard[s] all evidence favorable to the [Defendants] that the jury [was] not required to believe." *Passanati*, 689 F.3d at 659.

A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Estate of Perry v. Wenzel*, 872 F.3d 439, 460 (7th Cir. 2017) (quotation omitted). "The crucial question is whether the official acted reasonably in the particular circumstances that he or she faced." *Reed*, 906 F.3d at 547 (quotation and alterations omitted); *see also Burgess v. Lowery*, 201 F.3d 942, 946 (7th Cir. 2000); *Estate of Clark v. Walker*, 865 F.3d 544, 551 (7th Cir. 2017).

In obvious cases, "plaintiffs can demonstrate clearly established law by proving the defendant's conduct was 'so egregious and unreasonable that . . . no reasonable [official] could have thought he was acting lawfully.'" *Reed*, 906 F.3d at 547 (quotation omitted); *see also Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Plaintiffs may also show that the violation at issue constituted "'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (quotations omitted); *Henry*, 969 F.3d at 785 (same). Statutes, regulations, correctional standards, and prison policies, too, may contribute to fair notice of unconstitutional conduct. *E.g.*, *Hope*, 536 U.S. at 741-45 (relying on department regulation and Department of Justice report); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017) (relying on prison policies); *Furnace v. Sullivan*, 705 F.3d 1021, 1027, 1030 (9th Cir. 2013) (relying on prison regulations); *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433-34, 436-37 (2d Cir. 2009) ("The officers' failure to comply with their training and the relevant state law, provides strong support for the conclusion that the officers should have been aware of the wrongful character of their conduct."). To overcome qualified immunity, Plaintiffs

14

need not identify "a prior case that is directly on point." *Coady v. Steil*, 187 F.3d 727, 734 (7th Cir. 1999) (quotation omitted).

Here, a reasonable jury could have found, based on the evidence at trial favoring Plaintiffs, that Defendants subjected Plaintiffs to prolonged group inspections of their naked bodies and body cavities before cross-gender and other spectators; required Plaintiffs to expose the private function of menstruation before spectators, bleed and urinate on themselves, and stand barefoot on floors soiled with menstrual fluid and urine; subjected Plaintiffs to degrading comments about their bodies, gender, and odors; and forced Plaintiffs to stand in handcuffs for hours while awaiting the searches, while deprived of bathroom access and forced to endure threats from tactical officers in riot gear, who brandished batons at the fully-compliant women. Such conduct is easily sufficient to overcome a qualified immunity defense because Defendants had clear notice of its unconstitutionality. Indeed, Plaintiffs' evidence that Defendants carried out the strip searches in view of cross-gender spectators was *alone* sufficient to overcome the defense. Defendants' challenge fails.

> **1.      The evidence at trial showed that Defendants carried out strip and body cavity searches that unreasonably involved spectators including men, degrading insults, a failure to accommodate bathroom and menstruation needs, and unhygienic conditions, without any legitimate penological purpose.**

Here, the stipulations and evidence at trial demonstrated that, in March 2011, Defendants carried out a training exercise at Lincoln Correctional Center in which they subjected approximately 200 imprisoned women in housing units 2B and 4B to living area shakedowns, pat downs, and strip searches and body cavity inspections. *E.g.*, Dkt. 231-6, Agreed Stip. Of Fact No. 1; Exh. D, PX18, Email by Def. Hulett. The strip searches were initiated and patrolled by "Orange Crush" tactical team officers in full riot gear and helmets, who stormed the housing

units, banging their batons in a threatening manner, yelling and screaming at the women, and calling them derogatory names like "bitches" and "animals," without telling them what was happening. Exh. E, Williams Trial Trans. 9:6-9:14; Exh. F, Phillips Trial Trans. 5:10-7:3, 7:13-7:22, 8:22-9.5; Exh. G, Howard Trial Trans. 5:1-5:18; Exh. H, Morris Trial Trans. 4:16-5:5. Upon arrival at the housing units, the cadet trainees practiced handcuffing the women, and did so too tightly, after which Orange Crush officers marched the women to the gym and forced them to stand for hours while painfully handcuffed—without consideration for their age or medical needs—until they had been strip searched.  Exh. F, Phillips Trial Trans. 8:17-10:18, 20:5-21:17, 23:1-23:5; Exh. H, Morris Trial Trans. 7:22-8:18; Exh. I, Wells Trial Trans. 5:7- 6:18, 9:24-11:21; Exh. G, Howard Trial Trans. 6:17-7:8, 8:19-9:13.

When it was their turn to be searched, the women were taken in groups of as many as 8 prisoners at a time and forced to remove all their clothing. Exh. F, Phillips Trial Trans. 26:8-26:22; Exh. I, Wells Trial Trans. 14:7-17:19; Exh. J, Wells Grievance. They were placed so close to one another that they were touching, or nearly touching, while naked. Exh. E, Williams Trial Trans. 12:22-13:1. They then had to carry out a series of steps while naked, including lifting their breasts, spreading their buttocks, bending over, exposing their vaginal and anal cavities, and squatting and coughing three times, while cadets and officers visually inspected their bodies. Exh. F, Phillips Trial Trans.  26:8-30:17; Exh. G, Howard Trial Trans. 11:1-12:1. The process of training the cadets and conduct of the search in groups prolonged the time each woman spent naked, and so each woman remained unclothed for as long as 15 minutes. *See id.*

The strip searches were conducted in full view of crowds of onlookers that included the remaining prisoners, male and female correctional staff, and civilian spectators. *E.g.*, Exh. E, Williams Trial Trans. 14:9-14:23; Exh. H, Morris Trial Trans. 6:1-7:13; Exh. I, Wells Trial

16

Trans. 8:13-9:10, 9:24-11:21, 14:7-16:19; Exh. G, Howard Trial Trans. 7:23-8:16, 10:7-10:25, 12:2-12:7. During the searches, the Plaintiffs were subjected to degrading comments about their bodies, odor, and hygiene, and called derogatory names such as "bitches." *E.g.*, Exh. E, Williams Trial Trans. 14:9-14:23; Exh. F, Phillips Trial Trans. 23:6-24:19.

The tactical team members deprived the Plaintiffs of bathroom access for the entire duration of the training exercise, including for those women who were awoken by the searches and had not had the opportunity to use the bathroom since the night before, resulting in women urinating on themselves during the training exercise. Exh. E, Williams Trial Trans. 9:6-9:19, 11:3-14:8; Exh. F, Phillips Trial Trans. 5:10-5:24, 21:18-22:20; Exh. G, Howard Trial Trans. 9:14-9:25. Menstruating prisoners were forced to expose the private function of menstruation before a large audience, denied replacement sanitary products, and left to bleed on themselves; Defendants' failure to accommodate menstruation and urination during the searches also resulted in unhygienic and degrading conditions for all women, who had to stand barefoot on floors contaminated by menstrual fluid and urine. *E.g.*, Exh. E, Williams Trial Trans. 11:3-14:8, 14:24-15:12; Exh. G, Howard Trial Trans. 12:8-13:2.

Defendants had advance notice of the strip searches (*e.g.*, Exh. D), and no legitimate penological purpose justified their implementation in this demeaning manner. As but a few examples, Defendants admitted that conducting the March 2011 strip searches in view of men would have been unreasonable and served no legitimate penological purpose. Exh. M, Hulett Trial Trans. 52:7-52:13, 24:17-24:21. IDOC's policy did not allow men or spectators to observe strip searches of women prisoners during the March 2011 strip searches, because there was no emergency or exigency that could have justified such observation. *See* Agreed Stip. of Fact Nos. 23-25 (Dkt. 231-6); *see also* Exh. L, PX37, at p. 3 of 5, Ill. Admin. Code tit. 20, § 501.220(b)(2)

(Illinois law required that strip/body cavity searches of committed persons be "conducted by persons of the same sex . . . and in an area where the search cannot be observed by persons not conducting the search."). Warden Hulett was specifically instructed by her boss that the March 2011 strip searches should be conducted with "individual spaces curtained off" (Exh. D), but declined to implement the searches in that manner.[3]

Defendants further admitted that there was no legitimate penological purpose for using demeaning language during strip searches, and that doing so would have been unreasonable. Exh. M, Hulett Trial Trans. 24:3-24:16.  IDOC's policy and training did not allow cadets or correctional officers conducting strip searches to make rude or derogatory comments to prisoners, and IDOC's stated policy requires employees to report any such behavior they observe. Agreed Stip. Of Fact No. 22 (Dkt. 231-6); Exh. K, PX39, Personal Search Training Curriculum, at p.239 (IDOC's training on personal searches requires professionalism and prohibits "remarks that might degrade or offend the person being searched").

Defendants were also required by IDOC policy to accommodate menstruating prisoners during strip searches. Exh. M, Hulett Trial Trans. 55:25-56:9. IDOC policy further did not allow tactical officers to brandish batons at the Plaintiffs during the March 2011 strip searches because they were compliant throughout the training exercise. Agreed Stip. Of Fact Nos. 20 & 26 (Dkt. 231-6).

The strip searches and body cavity inspections, specifically, were conducted at the request of the training academy, solely to train cadets—not for any security purpose.  Exh. D; Exh. M, Hulett Trial Testimony, at 15:20-16:18, 26:11-28:14, 29:22-30:1, 30:16-31:17, 32:2-

---

[3] It was also policy at Lincoln at the time that prisoners would not be strip and body cavity searched in a collective group. Exh. M, Hulett Trial Trans. 48:3-49:23; Exh. O, Grievance, at 4 ("Offenders are not to be strip searched as a collective group. Direction of proper strip searching will be addressed.").

33:2. Defendants admitted that it would have been unreasonable to conduct strip searches solely

to train cadets (Exh. M, Hulett Trial Testimony, at 32:12-32:19), particularly given the

prevalence of prior trauma in the female correctional population (*id.* at 22:25-24:2).

### 2.   The strip searches were obviously unreasonable.

Given the stipulations and evidence at trial described above, the strip searches were

obviously unreasonable such that qualified immunity is unavailable. In obvious cases, "plaintiffs

can demonstrate clearly established law by proving the defendant's conduct was 'so egregious

and unreasonable that . . . no reasonable [official] could have thought he was acting lawfully.'"

*Reed*, 906 F.3d at 547 (quotation omitted); *see also Taylor*, 141 S. Ct. at 54; *Hope v. Pelzer*, 536

U.S. 730, 741 (2002). Here, no reasonable correctional officers could have thought that they

were acting constitutionally when they subjected Plaintiffs to prolonged group inspections of

their naked bodies and private parts before cross-gender and other spectators; required Plaintiffs

to expose the private function of menstruation before spectators, bleed and urinate on

themselves, and stand barefoot on floors soiled with menstrual fluid and urine; subjected

Plaintiffs to degrading comments about their bodies, gender, and odors; and forced Plaintiffs to

stand in handcuffs for hours while awaiting the searches, deprived of access to bathroom

facilities, and while enduring threats from tactical officers in riot gear, who brandished batons at

the fully-compliant Plaintiffs. Defendants did not require an identical case to be on notice of the

obvious unconstitutionality of strip and body cavity searches conducted in this manner.

Any reasonable corrections employee—"indeed, any reasonable person, [corrections

official] or not," would have understood that such obviously egregious conduct offends the

Constitution. *Vaughn v. Ruoff*, 253 F.3d 1124, 1130 (8th Cir. 2001); *see also Doe v. Renfrow*,

631 F.2d 91, 92-93 (7th Cir. 1980) ("It does not require a constitutional scholar to conclude that

[the search at issue] is an invasion of constitutional rights of some magnitude. More than that: it is a violation of any known principle of human decency. . . . [S]imple common sense would indicate that the conduct . . . was . . . unlawful [and] outrageous . . .") (citation omitted).

The obvious unreasonableness of searches conducted in this manner was reflected in Defendants' admissions, state statutes, and applicable policies, which further reflected that Defendants had notice that their misconduct—carrying out strip and body cavity searches that unreasonably involved spectators including men, degrading insults, a failure to accommodate menstruation, unhygienic conditions, and abuse, without any legitimate penological purpose— was unconstitutional. *See supra* at 17-19; *see also Hope*, 536 U.S. at 741-45 (relying on department regulation and Department of Justice report); *Booker*, 855 F.3d at 545 (relying on prison policies); *Furnace*, 705 F.3d at 1027, 1030 (relying on prison regulations); *Okin*, 577 F.3d at 433-34, 436-37 ("The officers' failure to comply with their training and the relevant state law, provides strong support for the conclusion that the officers should have been aware of the wrongful character of their conduct."). Defendants agreed that they were prohibited from conducting strip searches in this manner absent an emergency or exigency (which they admitted did not exist on March 31, 2011), and that doing so would be unreasonable. Defendants' qualified immunity defense thus fails.

> **3.  Controlling authority and a robust consensus of persuasive authority gave Defendants further notice of the unconstitutionality of their conduct.**

Plaintiffs may also overcome qualified immunity by showing that the violation at issue constituted "'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *Wesby*, 138 S. Ct. at 589-90 (quotations omitted); *Henry*, 969 F.3d at 785 (same). Statutes, regulations, and prison policies, too, may contribute to

fair notice of unconstitutional conduct. *E.g.*, *Hope*, 536 U.S. at 741-45; *Booker*, 855 F.3d at 545; *Furnace*, 705 F.3d at 1027, 1030; *Okin*, 577 F.3d at 433-34, 436-37.

Here, as Defendants previously conceded, "[t]he defendants performed their official duties in compliance with the Eighth Amendment." Dkt. 211 at 5. Also, as they previously conceded (Dkt. 122 at 4-5; Dkt. 217 at 3-4), they had clear notice as of March 2011 that the conduct at issue here would violate the Eighth Amendment. Thus, as this Court previously explained at summary judgment, if visual strip searches were conducted as alleged (and as Plaintiffs' trial evidence supported) – in large groups, before an audience of cross-gender and other spectators, on floors contaminated by menstrual fluid and bodily fluids, without provision of sanitary products, punctuated by demeaning comments such as that the women were "bitches" and stank, all without penological purpose – then:

> Defendants would have been on notice that such conduct, if proven, violated Plaintiffs' clearly established rights under the Eighth Amendment and also would have been an objectively unreasonable manner of training cadets. Defendants do not argue otherwise. That Defendants can now be liable under the Fourth Amendment for the same conduct does not change the conclusion that Defendants were on notice that the conduct, if true, clearly violated the law.

Dkt. 217 at 3-4; *see also* Dkt. 122 at 4-5 ("Defendants wisely do not dispute that Plaintiffs' descriptions support an Eighth Amendment claim if true . . . ").

That same conclusion defeats Defendants' qualified immunity claim, now that the trial evidence, construed in Plaintiffs' favor, supports their allegations at summary judgment. Controlling Eighth Amendment jurisprudence was clear that Defendants could not conduct visual strip and body cavity searches in such an unreasonable manner as would cause gratuitous infliction of suffering without penological justification. *See Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (the conduct of a visual strip search of a prisoner in front of cross-gender spectators, accompanied by ribald comments and sexually explicit gestures, violates the Eighth

Amendment if conducted in that manner without any legitimate penological purpose); *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009) ("the manner in which the [strip] searches were conducted must itself pass constitutional muster"); *May v. Trancoso*, 412 F. App'x 899, 902 (7th Cir. Mar. 16, 2011) (the visual strip search of a prisoner in front of cross-gender spectators, accompanied by jeering and sexual ridicule, violates the Eighth Amendment, if conducted in that manner without any legitimate penological purpose). This jurisprudence alone provided Defendants with fair notice of the unconstitutionality of their conduct.

In addition, as of 2011, the Fourth Amendment expressly protected "the right of the people to be secure in their persons" against "unreasonable searches," U.S. Const. amend. IV, and the Supreme Court had held that convicted prisoners were "persons" for purposes of constitutional analysis, *Cruz v. Beto*, 405 U.S. 319, 321 (1972). The Supreme Court had clarified that visual strip and body cavity searches were "searches" of "persons" subject to the Amendment's reasonableness requirement (*Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009)), that could not be conducted in an unreasonable or abusive manner (*Bell*, 441 U.S. at 560). The Supreme Court had further explained that convicted prisoners retain "rights of [bodily] privacy" (*Houchins v. KQED, Inc.*, 438 U.S. 1, 5 n.2 (1978)), and all constitutional rights "not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration" (*Hudson v. Palmer*, 468 U.S. 517, 523 (1984)), such as rights against abusive visual strip and body cavity searches (*Bell*, 441 U.S. at 560).

Indeed, the Supreme Court had expressly stated in *Bell* that visual body cavity searches of all prisoners must be "conducted in a reasonable manner" and that "abuse cannot be condoned." 441 U.S. at 546 n.28 & 560. The Court in *Bell* considered a blanket challenge by pretrial prisoners to a detention center's practices, including the conduct of a routine visual body

cavity search after contact visits. *Id.* at 524-29. The detention center housed pretrial detainees, convicted inmates, and others (*id.* at 524), and the Court's analysis regarding the challenged strip and body cavity searches addressed all "inmates" at the detention center, not just pretrial detainees (*id.* at 558-60 & n.28). The Court recognized that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison" (*id.* at 545); that all prisoners—both pretrial and convicted—face some limitations on their rights due to their detention (*id.* at 546-47); and that the strip and body cavity searches, which gave the Court "pause" (*id.* at 558), "invade the personal privacy of inmates" (*id.* at 560). Although the Supreme Court held that the professional search policy in that case comported with the Fourth Amendment (*id.* at 558, 560), the Court declared that "abuse cannot be condoned" and "[t]he searches must be conducted in a reasonable manner" (*id.* at 560). Defendants were on clear notice following *Bell* that the Supreme Court foresaw Fourth Amendment recourse for convicted prisoners subjected to visual body cavity searches conducted in an abusive and unreasonable manner, as here, absent a legitimate penological purpose.

Seventh Circuit Fourth Amendment jurisprudence decisions further gave Defendants fair notice that strip searches of prisoners had to be conducted in a reasonable manner. *E.g.*, *Canedy v. Boardman*, 16 F.3d 183, 186 (7th Cir. 1994) (visual strip searches of convicted prisoners must be conducted in a reasonable manner); *Mary Beth G. v. Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) (visual body cavity searches of pretrial prisoners held unreasonable under the Fourth Amendment because the Court could "think of few exercises of authority by the state that intrude on a citizen's privacy and dignity as severely as the visual . . . genital searches practiced here").

Also by March 2011, "a long and unbroken series of decisions by [this Court's] sister circuits" (*Burgess*, 201 F.3d at 945; *see also Abbott v. Sangamon County*, 705 F.3d 706, 731 (7th

Cir. 2013)) confirmed that the Fourth Amendment did not permit unreasonable, abusive non-

emergency strip/body cavity searches of convicted prisoners, defeating qualified immunity. *See*

*Cookish v. Powell*, 945 F.2d 441, 446-47 (1st Cir. 1991) (finding it clearly established that visual

body cavity searches of convicted prisoners must be reasonable absent an emergency); *Bonitz,*

804 F.2d at 170-71; *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41-42 (1st Cir. 2009); *Arruda v.*

*Fair*, 710 F.2d 886, 886-87 (1st Cir. 1983); *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992);

*Hurley v. Ward*, 584 F.2d 609, 611 (2d Cir. 1978); *Lee v. Downs*, 641 F.2d 1117, 1119-21 (4th

Cir. 1981); *Bushee v. Angelone*, 7 F. App'x 182, 184 (4th Cir. 2001) (unpublished); *Hutchins v.*

*McDaniels*, 512 F.3d 193, 196 (5th Cir. 2007); *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir.

1999); *Elliott v. Lynn*, 38 F.3d 188, 191 n.3 (5th Cir. 1994); *Cornwell v. Dahlberg*, 963 F.2d 912,

916 (6th Cir. 1992); *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 575 (6th Cir. Jan. 31,

2013) ("Based on the state of the law in existence at the time of the [2007] strip search, it was

clearly established that [visual] strip searches were permissible as a matter of constitutional law,

but only so long as they were reasonable under the circumstances and performed pursuant to a

legitimate penological justification."); *Franklin v. Lockhart*, 769 F.2d 509, 510-11 (8th Cir.

1985); *Seltzer-Bey v. Delo*, 66 F.3d 961, 963 (8th Cir. 1995); *Mitchenfelder v. Sumner*, 860 F.2d

328, 333-34 (9th Cir. 1988); *Farmer v. Perrill*, 288 F.3d 1254, 1259-61 (10th Cir. 2002)

(convicted prisoners have a "well-established right . . . not to be subjected to a humiliating

[visual] strip search in full view of several (or perhaps many) others" absent a legitimate

penological interest); *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993).[4] In March 2011,

the Third Circuit had not yet decided the issue. *See Parkell v. Danberg*, 833 F.3d 313, 324-26

---

[4] In a minority of these cases, the challenged searches included touching by the searching
official; however, none adopted that factor as a threshold requirement for a Fourth Amendment
"search." *Bonitz*, 804 F.2d at 172-173; *Lee*, 641 F.2d at 1120-21; *Sanchez*, 590 F.3d at 42-44.

(3d Cir. 2016). The federal and D.C. circuits had also not had occasion to consider the question, to Plaintiffs' counsel's knowledge.

Plaintiffs' evidence that the searches were conducted in view of spectators (*supra* at 16-17), including men, *alone* suffices to overcome Defendants' qualified immunity defense. Controlling authority apprised Defendants, specifically, of Plaintiffs' right not to be subjected to visual strip and vaginal and anal cavity inspections in view of spectators, including cross-gender spectators, absent an exigency or legitimate penological need. *See Canedy*, 16 F.3d at 187-88 (opposite-sex observation of intrusive body searches such as visual strip searches is unconstitutional absent an emergency or legitimate penological interest because "respecting an inmate's constitutional privacy interests" with regard to cross-gender strip searches "is a constitutional mandate" and "[a]lmost every federal court that has addressed this issue has come to the conclusion that the Constitution demands such an accommodation [in the absence of an emergency]"); *Calhoun*, 319 F.3d at 940 (presence of opposite-sex spectators, without legitimate penological purpose, violates Eighth Amendment); *Campbell v. Miller*, 499 F.3d 711, 718-19 (7th Cir. 2007) (an otherwise permissible strip search is rendered unreasonable by its implementation in front of spectators, absent an exigency or security need); *Iskander v. Village of Forest Park*, 690 F.2d 126, 129 (7th Cir. 1982) ("Defendant naturally does not maintain that routine strip searches may be conducted in a room open to the prying eyes of passing strangers consistent with the reasonableness requirement imposed on all searches under the Fourth Amendment, nor would such a contention be entertained."); *May*, 412 F. App'x at 902 (the presence of cross-gender and civilian spectators during a visual strip search, without any legitimate penological purpose, violates the Eighth Amendment); *see also Mays*, 575 F.3d at 650 (strip searches cannot be conducted in groups absent a legitimate penological purpose for doing

so).

A robust consensus of circuit cases of persuasive authority also clearly established that prisoners were not to be subjected to visual strip and body cavity searches in view of spectators absent a legitimate penological interest. *E.g.*, *Canedy*, 16 F.3d at 187-88 ("Almost every federal court that has addressed this issue [of the conduct of visual strip searches in view of cross-gender spectators absent a legitimate purpose for the manner of the search] has come to the conclusion that the Constitution demands [] an accommodation [in the absence of an emergency]"); *Farmer*, 288 F.3d at 1259-60 ("the right not to be subjected to a humiliating [visual] strip search in full view of several (or perhaps many) others unless the procedure is reasonably related to a legitimate penological interest" was "well-established" in 1993); *Stoudemire*, 705 F.3d at 575, 567 (plaintiff had a clearly-established constitutional right not to be visually strip searched in a cell with a window opening out onto a busy hallway such that prisoners and staff could see her, absent a penological justification for the open cell window); *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1141-47 (9th Cir. 2011) (en banc) (collecting authority, including cases involving visual strip searches, to support the Court's holding that cross-gender observation of body cavity searches violate the Constitution absent emergency or exigent circumstances); *Hutchins*, 512 F.3d at 195-96 (conduct of a visual strip and body cavity search in view of other prisoners and cross-gender guard, absent an emergency, would violate the Constitution).

Likewise, controlling and robust persuasive authority clearly established that Plaintiffs had a right not to be subjected to strip and body cavity searches that were accompanied by "sexual ridicule" and degrading insults, absent a legitimate penological purpose (*Calhoun*, 319 F.3d at 940; *Mays*, 575 F.3d at 650; *May*, 412 F. App'x at 902-03), or that were conducted in a manner that was "extreme or patently abusive" (*Mary Beth*, 723 F.2d at 1270). *See also Somers*

*v. Thurman*, 109 F.3d 614 (9th Cir. 1997) ("subjection of prisoners to verbal assaults during strip searches performed by officials of the other sex serves no administrative purpose and might present a question under the Fourth Amendment").

Defendants also had clear notice that, absent exigent circumstances or a legitimate penological purpose, body cavity searches could not be conducted in unhygienic conditions, such as those here, in which Defendants failed to accommodate menstruation and bathroom access, forcing them to bleed and urinate on themselves and prisoners to have to stand barefoot on floors contaminated with menstrual fluid and urine. *See Mays*, 575 F.3d at 650 (jury could have found that strip searches violated the Eighth Amendment given testimony about unhygienic conditions); *see also Bonitz v. Fair*, 804 F.2d 164, 169, 172-73 (1st Cir. 1986), overruled on procedural grounds by *Unwin v. Campbell*, 863 F.2d 124, 128 (1st Cir. 1988) ("a body-cavity search of female inmates . . . conducted in a non-hygienic manner . . . was a clearly established violation of the inmates' fourth amendment right"); *Salem v. Michigan Dep't of Corr.*, 643 F. App'x 526, 530 (6th Cir. 2016) (invasiveness of the strip search was "amplif[ied]" by its commission in unsanitary conditions, on surfaces covered with bodily fluids from other prisoners).

Here, Defendants conceded that they had no legitimate interest in conducting the body cavity inspections in view of cross-gender spectators—in fact, such viewing violated policy. Exh. M, Hulett Trial Trans. 52:7-52:13, 24:17-24:21; Agreed Stip. of Fact Nos. 23-25 (Dkt. 231-6); Exh. D; Exh. L at p. 3 of 5. Rather, Defendants had been warned in advance to provide "individual spaces curtained off" to prevent such viewing (Exh. D), and conceded that there was no emergency or other exigent circumstance that would have warranted cross-gender observation (Agreed Stip. of Fact Nos. 23-25 (Dkt. 231-6)). Likewise, Defendants and other prison officials

also testified at trial that there was no legitimate penological purpose for the other demeaning and degrading aspects of the searches, such as unprofessional language, or denial of sanitary products or bathroom access. *E.g.*, Exh. M, Hulett Trial Trans. 24:3-24:16, 55:25-56:9; Agreed Stip. Of Fact No. 22 (Dkt. 231-6); Exh. K at p.239. The unconstitutionality of these aspects of the search, too, were obvious based on human decency. Defendants denied that these search characteristics occurred, rather than seeking to justify them.

 This Court need not reach Defendants' claim that the law did not clearly establish that one aspect of Defendants' search procedure—subjection of Plaintiffs to painful, too-tight handcuffing and forced standing, for hours—could be considered part of the "manner of the search" for Fourth Amendment purposes. Dkt. 273 at 13. Indeed, doing so would be highly unfair given Defendants' omission of a qualified immunity defense from the pretrial order and Plaintiffs' reliance on that pretrial order. The stipulations and trial evidence also overcome a qualified immunity defense even without these search characteristics. Regardless, the testimony at trial from Defendants including Troy Dawdy was that handcuffing was a purposeful *component* of the search procedure; that women were typically not handcuffed within Lincoln outside of the March 31, 2011 mass strip searches (Exh. F, Phillips Trial Trans. 12:25-13:6); and that the handcuffing during the mass strip searches lasted only until the searches were completed, after which the cuffs were removed for the remainder of the time the women remained together in the gym, establishing that they were part and parcel of the strip search procedure the Plaintiffs endured. *E.g.*, Agreed Stip. Of Fact No. 18 (Dkt. 231-6); Exh. F, Phillips Trial Trans. 30:13-30:24. Defendants were on notice that the manner in which a strip search is conducted has to be reasonable and not abusive. *See supra* at 21-27 (citing, e.g., *Bell*, 441 U.S. at 560). Defendants do not provide any authority defining a Fourth Amendment search to exclude such search

characteristics, and the authority they do rely on post-dates the searches and does not discuss

Fourth Amendment searches.

### 4.  Fair notice that Defendants' conduct would violate the Eighth Amendment is sufficient to defeat qualified immunity.

Defendants argue that "it was not clearly established that the Fourth Amendment's

objective standard of reasonableness would apply to these searches" and "it was not clearly

established at the time of the searches in 2011 that the Fourth Amendment applied to visual strip

searches of prisoners." Dkt. 273 at 8. Thus, they contend, they lacked fair notice that they could

be held liable under the Fourth Amendment for visual strip searches that were objectively

unreasonable but performed without a subjective punitive intent. Defendants' arguments fail

because qualified immunity turns on the reasonability of Defendants' conduct, not whether they

knew they would be adjudged by an objective reasonableness standard or whether Plaintiffs'

remedy would fall under the Fourth Amendment rather than the Eighth.

As this Court has previously held (Dkt. 217 at 4), as Defendants have themselves

observed (Dkt. 211 at 6), and as the Seventh Circuit has mandated, the "clearly established law"

prong turns on Defendants' objective <u>conduct</u>—not their subjective intent or the availability of a

remedy. *E.g.*, *Kingsley*, 801 F.3d at 831-33; *Armstrong*, 786 F.3d at 538; *Reed v. Palmer*, 906

F.3d 540, 549-52 (7th Cir. 2018); *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014);

*Auriemma*, 910 F.2d at 1453. A defendant's state of mind is "irrelevant" to this inquiry.

*Armstrong*, 786 F.3d at 538 (citing, e.g., *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)).[5] Such

---

[5] This rule applies even when a particular state of mind is an element of the constitutional violation itself. *Auriemma*, 910 F.2d at 1452-54. In such a case, "the court's consideration of intent is relevant to the determination of whether a constitutional violation exists but not in deciding if the constitutional standard was clearly established." *Id.* at 1453; *see also Fields*, 740 F.3d at 1114 ("when the question is whether to grant immunity to a public employee, the focus is on his conduct, not on whether that conduct gave rise to a tort in a particular case."); *Jackson v. City of Cleveland*, 925 F.3d 793, 826 (6th Cir. 2019) (same).

a rule is necessitated by the overarching purpose of qualified immunity: to ensure that officials "will not be held personally liable as long as their actions are *reasonable* in light of current" law. *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (emphasis added). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Reed*, 906 F.3d at 546 (quotation omitted). The "clearly established" prong, in particular, is designed to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions" (*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)), judged from the perspective of a reasonable officer (*Armstrong*, 786 F.3d at 538).

Here, Defendants were on notice at the time of that the carrying out of strip and body cavity searches that unreasonably involved cross-gender and civilian spectators, degrading and ridiculing insults, unhygienic conditions, threats, and abuse, without any legitimate penological purpose, violated the Eighth Amendment. Indeed, this Court observed in its first summary judgment order that "Defendants wisely do not dispute that Plaintiffs' descriptions support an Eighth Amendment claim if true." Dkt. 122 at 4-5. Defendants have further conceded that they "performed their official duties in compliance with the Eighth Amendment." Dkt. 211 at 5. Thus, given the allegations and trial evidence substantiating objectively unreasonable manner that would violate the Eighth Amendment, Defendants are not entitled to qualified immunity, regardless of whether or not they had a subjective intent to punish.

Defendants' perversion of qualified immunity contravenes the doctrine's purpose, as recognized by the Seventh Circuit on remand from the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). The Supreme Court had held that an objective reasonableness

standard governed Fourteenth Amendment excessive force claims brought by pretrial detainees.

*Id.* at 396. On remand, the *Kingsley* defendants claimed an entitlement to qualified immunity on

the basis that controlling law at the time of their misconduct had suggested a subjective good

faith standard, and thus that they were not on notice that they could be held liable pursuant to an

objective reasonableness standard. *Kingsley*, 801 F.3d at  832-33. The Seventh Circuit disagreed,

explaining:

> If we were to accept the defendants' argument here, we would untether the qualified
> immunity defense from its moorings of protecting those acting in reliance on a standard
> that is later determined to be infirm. . . . To accept the defense of qualified immunity
> here, we would have to accept the dubious proposition that, at the time the officers acted,
> they were on notice only that they could not have a reckless or malicious intent and that,
> as long as they acted without such an intent, they could apply any degree of force they
> chose. As we have noted, however, the law clearly established that the amount of force
> had to be reasonable in light of the legitimate objectives of the institution.

*Id.*; *see also Reed*, 906 F.3d at 549-52 (qualified immunity unavailable even though the law was

"not clear about whether state juvenile detention facility conditions should be judged under the

Eighth Amendment[] . . . or . . . Fourteenth Amendment[]").

Other circuits are in accord. *See Sandoval v. Cty. of San Diego*, No. 18-55289, 2021 WL

116539, at *14 (9th Cir. Jan. 13, 2021) ("when the governing law has changed since the time of

the incident, we apply the current law to determine if a constitutional violation took place under

the first prong of qualified immunity analysis, and the second prong remains what it has always

been: an objective examination of whether established case law would make clear to every

reasonable official that the defendant's *conduct* was unlawful in the situation he confronted.");

*Hopper v. Plummer*, 887 F.3d 744, 755-56 (6th Cir. 2018) ("a defendant is not entitled to

qualified immunity simply because the courts have not agreed upon the precise formulation of

the applicable standard. Rather, the relevant question under the clearly established prong is

whether defendants had notice that their *conduct* was unlawful in the situation they

confronted."); *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 72-73 (1st Cir. 2016) (despite

uncertainty about the governing legal standard, the defendants were not entitled to qualified

immunity because "a reasonable officer would have known that using force in the way that the

officers here appear to have done in the particular factual circumstances that they encountered

violated [the plaintiff's] constitutional rights"); *Dyer v. Houston*, 964 F.3d 374, 384 (5th Cir.

2020) (confusion in the case law about whether subjective intent was required to prove an

inadequate medical care claim did not mean the defendants were entitled to qualified immunity).

A contrary approach would transform "qualified immunity, a defense designed 'to shield

officials . . . when they perform their duties *reasonably*,'" into a standard pursuant to which

defendants "would be protected from liability—no matter how *unreasonable* their conduct—as

long as they [lacked the requisite subjective intent]," "produc[ing] results directly contrary to the

purposes served by the doctrine." *Sandoval*, 2021 WL 116539, at *14 (quoting *Pearson v.

Callahan,* 555 U.S. 223, 231 (2009)) (emphasis added).

Defendants' argument here is similarly "dubious." *Kingsley*, 801 F.3d at 832-33.

Defendants are arguing that they were on notice that so long as they acted without a subjective

intent to humiliate or punish, there was no constitutional limit on the manner of the visual strip

searches that they carried out on prisoners. *Kingsley* directly rejects this untenable argument. *Id.*

Rather, even if Defendants had clear notice only that they could not conduct unreasonable,

humiliating, and degrading visual strip searches because doing so would violate the Eighth

Amendment, that is sufficient to foreclose qualified immunity for their conduct. They are not

entitled to qualified immunity merely because (as they claim), they did not know that Plaintiffs

had a remedy pursuant to the Fourth Amendment for objectively unreasonable misconduct.

Qualified immunity does not excuse unreasonable conduct. *Id.* Nor does qualified immunity turn

on whether the law was clear that the Plaintiff would have a remedy under a particular constitutional provision. *Fields*, 740 F.3d at 1114 ("But when the question is whether to grant immunity to a public employee, the focus is on his conduct, not on whether that conduct gave rise to a tort in a particular case."); *Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d. Cir. 2007) ("the proper inquiry is whether the right itself—rather than its source—is clearly established" (emphasis in original)). The analysis in *Kingsley*, *Armstrong*, *Fields*, and *Reed* squarely applies here and necessitates the denial of Defendants' motion.

Defendants suggest that they were not on notice of the unconstitutionality of *visual* strip searches involving the degrading conditions in this case, such as cross-gender spectators. Yet as of 2011, the Supreme Court and Seventh Circuit had not excluded visual strip or body cavity searches from the Eighth Amendment's reach, nor was there any question that an unnecessarily degrading and humiliating visual strip and body cavity search of a prisoner would violate the Eighth Amendment provided that the Defendants had the requisite subjective intent to punish. *See supra* at 21-22. To the contrary, nearly all of the Fourth and Eighth Amendment authorities cited above, *supra* at 21-27, involved visual, as opposed to tactile, body cavity searches. Moreover, although a tactile search of body cavities was recognized as a factor bearing on the intrusiveness of the search, no Court as of 2011, to Plaintiffs' knowledge, had made that characteristic a requirement for Fourth Amendment or Eighth Amendment liability. And as of 2011, no Fourth Amendment decision addressing strip and body cavity searches had foreclosed liability for a strip search merely because the inspection of vaginal and anal cavities was conducted through visual inspection as opposed to a probing.

Defendants attempt to distinguish *Kingsley*, but ignore that there is no question that the Eighth Amendment prohibited degrading visual strip searches as of 2011—such as those

conducted in view of cross-gender spectators and with degrading insults absent a legitimate penological justification—regardless of whether or not such conduct was also prohibited by the Fourth Amendment. Defendants' argument is foreclosed by *Kingsley*.

Defendants also argue that *Kingsley* was wrongfully decided, but of course, this Court does not have the authority to decline to adhere to controlling precedent. *Kingsley*'s reasoning is also compelled by the purpose of the qualified immunity doctrine and other analogous cases in this circuit. *See supra* at 29-33 (citing, *e.g.*, *Armstrong*, 786 F.3d at 538; *Auriemma*, 910 F.2d at 1452-54; *Reed*, 906 F.3d at 549-52; & *Fields*, 740 F.3d at 1114). Other circuits are in accord. *See supra* at 31-32. Defendants do not cite any authority rejecting *Kingsley*'s rule.

Defendants point to *Lovett v. Herbert*, 907 F.3d 986, 993 (7th Cir. 2018), but that case supports Plaintiff's position. There, the court granted qualified immunity for a litany of reasons to defendants accused of placing an intoxicated pretrial detainee in an upper bunk when the plaintiff sued after falling off the bunk. *Id.* at 993. Addressing the plaintiff's Fourth Amendment unreasonable conduct claim, the Seventh Circuit reasoned that the upper bunk placement was "not egregiously or obviously unreasonable"; cited the number of "intervening events" between the bunk placement and the plaintiff's injury that prevented the chain of events from being "so obviously foreseeable" as to give the defendants' sufficient notice of unconstitutional conduct; and observed that no controlling authority indicated otherwise. *Id.* Rather than excluding Eighth Amendment caselaw from its qualified immunity analysis (as Defendants imply is required), *Lovett* court took pains to *include* such cases in its assessment of clearly-established law, explaining: "A number of these cases concern . . . the Eighth Amendment's deliberate indifference standard, which imposes a higher burden of proof on plaintiffs than the Fourth Amendment reasonableness standard at issue here. . . . Of course, conduct that is deliberately

34

indifferent is also unreasonable . . . We consider the relevance of these cases with that principle in mind." *Id.* at 993 n.5. *Lovett* thus supports Plaintiffs' position.

Defendants take out of context *Lovett*'s passing mention that one Eighth Amendment defense ruling in an upper bunk placement case, *Estate of Miller v. Marberry*, 847 F.3d 425 (7th Cir. 2017), addressed Eighth and not Fourth Amendment liability. That reference merely applied the principle stated in *Lovett*'s footnote 5: that "conduct that is not deliberately indifferent [under the Eighth Amendment] may still be unreasonable [under the Fourth]." 907 F.3d at 994 (emphasis added). *Lovett* does not adopt the proposition Defendants advance here.

### 5. Although immaterial to the immunity analysis, Defendants had fair notice that their conduct would also violate the Fourth Amendment.

Even if Plaintiffs were required to show that Defendants had fair notice that their conduct was subject to the Fourth Amendment's objective reasonableness standard (which they are not), such a requirement, too, is satisfied. Defendants were on notice that the Fourth Amendment prohibited their conduct based on authority from the Supreme Court, the Seventh Circuit, and unanimous decisions by every single sister circuit to have considered the issue.

As set forth above, the Supreme Court's precedents, Seventh Circuit's precedents, and the unanimous decisions of every single sister circuit to have considered the issue made clear that prisoners have Fourth Amendment rights against unreasonable visual strip and body cavity searches. *See supra* at 21-27; *see also Burgess*, 201 F.3d at 945 ("long and unbroken series of decisions by our sister circuits" clearly established constitutional right); *Booker*, 855 F.3d at 539-46 (the "unanimity among [] sister circuits demonstrates that the constitutional question is 'beyond debate'"); *Williams v. Bitner*, 455 F.3d 186, 194 (3d Cir. 2006) (law clearly established because "decisions from the Supreme Court and this Court support the principles underlying the right asserted by Williams" and decisions by three sister circuits so hold); *Irving v. Dormire*, 519

F.3d 441, 451 (8th Cir. 2008) (finding law clearly established "notwithstanding the lack of a decision squarely on point within our circuit . . ., given the clear weight of authority in the circuits that have ruled on the question"); *Turner v. Arkansas Insurance Dep't.,* 297 F.3d 751, 758 (8th Cir. 2002) ("one Supreme Court case, which strongly implies that Turner's position is the correct one, plus two courts of appeals cases and fifteen district court opinions that expressly state that Turner's position is the correct one, is enough to show the law in question was 'clearly established.'"); *Brown v. Battle Creek Police Dep't.*, 844 F.3d 556, 566-67, 572 (6th Cir. 2016) ("given the fact that every sister circuit that has confronted this issue has concluded that an individual has a property right in their dog, and that a district court within this Circuit has concluded the same, we hold that this right was clearly established in 2013 when the conduct in this action occurred.").

In arguing otherwise, Defendants rely on only two decisions: *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995), and *King v. McCarty*, 781 F.3d 889, 892 (7th Cir. 2015). Neither *Johnson* nor *King* addressed strip and body cavity inspections, and *King* long post-dated the searches at issue.

*Johnson* considered a Fourth Amendment challenge to incidental and professional observation by female corrections officers of male prisoners in their daily activities consisting of "[a]nonymous visual inspections from afar" of prisoners in partially obstructed showers and toilets. 69 F.3d at 145-49. As the Supreme Court and Seventh Circuit had long explained, such viewing of the external of the naked body, while still a search, was distinctly different from far more intrusive procedures such as the one here, in which Plaintiffs were made to strip naked, bend over, spread their buttocks, and expose their vaginal and anal cavities for close visual inspection by an official searching for contraband in those cavities. *See, e.g.*, *Canedy*, 16 F.3d at

36

187 (distinguishing cross-gender "occasional or inadvertent sighting . . . of inmates in their cells or open showers" from cross-gender observation that "is more intrusive (like a strip search[])"); *Safford*, 557 U.S. at 375 (a strip search is "obviously different" from the "experience of nakedness or near undress in other [] circumstances," such as communal locker rooms). *Johnson* even itself observed that the observation at issue of prisoners in "cells, showers, and toilets is less intrusive than [] body-cavity inspections." 69 F.3d at 146. *Johnson* is thus factually dissimilar. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (clearly established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition"). And *Johnson* merely held that the prisoner plaintiff's Fourth Amendment right not to be seen naked in showers and toilets was overcome by legitimate prison interests absent here: the prison's needs to hire female correctional officers, and for them to adequately perform their jobs. 69 F.3d at 145, 147-48.

To be sure, the *Johnson* panel at times used broad language, yet that language was dicta, and if any doubt existed in its aftermath, it was quickly put to rest in *Peckham v. Wisconsin Dep't of Corr.*, 141 F.3d 694, 697 & n.2 (7th Cir. 1998), long before the searches in this case. In *Peckham*, this Court indicated that the Eighth Amendment protects prisoners from strip searches "when their aim is punishment" but affirmed that a convicted prisoner enjoys some "protection . . . under the Fourth Amendment against unreasonable searches" because there may be "real-life scenarios where prison strip searches of inmates could be said to be unreasonable." *Id.* at 697; *see also Blihovde v. St. Croix Cty., Wis.*, 219 F.R.D. 607, 615 (W.D. Wis. 2003). *Johnson* does not provide cover to government officials who, as here, conducted body cavity inspections in an unreasonable manner without any legitimate penological purpose. Nor did its dicta, which was quickly clarified in *Peckham*, entitle Defendants to qualified immunity given the overwhelming

authority to the contrary in this and other circuits. Even under Defendants' reading of *Johnson*, disagreement about the contours of a right by "a single judge, or even a group of judges . . . does not automatically render the law unclear." *Safford*, 557 U.S. at 378; *see also Burgess*, 201 F.3d at 946 ("we do not think that it can be the law of official immunity that one contrary decision . . . provides an automatic safe harbor"); *Pro v. Donatucci*, 81 F.3d 1283, 1291-92 (3d Cir. 1996).[6]

Nor did the 1984 decision in *Hudson v. Palmer*, 468 U.S. 517 (1984), discussed in *Johnson*, nullify the Fourth Amendment rights of convicted prisoners to reasonable inspections of their body cavities. *Hudson*'s holding was limited to searches of prison cells and prisoners' belongings, as opposed to searches of prisoners' bodies, as the Seventh Circuit has clarified many times. *Henry*, 969 F.3d at 777 (collecting authority). The Seventh Circuit's precedents as of March 2011, too, foreclosed a broader reading of *Hudson. Forbes v. Trigg*, 976 F.2d 312-13 (7th Cir. 1992); *Sparks v. Stutler*, 71 F.3d 259, 261 (7th Cir. 1995); *Canedy*, 16 F.3d at 185. And in the aftermath of *Hudson*, all federal circuits to consider the issue declined to extend *Hudson* to body cavity inspections of convicted prisoners. *Supra* at 23-25; *see also, e.g.*, *Dunn v. White*, 880 F.2d 1188, 1191 (10th Cir. 1989); *Elliott*, 38 F.3d at 191 n.3; *Seltzer-Bey*, 66 F.3d at 963.

That leaves only *King*: a decision that long post-dated the searches at issue in this case, and thus could not have nullified Defendants' constitutional obligation to conduct reasonable strip searches. As Defendants have conceded, whether a right is clearly established hinges on the "objective legal reasonableness of the action, assessed *at the time it was taken*." Dkt. 211 at 6 (quoting *Pearson*, 555 U.S. at 244). *King* also addressed a factually dissimilar jumpsuit—not a

---

[6] Defendants make much of the *en banc* Court in this case's explanation that it was overruling *Johnson*'s dicta "to the extent" that it could be read to hold the Fourth Amendment inapplicable to visual strip and body cavity searches (*Henry*, 969 F.3d at 783), but Defendants ignore that *Johnson*, and its interpretation of *Hudson*, had long been circumscribed by other Seventh Circuit precedents.

prolonged, close inspection for contraband in body cavities (781 F.3d at 889-93, 899-901), and its unprecedented imposition of a physical probing as a threshold requirement for Fourth Amendment protection was overruled by an 11-1 vote in *Henry*, 969 F.3d at 783. That the prior judge in this case later relied on the 2015 decision *King* to initially dismiss Plaintiffs' Fourth Amendment claims in 2016 (in a since-overturned decision) also has no bearing on state of clearly-established law as of March 2011.

In short, in March 2011, an overwhelming body of authority put Defendants on fair notice of the unconstitutionality of subjecting Plaintiffs to naked body cavity inspections in front of a large audience of spectators, in unhygienic conditions, notwithstanding *Johnson*. Qualified immunity does not protect Defendants from liability for their unreasonable conduct: carrying out strip and body cavity inspections in an unreasonable manner that included a wide audience of spectators, including men; pervasive degrading and ridiculing insults about Plaintiffs' bodies, hygiene, and odor; unhygienic conditions due to a failure to accommodate menstruation; threats; and abuse—all without any legitimate penological purpose. The obvious unreasonability of the conduct, controlling law, an overwhelming body of persuasive law consisting of the unanimous opinions of nearly all sister circuits, and policies, standards, and state statutes, gave Defendants clear notice of the unconstitutionality of their conduct. The Seventh Circuit has declined to recognize qualified immunity in analogous cases in which the purported lack of clarity in the law concerned the level of subjective intent required for a constitutional violation. *E.g.*, *Kingsley*, 801 F.3d at 831-33.

> **6.    The Eighth Amendment jury verdict does not entitle Defendants to qualified immunity on the Fourth Amendment claim.**

Defendants also argue briefly that their conduct was deemed reasonable by the 2016 jury and therefore that they are entitled to qualified immunity. Dkt. 273 at 10. Yet Defendants have

triply forfeited this argument: they failed to raise it in the pretrial order (Dkt. 231, 224; *supra* at 8-11); they again failed to raise it in any trial motion before the close of evidence (Exh. A at 21:21-22:13; *supra* at 7); and they now assert it only in conclusory fashion, without citation to authority, in an argument that is so undeveloped that it cannot justify judgment or a new trial and need not be addressed (*supra* at 11).

To the extent that Defendants are arguing the June 2022 jury should have been presented with a jury instruction or special verdict form indicating whether "any of the alleged actions, which did not violate the Eighth Amendment, violate the Fourth Amendment" (Dkt. 273 at 10), they did not propose any sort of jury instruction or special verdict form along those lines. Defendants' untimely assertion now is particularly egregious and prejudicial because, having failed to raise this argument at any time before the jury verdict, Defendants did not give Plaintiff or the Court any opportunity to shape instructions or the verdict form to accommodate their concern.

To the extent Defendants are instead raising an issue preclusion defense, "[i]ssue preclusion is an affirmative defense," *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000), for which Defendants bear the burden of establishing each element, *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 306 (7th Cir. 1995). Its four requirements "are that: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action." *U.S. v. Eymann*, 962 F.3d 273, 291 (7th Cir. 2020). Defendants fail to even set forth those elements, let

40

alone satisfy their burden to meet them.[7] Defendants did not plead an affirmative defense of issue preclusion, and they did not preserve such a defense in the pretrial order, forfeiting any such preclusion argument. *See supra* at 8-11. Issue preclusion must also be raised at the first reasonable opportunity, and thus Defendants' untimely allusion to it has likewise been forfeited. *See infra* at 58.

Defendants are also incorrect on the merits. Plaintiff's Eighth Amendment claims required a punitive subjective intent. *E.g.*, *Henry*, 969 F.3d at 781 (Eighth Amendment "safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment"). The 2016 jury was instructed that it could find in Plaintiffs' favor on Eighth Amendment claims only if the strip searches were "conducted in a harassing manner intended to humiliate and cause psychological pain" and the defendant under consideration had a culpable subjective mental state. Dkt. 176 at 25-30. The subjective intent requirement was a core focus of Defendants' trial strategy. *E.g.*, Dkt. 208, Trial Trans., Vol. 6, Nov. 21, 2016, Closing Argument, at 139:9-139:20; 141:23-142:5; 142:20-143:1; 111:21-113:3, 117:3-117:7, 132:15-132:24. Because of this subjective intent requirement, the Seventh Circuit and this Court have already explained that the Eighth Amendment jury verdict did not foreclose Fourth Amendment liability. *Henry*, 969 F.3d at 781; Dkt. 217 at 2 ("An Eighth Amendment claim requires a deliberately indifferent state of mind, while a Fourth Amendment claim has no subjective element. The Fourth Amendment claim requires Plaintiffs to prove only that Defendants' conduct was objectively unreasonable without regard to Defendants' subjective intentions."). Nothing about the Eighth Amendment jury verdict establishes qualified immunity here, because

---

[7] Nor could they, as Defendants do not establish that there was any "prior action" that adjudicated the "same issue," nor was any such determination "essential" to the jury verdict on the Eighth Amendment claim. *See id.*

that defense verdict could have rested (and must have rested, given the 2022 jury's verdict), on a lack of proof of Defendants' subjective intent to punish.

Moreover, even when faced with apparently inconsistent verdicts, this Court is required to "reconcile them, if possible, rather than overturn them." *E.E.O.C. v. Century Broad. Corp.*, 957 F.2d 1446, 1460 (7th Cir. 1992) (collecting authority). There is also "no priority among inconsistent verdicts—the judge may not assume that the first answer is the 'authentic' one with which later answers must be reconciled." *Am. Cas. Co. of Reading, Pa. v. B. Cianciolo, Inc.*, 987 F.2d 1302, 1305 (7th Cir. 1993). Defendants' argument fails.

## II. Defendants' challenge to compensatory damages based on the PLRA physical injury provision defense fails.

Defendants' challenge to the availability of compensatory damages claims based on the physical injury provision of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), comes far too late. The issue has been thrice waived. Most critically, Defendants waived any limitations on compensatory damages by failing to include that issue in the pretrial order. Prior to that, Defendants forfeited the physical injury provision defense by failing to assert it by the December 18, 2020 deadline set by this Court. Still earlier, Defendants forfeited any defense to damages based on the physical injury provision by failing to raise that affirmative defense at the pleading stage or during the discovery period. This Court accordingly should not reach the issue other than to find waiver (or forfeiture).

### A. Defendants waived (or forfeited) their PLRA physical injury defense by failing to identify it as a barrier to compensatory damages in the pretrial order.

Defendants did not identify the physical injury requirement as an issue or barrier to compensatory damages in the pretrial order, while identifying a separate contested legal issue of "whether Plaintiffs *suffered* damages" (Dkt. 231 at 4-5, emphasis added)—a question that is

factually and legally far removed from whether the physical injury provision precluded

compensatory damages. Defendants failed to identify the physical injury requirement in the

pretrial order even though Plaintiffs had specified that they sought compensation for "emotional

injury" and "damages associated with the violation of their constitutional rights." Dkt. 231 at 6.

      Although Defendants initially agreed to a trial on liability only, on May 26, 2002,

Defendants changed course and proposed deciding damages at the jury trial. Text Order of

5/27/2022. After court-ordered briefing, Defendants continued to ask the Court to allow the jury

to decide damages at trial. Dkt. 252 at ¶1. Yet at no time prior to trial did Defendants seek to

amend the pretrial order to add a legal or factual issue regarding physical injury, nor seek time

for adjudication of the issue prior to trial.[8] Having failed to properly preserve this issue in the

pretrial order, Defendants have unequivocally waived it. *See supra* at 8-11.

### B. Defendants doubly forfeited any physical injury provision defense by failing to timely raise it by the Court's December 2020 deadline.

      As an independent basis for waiver, Defendants waived (or forfeited) any challenges to

Plaintiffs' compensatory damages claims by intentionally declining to raise such challenges by

the December 18, 2020 deadline set by Judge Mills.

      During the first round of summary judgment briefing in this case, Defendants declined to

raise any challenge based on the PLRA's physical injury requirement, even though the defense

was available to them then. Dkt. 102 & 103. On appeal, Defendants attempted to raise the issue,

but the *en banc* court declined to reach it, noting:

> Defendants moved for summary judgment. . . . Defendants did not . . . argue that
> Plaintiffs failed to present evidence of physical injury pursuant to the Prison Litigation
> Reform Act . . . .
>
> . . . . Defendants did not raise this argument below, and therefore have waived it for
> purposes of this appeal.

---

[8] The parties briefed the issue at trial only because the Court so ordered *sua sponte*. Dkt. 245.

. . . . Because the district court granted summary judgment on Plaintiffs' Fourth Amendment claim, it did not assess any of these arguments pertaining to the availability of remedies as to that claim. We thus also leave these issues for the district court's initial determination on remand.

*Henry*, 969 F.3d at 775, 787.

On remand, the district court then gave Defendants another opportunity to raise any challenges to Plaintiff's remedies, making clear that such challenges must be asserted in a summary judgment motion by December 18, 2020. Text Order of Sept. 29, 2020. Yet when Defendants filed their second summary judgment motion, they *again* failed to raise any physical injury requirement challenge they now press here. Dkt. 211.

Defendants' decision to not challenge Plaintiff's compensatory damages remedies in the timeframe ordered by the court for their *second* summary judgment motion can only be seen as a willful, strategic choice. Defendants were obviously aware of an argument they themselves made before the *en banc* court. Defendants' failure "did not stem from an inadvertent error." *Wood v. Milyard*, 566 U.S. 463, 474 (2012). Rather, despite having a "clear and accurate understanding of the [] issue," Defendants "deliberately steered the District Court away from the question" of remedies and sought a broader ruling on qualified immunity at summary judgment. *Id.* The defense has thus been forfeited.

### C. Defendants triply forfeited any PLRA physical injury defense by failing to assert it any time in the pleadings or during the discovery period.

As an independent basis for disregard of this argument, Defendants forfeited (or waived) any right to assert a PLRA physical injury defense to compensatory damage awards by failing to assert such a defense at any time in the pleadings or prior to the close of discovery. Plaintiffs' most recent amended complaint was filed on March 31, 2014. Dkt. No. 83. Defendants filed their answers shortly thereafter. Dkt. Nos. 84, 95. Those answers did not include any mention of the

PLRA's provision on physical injuries as an affirmative defense, even while asserting other

PLRA defenses. Dkt. 84 at p.8; Dkt. 95 at p.8. Defendants further failed to identify the PLRA

physical injury requirement in response to an interrogatory seeking the factual basis for each of

their affirmative defenses – an interrogatory which Defendants answered without objection,

while referencing other PLRA provisions, and never supplemented. Dkt. 103-8, at 3-4.

Defendants did not assert the PLRA physical injury requirement at any time during the fact or

expert discovery period, nor in the first round of summary judgment briefing before the Eighth

Amendment trial.[9] Dkts. 102 & 103.

   By failing to raise the affirmative defense of Section 1997e(e) during the discovery

period in a case that has been litigated for five years by that point, Defendants forfeited their

right to invoke the defense. *See* Fed. R. Civ. P. 8(c)(1); *Venters v. City of Delphi*, 123 F.3d 956,

968 (7th Cir. 1997). Courts around the country have held that the procedural protections of the

PLRA must be raised as an affirmative defense if a defendant wishes to invoke them. *See, e.g.*,

*Caldwell v. Dist. of Columbia*, 201 F. Supp. 2d 27, 34 (D.D.C. 2001) (failure to comply with

physical injury requirement is an affirmative defense waived if not asserted in Defendants'

answer) (citing *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999)); *Douglas v. Yates*, 535

F.3d 1316, 1320-21 (11th Cir. 2008) ("section 1997e(e) is an affirmative defense"); *Walker v.

Schult*, 463 F. Supp. 3d 323, 340-42 (N.D.N.Y. 2020); *Martin v. Pittman*, 244 F. App'x 597, 599

(5th Cir. 2007); *Castillo v. Bobelu*, 1 F. Supp. 3d 1190, 1212 (W.D. Okla. 2014) (finding

waiver); *Robinson v. Costello*, No. CIV A 03-147 GMS, 2007 WL 675997, at *3 (D. Del. Mar. 2,

---

[9] Just seven days before jury selection in the Eighth Amendment trial, defense counsel notified Plaintiffs' counsel orally for the first time that Defendants intended to assert a PLRA physical injury defense. Dkt. 144, Pls.' MIL No. 9. Plaintiffs immediately objected. *Id.* The Court denied the motion as premature because damages had been bifurcated and so the issue was never adjudicated. Dkt. 157, at 4, Order on Pls.' MIL No. 9.

2007) ("Defendants' failure to raise this issue at the pleading stage constitutes a waiver.").[10] As

one persuasive decision explained:

> The PLRA's exhaustion requirement is an affirmative defense that must be pled or is
> waived. *Jones v. Bock*, 549 U.S. 199, 212 (2007). The text of the exhaustion requirement
> closely mirrors that of the physical injury requirement, strongly suggesting that the two
> should be treated the same for purposes of classifying them. *Compare* 42 U.S.C. §
> 1997e(a) . . . *with* 42 U.S.C. § 1997e(e).
>
> There clearly was ample time for Defendants to have asserted the defense and the failure
> to do so until the end stage of this litigation clearly prejudices Plaintiff.

*Walker*, 463 F. Supp. 3d at 340-42 (further explaining an affirmative defense construction was

more consistent with Rule 8(c) and its purpose of preventing surprise and unfair prejudice).

"'Similar language contained within the same section of a statute must be accorded a consistent

meaning.'" *Douglas*, 535 F.3d at 1320-21 (quoting *Nat'l Credit Union Admin. v. First Nat'l*

*Bank & Trust Co.*, 522 U.S. 479, 501 (1998)).

Defendants thus forfeited any affirmative defense to Plaintiffs' request for compensatory

damages. By strategically withholding this defense until after the close of fact and expert

discovery (while aware of the PLRA and its *other* defenses, which Defendants asserted),

Defendants subjected Plaintiffs to unfair prejudice from having to litigate a challenge to their

remedies long after the closure of fact discovery. To justify their delay, Defendants have

previously argued that the physical injury provision is a limitation on recovery. Yet "merely

labelling something a limitation on recovery does not . . . remove it from the realm of affirmative

defenses." *Walker*, 463 F. Supp. 3d at 341 (identifying other established affirmative defenses that

operate as limitations on recovery). Defendants' affirmative defense has been forfeited.

### D.      The PLRA physical injury requirement does not apply to the Plaintiff class.

---

[10] The affirmative defense of PLRA exhaustion, too, is waived if not timely pleaded. *See, e.g.*,
*Littler v. Indiana Dep't of Corr. Com'r*, No. 3:11-CV-218 CAN, 2013 WL 1149607, at *5 (N.D.
Ind. Mar. 19, 2013); *Fromer v. Corizon, Inc.*, 54 F. Supp. 3d 1012, 1026 (S.D. Ind. 2014).

Given Defendants' forfeiture, this Court need not reach the complex application of the physical injury requirement to the class. Should the Court reach this issue, however, application of the physical injury requirement in a class action is severely limited and does not foreclose relief for absent class members—and at a minimum, any class members who were not imprisoned when the lawsuit was filed are not bound by that provision. The physical injury provision also does not foreclose compensatory damages for loss of liberty, dignity, and privacy afforded by Fourth Amendment claims, which are not mental or emotional injuries subject to the PLRA's limit on certain recoveries. Finally, even if required, Plaintiffs have amassed sufficient evidence of a qualifying physical injury, only one of which is needed for the class.

1.    **The PLRA physical injury requirement does not apply to class members in a suit that was "brought" by at least one named plaintiff unbound by its rule.**

The PLRA physical injury requirement does not apply to class members in a suit that was "brought" by at least one named plaintiff who is no longer incarcerated. The plain language of the physical injury provision applies to "civil action[s] . . . *brought by a prisoner* confined in a jail, prison, or other correctional facility." 42 U.S.C. § 1997e(e) (emphasis added). A prisoner is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). It is well-settled that ex-prisoners are not bound by the PLRA, even if their suit concerns events that occurred in prison. *E.g.*, *Kerr v. Puckett,* 138 F.3d 321, 323 (7th Cir. 1998) ("[T]he term 'prisoner' ... [as used in the various provisions of the PLRA] does not comprehend a felon who has been released.") (relying on *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999)).

Given this statutory language, the physical injury requirement does not apply to members

of a class when the litigation that they have joined through a court's class certification order was "brought" by at least one ex-prisoner. *See, e.g.*, *In re Nassau Cty. Strip Search Cases*, No. 99-CV-2844 DRH, 2010 WL 3781563, at *7-*9 (E.D.N.Y. Sept. 22, 2010) (in a class action in which named plaintiffs were ex-prisoners, "the PLRA's limitation on recovery does not apply to any class member who was incarcerated when the complaints in these actions were filed"); *Kelsey v. County of Schoharie,* 2007 WL 603406 (N.D.N.Y. 2007) (The language of § 1997e(e) requires a showing of physical injury only in suits brought, i.e. commenced or filed by prisoners, not those in which they join as members of a class action.") (reversed on other grounds by *Kelsey v. Cnty. of Schoharie*, 567 F.3d 54 (2d Cir. 2009)); *see also Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *9 (N.D. Ill. Oct. 19, 2001).

Congress's purpose in enacting the physical injury requirement was to deter frivolous suits filed by prisoners with time on their hands and nothing better to do, while still allowing serious, meritorious suits safeguarding constitutional rights to proceed. That purpose is inapplicable when a suit is brought by an ex-prisoner. *E.g.*, *Kerr*, 138 F.3d at 323 (holding that 42 U.S.C. § 1997e(e) does not apply to actions brought by ex-prisoners and explaining that "Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit. Opportunity costs of litigation rise following release, diminishing the need for special precautions against weak suits."). Thus, when ex-prisoners choose to initiate litigation, the PLRA physical injury requirement does not apply.

In the context of class actions, courts have held that when an ex-prisoner brings a putative class action, such a suit simply does not fall into the category of cases targeted by the PLRA. *E.g.*, *In re Nassau Cty. Strip Search Cases*, 2010 WL 3781563, at *7-*9; *Kelsey*, 2007 WL 603406, at *10-12.  Put another away, if one of the class representatives is not subject to the

PLRA and its physical injury requirement, then the class is not either. Such a rule is consistent

with the overarching purpose of the PLRA to deter frivolous lawsuits by prisoners while

allowing meritorious lawsuits protecting fundamental constitutional rights to proceed. The

PLRA's concern of frivolous litigation is entirely inapplicable in the case of a certified class

action brought by representatives that include ex-prisoners. In such cases, a court has, by virtue

of the class certification order, deemed the suit non-frivolous and recognized that it both states

cognizable claims and meets the rigorous requirements for class certification, and the

involvement of an ex-prisoner class representative addresses the statutory concern about

frivolous lawsuits asserted by prisoners with too much time on their hands.

Here, as Defendants do not dispute, former lead plaintiff Beverly Throgmorton was a

non-prisoner at the time of the filing of the complaint (Dkt. 1 ¶ 9). Veela Morris, who is a current

class representative, was likewise a non-prisoner at the time of the filing of the complaint (and at

the time she became a class representative). Exh. H, Morris Trial Trans. at 3:11-4:9. Thus, no

class member that was, or is, represented by these named plaintiffs is subject to the PLRA.

### 2. Class members cannot be fairly said to have "brought" any suit, regardless of the incarceration status of any named plaintiffs.

Regardless of the incarceration status of any named plaintiffs who initiated the action,

absent class members who do not opt out of a certified Rule 23 class action cannot be fairly said

to have "brought" a "civil action" pursuant to the plain language of the physical injury provision,

and thus it does not apply to them nor limit their damages. *See* 42 U.S.C. § 1997e(e). To bring an

action means "[t]o sue; institute legal proceedings."  BRING AN ACTION, Black's Law

Dictionary (11th ed. 2019).  In a class action, the only litigants who sue and institute legal

proceedings are the named plaintiffs who commence the suit; putative class members are not

joined to the suit until class certification, and even then, they are joined without any action on

49

their part and merely provided an opportunity to opt-out after issuance of notice. Thus, class members cannot fairly be said to have "brought" a "civil action" under any construction of Section 1977e(e) such that the physical injury requirement would apply to them. *See McBean v. City of New York*, 260 F.R.D. 120, 142 (S.D.N.Y. 2009) ("Moreover, the instant actions were 'brought' by the named plaintiffs . . . they were not brought by the unnamed class members.").

Such a construction is not only compelled by the plain language of the statutory text, but also consistent with the overarching purpose of the PLRA to dissuade frivolous lawsuits brought by prisoners while allowing meritorious lawsuits protecting fundamental constitutional rights to proceed. The PLRA's concern of frivolous litigation brought by prisoners does not apply to absent class members who are not initiators of litigation, and automatically become a part of an action commenced by other persons only after a grant of class certification unless they opt out. And the Congressional concern over frivolous prisoner litigation is inapplicable in the case of a certified class action, in which a court has, by certifying a class, deemed the suit non-frivolous.

Had Congress intended § 1997e(e) to apply to class members in a class action certified by a court, it could have so stated—for example, by specifying that the physical injury requirement applies to "*claims* brought by or *asserted on behalf* of prisoners." Congress did not so state, and the statutory language does not cover class members in a certified class action.

Here, this action was brought in 2012 by three named plaintiffs. Dkt. 1. It follows that no other class members "brought" this suit. Although other class members may have been joined to the suit upon certification or later assumed the role of class representative, they are not subject to Section 1997e(e), pursuant to the statutory language.

>    **3.     At a minimum, no class members can be fairly said to have "brought" any suit until they had notice of the litigation and an opportunity to opt-out.**

At a minimum, any class member who was an ex-prisoner by the close of the opt-out period is unbound by the PRLA's restrictions. Even if absent class members could be said to have themselves "brought" this "action" (a complete perversion of the statutory language), the PLRA physical injury requirement would still apply only to those absent class members who were prisoners at the time that they themselves "brought" suit. And no class members can be fairly said to have "brought" any suit until the time that they received notice of the litigation and an opportunity to opt-out. Here, that occurred at the end of the opt-out period of September 30, 2016, based on a notice that was first served in July 2016. Dkt. 130. At a minimum, the July 29, 2013, date of the court's grant of class certification to the damages class (Dkt. 68) is the earliest point in time at which any class members can conceivably be said to have joined the suit, and thus "brought" any litigation. Before that time, the putative class members were not party to the suit.

        **4.**      **Even if class members are held to have "brought" this suit at the time of the filing of the case, there remains a subset of class members who were out of prison at the pertinent time.**

At the very least, even if absent class members are said to have "brought" this "action" at the time of the filing of the initial complaint (even though they were not part of the litigation at that time), there is a subset of class members who had been released by that time. Those class members are unequivocally not subject to the PLRA. Applying the PLRA's restrictions, including the physical injury requirement, to class members who were not imprisoned at the time of the filing of the suit by class representatives would be inconsistent with the PLRA's overriding purpose as stated in its legislative history, which was to limit frivolous suits filed by *prisoners*. It would also be manifestly unfair given that the class notice (approved by Defendants and issued by the Court) did not provide such class members any notice that participating in the

litigation rather than proceeding with a separate suit would restrict their damages. Dkt. 130.

Moreover, the correct rule would be to calculate each class member's prisoner status at the time of the filing of the most recent complaint (here, the Sixth Amended Complaint), because "when a plaintiff files an amended complaint, the new complaint supersedes all previous complaints" "wipes away prior pleadings" and "controls the case from that point forward." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999).

> ### 5.   The physical injury requirement is satisfied in a class action if one class member suffered a physical injury.

In a class action that implicates a physical injury requirement, satisfaction of that requirement by one class member or representative suffices. The plain language of the PLRA physical injury imposes only one physical injury requirement on the action as a whole. *See* 42 U.S.C.A. § 1997e ("No Federal civil *action* may be brought . . . without *a* prior showing of physical injury"). Such a rule is consistent with the PLRA's purpose of weeding out frivolous suits while allowing meritorious ones to succeed; once a particular course of conduct has given rise to a qualifying physical injury, the provision is satisfied. In a class action certified by the court (and thus held not only to be non-frivolous but also to state claims and meet the rigorous requirements for class certification), in which a physical injury is present, nothing in the language or purpose of the PLRA requires more to weed out frivolous suits. Had Congress intended for one physical injury per "claimant," "plaintiff," or "claim, it would have used those terms, rather than selecting the term "action."

In a closely-related context, courts interpreting the PLRA have found that a grievance by one class member satisfies the PLRA exhaustion requirement for the entire class. *See Rahim*, 2001 WL 1263493, at *7-8 ("there is no need for every member of the putative (or future) class to individually exhaust their remedies," and a grievance by one class member satisfies the PLRA

grievance requirement for all class members); *id.* (further holding that Defendants' waiver of a

PLRA defense as to the class representatives waives the defense as to class members as well);

*Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576, at *6 (N.D. Ill. Apr. 30, 2015); *Jackson v. Dist.*

*of Columbia,* 254 F.3d 262, 269 (D.C. Cir. 2001) (explaining that so long as one member of the

prisoner class pursued the available administrative remedies, "the plaintiff class has met the

filing prerequisite").

E.    **Plaintiffs can prove that they suffered qualifying physical injuries.**

Without any citation to record evidence, Defendants contend that there was insufficient

evidence at trial of any physical injuries. Dkt. 273 at 16. No such evidence was required, as the

Court rejected Defendants' proposed physical injury instruction. Defendants cannot establish an

absence of physical injury based on their own say-so after a trial that did not even require such

evidence. Regardless, Plaintiffs presented sufficient evidence of a physical injury such that

omission of Defendants' jury instruction was harmless; and Plaintiffs will be able to further

present, evidence of a qualifying physical injury should it be required. Defendants' contrary

summary of the evidence is incomplete. To qualify, an injury "must be more than *de minimis*, but

need not be significant." *Rahim,* 2001 WL 1263493, at *9.

Plaintiffs have already presented evidence of qualifying injuries. For example,

Defendants omit mention of the testimony at trial about deprivations of medication during the

strip search and incidents of seizure and loss of consciousness. *E.g.*, Exh. F, Phillips Trial Trans.

22:21-22:25, 19:3-19:18; Exh. I, Wells Trial Trans. 5:1-5:6, 8:9-8:12. One class member suffered

a seizure during the strip searches—easily, a qualifying injury. *Id.*; *see also Clark v. Trammell*,

No. 18-cv-05142, 2021 WL 979157, at *7 (N.D. Ill. Mar. 16, 2021) (considering even "small

seizures" to be a qualifying "physical injury"). Another class member, Michelle Wells, passed

out while naked and hit her head on a lockbox after being deprived of medications, as outlined in her near-contemporaneous grievance. Exh. I, Wells Trial Trans. 5:7-6:18, 8:9-8:12, 9:24-11:21, 14:7-16:19; Exh. J; *see also Pritchett v. Page*, no. 99 C 8174, 2000 WL 1129891, at *1, *5 (N.D. Ill. Aug. 9, 2000) (becoming physically ill from nausea qualifies as a physical injury); *Cyrus v. Laino*, No. 4:CV-08-1085, 2008 WL 2858290, at *4 n. 7 (M.D. Pa. July 22, 2008) (becoming unconscious qualifies as a physical injury).

Plaintiffs' evidence also showed that the class had to stand for hours with their hands tightly and painfully handcuffed behind the back—first , on the housing units, as all 100 women in each housing unit were handcuffed by cadets and pat-searched, and then, in the gym, while awaiting strip searches. *E.g.*, Exh. F, Phillips Trial Trans. 8:17-10:18, 20:5-21:17, 23:1-23:5; Exh. G, Howard Trial Trans. 8:19-9:13; Exh. H, Morris Trial Trans. 7:22-8:18; Exh. I, Wells Trial Trans. 5:7-6:18, 9:24-11:21, 14:7-16:19; Agreed Stip. Of Fact Nos. 11 & 12 (Dkt. 231-6). This evidence, too, supports a finding of physical injury. *See generally Mansoori v. Shaw*, 2002 WL 1400300, at *3 (N.D. Ill. June 28, 2002) (alleged "tenderness and soreness" for which plaintiff received a diagnosis of "chest wall injury," met the standard); *Romaine v. Rawson*, 140 F.Supp.2d 204, 214 (N.D.N.Y. 2001) (holding "minor" injuries—three slaps in the face—met the PLRA standard); *Caldwell v. District of Columbia*, 201 F. Supp. 2d 27, 34 (D.D.C. 2001) (holding that evidence of heat exhaustion met the PLRA standard; injury need not be serious or lasting); *McCloud v. Harmon*, No. 20-cv-1043, 2021 WL 765773, at *2 (C.D. Ill. Feb. 26, 2021) (holding that claim of excessive force against officer who allegedly caused nerve damage met physical injury requirement). Section 1997e(e) requires nothing more than a causal connection between the unconstitutional conduct and the physical injury sustained. *Cf. Stanley v. Page*, 44 Fed. App'x 13, 15 (7th Cir. 2002) (citing *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir.

1999)).

In addition, Plaintiffs were forced to stand shoulder-to-shoulder, while naked, so close that many were touching or nearly touching other naked prisoners, while carrying out the strip search protocol. Exh. E, Williams Trial Trans. 12:22-13:1. While touching in this fashion, Plaintiffs had to bend over, spread their buttocks, and manually manipulate their bodies to expose their vaginal and anal cavities for inspection (and, in some cases, remove tampons from their vaginal cavities for inspection). *E.g.*, Exh. F, Phillips Trial Trans. 26:8-30:17; Exh. G, Howard Trial Trans. 11:1-12:1. Such physical invasions during strip searches qualify as a sufficient injury. *See, e.g.*, *Ogden v. Chesney*, No. Civ.A. 97–5869, 2003 WL 22225763, at *3 (E.D. Pa., Sept. 17, 2003) (holding that plaintiff's allegation that "prison officials allowed a drug dog to sniff and lick his genitals during a strip search" was sufficient to withstand summary judgment as to a physical injury); *Seaver v. Manduco*, 178 F. Supp. 2d 30, 37 (D. Mass. 2002) ("[A] visual cavity search causes a physical invasion of privacy that may qualify as a physical injury for the purposes of section 1997e(e)").

Plaintiffs further presented abundant evidence at trial that the strip searches were conducted in unsanitary conditions without any accommodation of the bathroom and menstruation needs of the impacted women. Plaintiffs had to present sanitary products soiled with menstrual fluid for inspection and stand barefoot on floors contaminated with menstrual fluid and urine, exposing them to disease; some Plaintiffs even soiled themselves from having to hold their urine for so long or expelled menstrual fluid during the cough-and-squat procedure. *E.g.*, Exh. E, Williams Trial Trans. 9:6-9:19, 11:3-14:8, 14:24-15:12; Exh. G, Howard Trial Trans. 9:14-9:25, 12:8-13:2, Exh. F, Phillips Trial Trans. 21:18-22:20, 5:10-5:24. Such injuries qualify as physical injuries. *See Whitfield v. Snyder*, no. 03-CV-3014, 2005 WL 8166110, at *1

(C.D. Ill. Mar. 1, 2005) (concluding that the court could "not rule out physical injury" when allegations concerned unhygienic conditions); *Waters v. Andrews,* No. 97-CV-0407, 2000 WL 1611126, at *8 (W.D.N.Y. Oct. 16, 2000) ("A reasonable jury could find that the term 'physical injury' as used in § 1997e(e) includes exposure to noxious odors, including body odors from human discharges, and 'dreadful' conditions of confinement.").

Finally, any class members whose response to the degrading strip searches had a sufficient physical manifestation will also be able to establish physical injury. *E.g.*, *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) ("[I]ncident of self-mutilation . . . is sufficient to satisfy the physical harm requirement.").

Defendants' contention that such injuries are merely *de minimis* is incorrect. The cases Defendants cite (Dkt. 273 at 17), involve injuries that were either vaguely pleaded (like weight loss allegations stated without specificity), self-inflicted and avoidable (like hunger pains from refusing to eat food), or secondary to an emotional injury (like headaches and insomnia), rather than arising from the constitutional violation itself. As for *Calhoun*, 319 F.3d 936, the plaintiff in that class did not claim to have suffered a physical injury, conceding the issue, and so the Seventh Circuit had no occasion to consider whether such an injury occurred under the different facts of that case. *Id.* at 940. Here, in contrast, Plaintiffs presented specific evidence regarding physical injuries that were neither self-inflicted, nor avoidable, nor *de minimis*, and that occurred due to the unconstitutional searches themselves.[11]

## III.   Defendants' challenge to punitive damages fails.

---

[11] The PLRA also does not preclude compensatory damages for the loss of privacy, dignity, and liberty caused by a body cavity inspection that violates the Fourth Amendment. Thus, even if Plaintiffs were prohibited from seeking compensatory damages for emotional distress absent a physical injury (which is not the case), they would have been entitled to seek to recover such damages. *See* Dkt. 247 at 13-17 (Plaintiffs' briefing on this issue).

Defendants next challenge the jury's award of punitive damages award on Plaintiffs'
Fourth Amendment claim, arguing that the same issue was resolved by the earlier Eighth
Amendment liability verdict. Dkt. 273 at 14-16. This argument, too, has been forfeited and fails
on the merits.

### A.    Defendants' challenge has been forfeited as conclusory and unsupported.

Defendants do not cite the basis upon which they seek relief from the punitive damages
awards and the basis is unclear. Dkt. 273 at 14-16. Plaintiffs cannot effectively respond to an
argument that is ambiguous as to, and does not identify, its legal basis. Defendants have thus
forfeited this challenge. *See Opp*, 231 F.3d at 1066; *Pelfresne*, 917 F.2d at 1023 ("A litigant who
fails to press a point by supporting it with pertinent authority, or by showing why it is sound
despite a lack of supporting authority or in the face of contrary authority, forfeits the point.");
*Berkowitz*, 927 F.2d at 1384; *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the
responsibility of th[e] court to make arguments for the parties.").

### B.    To the extent Defendants assert an issue preclusion affirmative defense, that defense has been forfeited through untimely assertion.

To the extent that Defendants are raising an issue preclusion affirmative defense, they
forfeited (or waived) any such defense by failing to raise it at the first reasonable opportunity and
not meeting Judge Mills's December 18, 2020 deadline. Issue preclusion must be "raised at the
first reasonable opportunity after the rendering of the decision having the preclusive effect."
*Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1022 (8th Cir. 2019) (quoting *Aetna Cas. & Sur. Co.
v. Gen. Dynamics Corp.*, 968 F.2d 707, 711 (8th Cir. 1992)); *see also Jaskolski v. Daniels*, 427
F.3d 456, 461 (7th Cir. 2005) ("as preclusion is an affirmative defense it has been forfeited" by
failure to timely assert it); *Am. Nat. Bank & Tr. Co. of Chicago v. Reg'l Transp. Auth.*, 125 F.3d
420, 431 (7th Cir. 1997) (defense waived by failure to timely assert it); *Ga. Pac. Consumer*

*Prods., LP v. Von Drehle Corp.*, 710 F.3d 527, 533 (4th Cir. 2013) (explaining that a party

waives a preclusion defense "by waiting too long to assert the defense after it becomes

available").

Defendants first asserted their challenge to punitive damages on appeal, improperly,

before the Seventh Circuit *en banc* Court. *See* Case No. 16-4234 (7th Cir.), Dkt. 114, at 55-56.

The *en banc* Court declined to consider the defense, noting:

> Defendants raise several other arguments that Plaintiffs are not entitled to the relief they
> seek . . . . Because the district court granted summary judgment on Plaintiffs' Fourth
> Amendment claim, it did not assess any of these arguments pertaining to the availability
> of remedies as to that claim. We thus also leave these issues for the district court's initial
> determination on remand.

*Henry*, 969 F.3d at 787.

On remand, this Court then gave Defendants a full opportunity to raise any such

challenges to Plaintiff's remedies, making clear that such issues should be raised in a summary

judgment motion by December 18, 2020. Text Order of Sept. 29, 2020. Yet when Defendants

filed their second summary judgment motion, they failed to raise any challenge to the availability

of punitive damages. Dkt. 211; Dkt. 241. Defendants strategically declined to raise this argument

even though they were well aware of it.[12]

A finding of forfeiture is compelled here. Defendants' decision to not challenge

Plaintiff's remedies in the 2020 timeframe ordered by the Court can only be seen as a willful,

strategic choice, as Defendants were obviously aware of an argument they had themselves made

---

[12] In an earlier filing, Defendants claimed that their defense to punitive damages was raised for
the first time at a November 2021 mediation. Dkt. 252 ¶2. This assertion violates Rule 33 and
cannot be considered by this Court, as communications during the mediation are "strictly
confidential" and cannot be "placed in the record . . .  to the Court." Notice of Rule 33
Mediation, Dkt. 6 in Case No. 16-4234 (Jan. 5, 2017), at 2; *see also* 7th Cir. Settlement Conf.
Instructions (same). Defendants also provide no record evidence in support of their assertion, nor
would it excuse their untimely formal assertion of an issue preclusion defense.

before the *en banc* Court. Defendants chose to wait until two years later, *during* the trial, to first

assert the defense. Courts routinely deny assertions of issue preclusion that come too late, and

the same result is required here. *Sommerfield v. City of Chicago*, No. 08 C 3025, 2014 WL

12802519, at *1 (N.D. Ill. June 26, 2014) (denying defense because, "if [movant] thought he was

entitled to collateral estoppel or some other form of issue preclusion, he should have moved for

summary judgment or at the very least presented this issue prior to the eve of trial. Not only is it

much too late . . . but [movant]'s briefing of this issue now is superficial at best. . . . [and] fails to

engage with the complexities of this issue in the context of this case."); *Moriarty v. Hills Funeral*

*Home, Ltd.*, No. 98 C 773, 2000 WL 523188, at *2-3 (N.D. Ill. Apr. 18, 2000) (issue preclusion

defense asserted too late) (reversed on other grounds in *Moriarty v. Pepper*, 256 F.3d 554 (7th

Cir. 2001). *Cf. F.T.C. v. QT, Inc.*, 236 F.R.D. 402, 406 (N.D. Ill. 2006) (finding no waiver only

because proponent "did not wait until after summary judgment" to raise issue preclusion).

### C.     The Eighth Amendment liability verdict does not foreclose punitive damages on Plaintiffs' Fourth Amendment claim.

Defendants' challenge to the jury's punitive damages award (Dkt. 273 at 14-16) also fails

on the merits. "Issue preclusion is an affirmative defense." *Adair*, 230 F.3d at 894. Therefore, the

defendant has the burden to establish the elements of the defense. *Havoco*, 58 F.3d at 306. "The

four requirements of [issue preclusion] are that: (1) the issue sought to be precluded is the same

as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of

the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked

was fully represented in the prior action." *U.S. v. Eymann*, 962 F.3d 273, 291 (7th Cir. 2020).

Defendants fail to even set forth those elements, let alone satisfy their burden to meet

them. For example, Defendants do not establish that there was any "prior action" that adjudicated

the "same issue"—the availability of punitive damages on a Fourth Amendment claim—nor was

59

any such determination "essential" to the jury verdict on the Eighth Amendment claim. *See id.*

Moreover, when faced with apparently inconsistent verdicts, this Court is required to "reconcile them, if possible, rather than overturn them." *Century Broad. Corp.*, 957 F.2d at 1460 (collecting authority). There is also "no priority among inconsistent verdicts—the judge may not assume that the first answer is the 'authentic' one with which later answers must be reconciled." *Am. Cas. Co. of Reading, Pa*, 987 F.2d at 1305.

Applying these principles, Defendants have failed to satisfy their burden to establish that the Eighth Amendment liability verdict precludes punitive damages on the Fourth Amendment claims. Defendants' argument is not fact-specific and does not turn on any evidence that was, or was not, presented at either the Eighth Amendment or Fourth Amendment trials in this case, nor do Defendants challenge the sufficiency of the evidence to support a punitive damages award. Defendants' sole argument is that, as a pure issue of law, and regardless of the circumstances, an Eighth Amendment defense verdict on liability necessarily and conclusively forecloses punitive damages on a Fourth Amendment claim. Defendants fail to cite a single authority equating the liability standard for an Eighth Amendment claim with the standard for punitive damages on a Fourth Amendment claim. Those standards are not necessarily equivalent. As even Defendants' own cited authority recognizes, the standard for punitive damages is whether the defendant acted with "intentional or deliberate indifference to" a plaintiffs' "federally protected rights." *Walsh v. Mellas*, 837 F.2d 789, 801 (7th Cir. 1988). In other words, the standard is specific to *which* federally protected right is at issue: here, the Eighth, or the Fourth.

Plaintiff's Eighth Amendment claims required proof of a punitive subjective intent. *E.g.*, *Henry*, 969 F.3d at 781 (Eighth Amendment "safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment"). The 2016 jury was thus

60

instructed that it could find in Plaintiffs' favor on their Eighth Amendment claims only if the strip searches were "conducted in a harassing manner intended to humiliate and cause psychological pain" and the particular defendant under consideration "was deliberately indifferent to a substantial risk that the strip searches were being conducted in a harassing manner intended to humiliate and cause psychological pain." Dkt. 176 at 25-30. This punitive intent requirement was a core focus of Defendants' trial strategy. *E.g.*, Dkt. 208, Trial Trans., Vol. 6, Nov. 21, 2016, Closing Argument, at 139:9-139:20; 141:23-142:5; 142:20-143:1; 111:21-113:3, 117:3-117:7, 132:15-132:24.

In contrast, punitive damages are available on a Fourth Amendment claim against a defendant who acted with "intentional or deliberate indifference to" a plaintiffs' *Fourth Amendment* rights. *Walsh*, 837 F.2d at 801; *McKinley v. Trattles*, 732 F.2d 1320, 1327 (7th Cir. 1984) (punitive damages available on a Fourth Amendment claim because the jury could find that the defendant "intentionally exceeded the permissible scope of the strip search" by inserting a finger into a prisoner's anus, regardless of whether that defendant acted with any intent to punish or humiliate).

As Defendants concede, the Fourth Amendment jury was correctly instructed that it could assess punitive damages if it found that a Defendant's conduct was "accompanied by ill will or spite" or "reckless disregard of Plaintiff's [Fourth Amendment] rights," because, for example, "Defendant simply did not care about Plaintiffs' safety or [Fourth Amendment] rights." Dkt. 271, at 38. The jury could have thus found here that the Defendants recklessly exceeded the permissible scope of a strip search, without finding that their intent was to punish or humiliate, because they simply did not care about Plaintiffs' Fourth Amendment rights. And even if there was an apparent conflict (which there is not), it is the second verdict that should take precedence,

as Plaintiffs were erroneously denied the opportunity to present a Fourth Amendment claim at the first trial.

Defendants' authority is inapposite. *Walsh*, 837 F.2d at 801, and *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 930 (7th Cir. 2004), merely hold that the subjective intent standard for an Eighth Amendment satisfies the standard for punitive damages on an Eighth Amendment claim. Neither decision equates Eighth Amendment liability with the standard for punitive damages on a Fourth Amendment claim—or even discusses the Fourth Amendment. Defendants do not cite a single decision equating the Fourth Amendment punitive damages standard with the Eighth Amendment liability standard. For its part, *Henry* expressly declined to adjudicate the issue and also provides no support for Defendants' position. 969 F.3d at 787.  Defendants fail to meet their burden to establish an issue preclusion defense. *Havoco*, 58 F.3d at 306.

## IV.    Defendants' laundry list of challenges to class action procedure fail.

### A.    Defendants' conclusory and unsupported list of class-related gripes has been forfeited.

This Court need not reach Defendants' laundry list of class-action-related complaints, because they are conclusory, unclear, unsupported by record citation, and completely lacking in authority. Dkt. 273 at 18-19. It is unclear whether Defendants are challenging jury instructions, verdict forms, class representation, class certification, or any combination of the above, making it impossible for Plaintiffs to effectively respond. Nor, for the most part, do Defendants cite applicable authority or record citations. Defendants' class-related arguments are thus so undeveloped that they cannot justify judgment or a new trial and need not be addressed. *Berkowitz*, 927 F.2d at 1384; *Smith*, 388 F.3d at 569-70; *Opp*, 231 F.3d at 1066; *Pelfresne*, 917 F.2d 1023.

**B.     Any challenges to commonality, typicality, or class certification have been forfeited and fail.**

Defendants' complaints of problems with commonality or typicality and ambiguous suggestion that (perhaps) the case should not have proceeded as a class action. Dkt. 273 at 18-19. Defendants provide no factual basis for their argument other than unsupported assertions of factual distinctions amongst two class representatives with respect to the length of time they were handcuffed and forced to stand, as well as purported differences in their recollections as to the lack of hygiene during the strip searches.

**1.     Defendants' conclusory and unsupported arguments have been forfeited.**

As set forth above, Defendants forfeited these arguments by not articulating legal arguments with legal support. *Supra* at 11 (citing, *e.g.*, *Pelfresne*, 917 F.2d at 1023; *Berkowitz*, 927 F.2d at 1384). As independent grounds for forfeiture, Defendants put forward bare attorney say-so about evidence the trial regarding handcuffing, standing, and hygiene during the searches, without citation to the actual record. Dkt. 273 at 19. They chose to do so even after Plaintiffs apprised them of the need to cite to the record. Group Exh. C, Correspondence. Plaintiffs dispute Defendants' characterizations of the trial evidence, and Defendants have not established any factual basis in the record for their argument, further forfeiting it. *Opp*, 231 F.3d at 1066.

**2.     Defendants have waived any challenges to class certification through their delay, their omission of such challenges in the pretrial order, and their contrary stipulations.**

To the extent Defendants are challenging class certification, Defendants have waived any such challenge through their delay, their omission of such challenges in the pretrial order, and their contrary stipulations that the case should proceed as a class action.

Over the past nine years, Defendants have sought to capitalize on the class action

procedure to bind absent class members to rulings favorable to the defense, declining to seek

decertification before this Court. While Defendants initially opposed class certification, this

Court certified the class over their objections in 2013, explaining: "While there were differences

in the experiences of the women, there is a common core experience that was shared by all,

which took place on the same date at the same place." Dkt. 68 at 8. Also in its class certification

order, the Court also found the class representatives' experiences typical of the class. Dkt. 68 at 8

& Dkt. 87 at 7-8. Defendants never moved to reconsider this class certification ruling at any time

in the litigation, nor did they seek a Rule 23(f) appeal of the class certification ruling. Fed. R.

Civ. P 23(f). At no point between 2013 and the close of evidence at the June 2022 trial did

Defendants challenge commonality or typicality, or seek decertification or disqualification of any

class representatives, before this Court. They did not raise any such issues in their first summary

judgment motion, at any time prior to the Eighth Amendment trial, or in the immediate aftermath

of the Eighth Amendment trial. Defendants were apparently satisfied with class certification and

representation when they won an Eighth Amendment jury verdict on liability.

Indeed, before the three-judge panel, when Defendants thought they would win Plaintiffs'

appeal of the dismissal of the Fourth Amendment claims, Defendants again did not raise any

issue as to certification. Dkt. 26.  It was only after rehearing *en banc* had been granted, and

Defendants realized that they might lose the appeal, that they made a conclusory two-sentence

argument seeking affirmance of the panel opinion arguing: "Even if plaintiffs were to survive

summary judgment on their Fourth Amendment theory and overcome the bar on compensatory

and punitive damages, the damages class would have to be de-certified because the summary

judgment evidence established that the inmates had not presented questions of law or fact

common to the class." Dkt. 114 in Case No. 16-4234 (7th Cir.), at 56. The *en banc* Court

declined to consider the issue because the Defendants had waived it for purposes of appeal. *Henry* 969 F.3d at 787.

On remand, this Court then gave Defendants a full opportunity to raise any such challenge, at which time Defendants could have used the "summary judgment evidence" (Dkt. 114 in Case No. 16-4234 (7th Cir.), at 56) and Eighth Amendment trial evidence that Defendants apparently believed supported decertification, had they wanted to. The Court made clear that such issues should be raised in a second summary judgment motion by December 18, 2020. Text Order of Sept. 29, 2020 (setting dispositive motion date). Yet when Defendants filed their second summary judgment motion, they again declined to raise any challenges related to the class action procedure, instead seeking a ruling on Defendants' qualified immunity defense that would bind the entire class. Dkt. 211; Dkt. 241. Nor did Defendants raise a challenge to certification or typicality of class representatives in any other pretrial filing.

Indeed, when Plaintiffs moved to substitute Veela Morris and Miranda Howard as class representatives in the place of previous representatives, Defendants stated that they had no challenge to as to these representatives and did not oppose the motion. *See* Group Exh. B, Correspondence, at 1-4; Dkt. 226, at 2; Text Order of 12/17/2021; Text Order of 5/18/2022.

In the pretrial order, Defendants consistently agreed that the case was a proper class action. *E.g.*, Dkt. 231-1, Agreed Statement of Case, at 1 ("This is a class-action lawsuit."); Dkt. 231, Pretrial Order, at 1 ("Because this is a class action, the parties jointly propose . . ."); *id.* at 4-5 (raising no legal or factual challenges to the propriety of class certification or to commonality). Defendants then *agreed* on the class action damages jury instruction and jointly submitted it with Plaintiffs. Dkt. 270 at 28, adopted by Court at Exh. A, 6/6/2022 Trial Trans. Excerpts, at 9:17-9:20. Defendants failed to preserve any challenge to certification or the appropriateness of the

class representatives, apparently seeking a win on the merits on the Fourth Amendment claim that would bind the entire class. Dkt. 231 at 1, 4-5. Defendants likewise failed to preserve any legal or factual challenge to the typicality of the representatives. *Id*. It was only after the close of evidence, for the first time, when apparently Defendants began to worry about losing a liability verdict, that Defendants first raised any concern about the class representatives.

Defendants cannot now raise decertification or class representation challenges merely because they lost at trial. Courts routinely reject this kind of untimely gamesmanship as prejudicial to plaintiffs and class members. For example, in *In re Sulfuric Acid Antitrust Litig.*, 847 F. Supp. 2d 1079 (N.D. Ill. 2011), the defendant brought a motion to decertify two months before a class action trial of an eight-year-old case. *Id.* at 1083. The court denied the motion because the issues of fact raised by the defendants had already long been known to them. *Id.* at 1082. The court also found that rescinding certification at such a late stage would prejudice the plaintiffs and that the defendants had had multiple prior opportunities to raise their issues with the district court or the appellate court. *Id.*; *see also In re Scrap Metal Antitrust Litig.,* 2006 WL 2850453, at *20 (N.D. Ohio Sept. 30, 2006) ("Columbia's request to decertify the Plaintiff Class literally on the eve of trial was inappropriate and untimely. . . . . Columbia had ample opportunities to raise this issue including, but not limited to, in a dispositive motion."); *In re Urethane Antitrust Litig.*, 2013 WL 2097346, at *1 (D. Kan. May 15, 2013) (denying motion to decertify filed one day before trial that could have been asserted earlier, collecting cases denying decertification due to prejudice to plaintiffs and class members, and finding that reconsideration of certification would severely prejudice the plaintiffs, who prepared for trial at great expense); *Gortat v. Capala Bros., Inc.*, 2012 WL 1116495, at *4 (E.D.N.Y. Apr. 3, 2012) (late stage of litigation weighs against decertification; granting the eleventh-hour motion to decertify, where

underlying facts were known to defendants for well over a year, would prejudice class members who have not taken independent steps to protect their rights); *Easterling v. Connecticut Dept. of Corr.,* 278 F.R.D. 41, 44 (D. Conn. 2011) ("A court should be wary of revoking a certification order at a late stage in the litigation process.") (citing *Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir. 1984)).

Defendants' reference to the propriety of certification—submitted over a year and a half after the deadline for dispositive motions, in an eleven-year-old case that included a previous trial, is untimely. Decertifying a class now would cause extreme prejudice to Plaintiffs, including from the expense of the trial and the difficulty that absent class members will face now in protecting their rights and pursuing individual claims. Defendants have offered no excuse for their delay. For instance, they have not claimed to have only discovered the underlying variation as to differences in length of time being handcuffed and standing, or recollections of the lack of hygiene during the search to which they allude (without citation). Nor could they: Patricia Phillips and Veela Morris both previously submitted declarations in initial discovery nearly a decade ago; and Phillips further testified at the 2016 Eighth Amendment trial; and thus Defendants were well aware of their experiences. Defendants also previously represented to the Seventh Circuit that issues with commonality were apparent from the "summary judgment evidence" cited in the 2016 round of dispositive motions briefing, Dkt. 114 in Case No. 16-4234 (7th Cir.), at 56, but declined to raise such issues with this Court before trial. Any request for decertification is untimely.

And as an independent basis for waiver, Defendants made stipulations that the case would proceed as a class action, omitted any mention of any challenge to class certification or representatives in the pretrial order, and presented an agreed class action jury instruction and

statement of the case as a class action. *See supra* at 64-66. Those stipulations and agreements are binding on them, and they cannot challenge them now. *SNA Nut Co.*, 302 F.3d at 732 (7th Cir. 2002) ("[T]he pretrial order is treated as superceding the pleadings and establishes the issues to be considered . . . to prevent protracted litigation due to changing theories and arguments."). Allowing Defendants to sandbag Plaintiffs now with a commonality and typicality challenge would be unfair. Issues that are not raised and preserved in the pretrial order are waived, exactly to avoid the situation here, in which Defendants have blindsided Plaintiffs after the close of evidence with a challenge to commonality and typicality *after* Plaintiffs relied on contrary stipulations in the pretrial order and agreed statement of the case, prepared their exhibit lists, selected their witnesses, selected their strategy as to questioning those witnesses, and presented their witnesses.

### 3. Defendants are judicially estopped from challenging certification, commonality, typicality, or the class representatives.

As an independent basis for rejection of Defendants' argument, they are judicially estopped from challenging certification or the appropriateness of the class representatives, having previously embraced it to their advantage to achieve judgments favorable to the defense that bound the class. *See Bennett v. Dart*, 953 F.3d 467, 469 (7th Cir. 2020) ("Classes can lose as well as win."). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 659-60 (7th Cir. 2004). "This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'"

68

*Id.* (collecting authority). It serves to "protect the integrity of the judicial process." *Carnegie*, 376 F.3d at 660 (quotation omitted).

Here, Defendants previously accepted the Court's class certification ruling and the appointment of the class representatives, jointly proposed the form of class notice (Dkt. 128), declined to contest certification or representation in their initial summary judgment motion, and instead sought and obtained, a class-wide initial defense judgment[13] on the class's Fourth Amendment claims (Dkts. 103 & 122). At the Eighth Amendment trial, Defendants further conceded certification and waived any objections to certification or representation in the pretrial order and agreed statement of the case (*see* Dkt. 123 at 5; Dkt. 148), after which Defendants again benefited from certification to achieve a defense verdict on the class's Eighth Amendment claims that bound all class members (Dkt. 177). Given these defense positions, Defendants cannot now take a contradictory position to the detriment of class members. The Seventh Circuit has applied judicial estoppel in far less egregious circumstances, in which "the defendants had urged the district court to accept the giant class as appropriate for a global settlement [and] had prevailed in their urging," and were therefore held to be "precluded by the doctrine of judicial estoppel from challenging its adequacy." *Carnegie*, 376 F.3d at 659-60. A finding of judicial estoppel is even more so required here.

### 4. Defendants did not preserve any challenge to commonality, typicality, or certification in their Rule 50(a) motion.

Nor did Defendants preserve in their Rule 50(a) motion any challenge to commonality, typicality, or certification on the basis of variation, providing yet another basis for forfeiture. When Defendants moved for a directed verdict, Defendants argued only that:

[N]ot all the Plaintiffs testified as to each step along the way the same here. Some didn't

---

[13] It is of no significance that the Fourth Amendment verdict was later reversed on appeal. *See Carnegie*, 376 F.3d at 660.

say that they were cuffed too long. In fact, they were cuffed -- they were brought into a line, and the first ones to be searched were uncuffed, you know, right away to be searched. They couldn't have a claim related to extended cuffing or standing.

Exh. A at 23:25-24:7. Defendants did not reference the doctrines of commonality or typicality, or the relief of class decertification, in this conclusory and unsupported argument. Nor did they reference variation in recollections as to any aspects of the search other than handcuffing. Rather, their objection was a limited concern about a claim regarding handcuffing and standing that did not strike at the heart of class certification. Trial Excerpts (06/06/2022) at 24:5-24:7 ("It would be inappropriate to have a class action proceed on the claim regarding [cuffing or standing].").
No argument was made that the class should be decertified due to any other supposed variation across the class.

Nor did Defendants preserve in their Rule 50(a) motion any challenge that Plaintiffs Phillips or Morris did not have claims typical of the class. Exh. A at 21:16-25:25. Defendants alluded vaguely in their Rule 50(a) motion to different experiences by "representative Plaintiffs who have not presented the same evidence" against, specifically, Defendants Crudup and Hatfield (*id.* at 22-24), but those arguments have since been abandoned. Dkt. 273 at 18-19.

As such, this Court should find Defendants' argument waived. *Brooks v. O'Leary*, 33 F.3d 56, *3 (7th Cir. 1994) (unpublished table decision) ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion") (quoting Fed. R. Civ. P. 50 advisory comm. note, 134 F.R.D. 525, 687); *Unitherm Food Sys.*, 546 U.S. at 398 n. 1 (same).

### 5.    The evidence at trial did not defeat class certification.

Defendants' ambiguous eleventh-hour challenges to commonality and/or typicality also lack merit. The focus of class certification is to ensure that courts "select the metho[d] best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc v. Connecticut Ret. Plans &*

*Tr. Funds*, 568 U.S. 455, 460 (2013) (internal quotation marks omitted); *see also Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015) ("The purpose of class action litigation is to avoid repeated litigation of the same issue and to facilitate prosecution of claims that any one individual might not otherwise bring on her own."). "District courts have broad discretion to determine whether certification of a class-action lawsuit is appropriate[,]" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017), and are given "substantial latitude in management of complex class-action litigation." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 888 (7th Cir. 2011). Here, the only class certification requirements that Defendants mention are commonality and typicality, and they do not contest the predominance of common questions, numerosity, or adequacy of representation.

As to commonality, Rule 23(a)(2) merely requires a proposed class to present questions of law or fact that are common to the class, Fed. R. Civ. P. 23(a)(2), and can be resolved on a class-wide basis. *Amgen Inc.*, 568 U.S. at 459-60; *Bennett*, 953 F.3d at 469 ("Classes can lose as well as win."). Just one common factual or legal question is enough. *Jamie S. v. Milwaukee Public Schs.*, 668 F.3d 481, 497 (7th Cir. 2012). Relatedly, a class representative's "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Identical experiences are not required; there need only be "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

Here, Plaintiffs' claims easily depend on at least one common contention. When granting certification, this Court explained: "It is clear that there are common questions of fact and law presented in this case. While there were differences in the experiences of the women, there is a common core experience that was shared by all, which took place on the same date at the same place." Dkt. 68 at 8 (citation omitted). This Court went on to conclude that the evidence of the class representatives' experiences during the March 31, 2011 cadet training exercise was sufficiently similar to the other class members' experiences, based on dozens of declarations, to meet Rule 23(a)(3)'s typicality requirement. *Id.* In so holding, the Court rejected the argument that mere variations in experience by class members defeat commonality: "While there were differences in the experiences of the women, there is a common core experience that was shared by all, which took place on the same date at the same place." Dkt. 68 at 8. The class's Eighth Amendment claims were successfully resolved as a class action, with Phillips and Brown as class representatives, as Defendants do not now dispute.

No reason exists to reach a different result now. All class members and representatives were subjected to mass strip and body cavity searches, pursuant to the same procedure, on the same date and time, as part of a unified cadet training exercise, by the same supervisory Defendants (Hulett, Reynolds, Dawdy, and Hatfield). Dkt. 231 at 2-4. This Court's pretrial order provides a multitude of stipulated facts common to the class, agreed upon by the parties. *Id.* For example, Defendants stipulated that all 200 class members in units 2B and 4B were subject to the March 31, 2011, strip search during a training exercise that lacked emergency or exigent circumstances, and stipulated to many uniform procedures that occurred during the strip searches, pursuant to authorizations from Defendants Hulett and Reynolds. Dkt. 231, at 2-4. Contested issues of fact—like whether the search environment was unsanitary and whether

Plaintiffs were searched in view of onlookers not participating in the search—were common to the entire class as well. *Id.* at 4. Common questions of law, such as Defendants' untimely qualified immunity defenses asserted in the post-trial motion, are common to the class as well.

In addition, "when a district court considers decertification (or modification) of a class after a jury verdict, the district court must defer to any factual findings the jury necessarily made unless those findings were seriously erroneous, a miscarriage of justice, or egregious." *Mazzei v. Money Store*, 829 F.3d 260, 269 (2d Cir. 2016) (quotations omitted). Here, this Court must defer to the factual findings of the jury at the Fourth Amendment trial that the each of the four moving Defendant supervisors violated the Fourth Amendment rights of the class as a whole. *Id.*

Defendants contend (without any record evidence) that there were minor differences in recollections of the searches, yet factual variations are not in and of themselves reason to decertify. *Rosario*, 963 F.2d at 1017 ("The fact that there is some factual variation among the class grievances will not defeat a class action."). What matters is that the class shares a common claim or set of claims that will rise and fall together. *Chicago Teachers Union*, 797 F.3d at 426 ("[C]lass-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim") (citing *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011)). It does not matter that the strip search was more unreasonable for some, so long as the circumstances of the strip search common to all were still objectively unreasonable. And the jury verdict that Plaintiffs satisfied their burden to demonstrate a violation of the entire class's rights against Defendant supervisors Hulett, Reynolds, Hatfield, and Dawdy (Dkt. 261), further supports that the jury found that Plaintiff satisfied their burden to prove that the entire class's strip searches were objectively unreasonable.

Defendants provide no contrary authority or explanation. *See Narducci v. Moore*, 572 F.3d 313,

324 (7th Cir. 2009) (arguments raised for the first time in reply are forfeited).

      As Defendants omit, the Seventh Circuit recently confirmed that commonality and

typicality were satisfied in a single lawsuit involving a series of different strip searches at four

different prisons that included far more variation than the single cadet training exercise at issue

here. *See Ross v. Gossett*, 33 F.4th 433, 436-39 (7th Cir. 2022). Defendants' sole cited authority

is inapposite. *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541 (7th Cir. 2016) (decertifying class

where members suffered different medical ailments, underwent different treatments, and had

different complaints of medical neglect). *Ross* requires rejection of Defendants' challenge here.

      For the same reasons, the claims of Phillips and Morris satisfy the typicality requirement:

they were subject to the same common course of conduct. Defendants have failed to provide any

record support reflecting supposed material variations in their experience, and even their say-so

does not withstand scrutiny. For example, Defendants admit that Morris observed blood on the

floor during her strip search, but inexplicably argue that she was not subject to this degradation.

As another example, Phillips testified extensively of the handcuffing and forced standing that she

endured (e.g., Exh. F, Phillips Trial Trans. at 20:5-22:20), as well as about derogatory comments

during the exercise, including those made directly by Defendants Dawdy and Reynolds (*id.* at

11:9-11:24, 23:24-24:19), contrary to Defendants' arguments. Nor, pursuant to Defendants' own

agreed class action instructions, was every Plaintiff witness required to testify to every single

aspect of the search. *See* Dkt. 270 at 28 ("Because this case is a class action, Plaintiffs are

allowed to prove their claims by evidence which applies to the class as a whole <u>as to liability</u>,

and do not need to prove each class member's claim individually.") (adopted by Court, Exh. A at

9:17-9:20).

Defendants argue that typicality is somehow impacted merely because, Defendants argue, they did not personally handcuff each class representative. Yet such a showing was not required for liability and Defendants concede that the jury reasonably found all supervisory moving Defendants liable for violating the Fourth Amendment rights of the entire class based on direct participation, failure to intervene, and supervisory liability theories (a finding this Court must defer to, *Mazzei*, 829 F.3d at 269). Defendants have failed to establish that any minor variation as to any aspect of the search defeats typicality.

### C.   Defendants waived any challenges to delineation between damages representatives, injunctive representatives, and testifying class members.

Defendants also assert that this Court improperly failed to distinguish—either through jury instructions or on the verdict form—between the two damages class representatives, the two injunctive class representatives, and the two class members who testified at trial, and that "all six were included on the verdict form without distinction." Dkt. 273 at 19. As a result, Defendants argue, it was impossible for the jury to "resolve discrepancies between the class members." Dkt. 273 at 19. This contention lacks merit for at least five different reasons.

First, Defendants have waived this argument. At every instance, Defendants indicated approval of the descriptions of the class and themselves conflated damages and injunctive class representatives and class members. For instance, Defendants' own agreed statement of the case did not distinguish at all between damages class representatives (Phillips and Morris) and injunctive class representatives (Howard and Ieshia Brown); instead, the statement described an injunctive class representative and a damages class representative as the "representatives" of the class writ large. Dkt. 231-1 at 1. Defendants' proposed jury instructions, too, then sought damages adjudications for one damages class representative (Phillips) and one injunctive class representative (Ieshia Brown). Dkt. 253, at 9-14. And Defendants' agreed stipulations of fact

stated that, in language that Defendants approved: "In this lawsuit, *Plaintiffs* challenge . . . the strip searches conducted on March 31, 2011 (Dkt. 231 at 2), without differentiation between categories of plaintiffs.

Perhaps most importantly, the parties *agreed* on the class action jury instruction and jointly submitted it. Dkt. 270 at 28, adopted by Court, Exh. A at 9:17-9:20. That instruction correctly instructs: "Because this case is a class action, Plaintiffs are allowed to prove their claims by evidence which applies to the class as a whole <u>as to liability</u>, and do not need to prove each class member's claim individually." Dkt. 270 at 28. Defendants' own agreed instruction itself makes no distinction between damages class representatives, injunctive class representatives, or testifying class members. *Id.* Having themselves approved of a lack of distinction between the different kinds of class representatives and testifying Plaintiffs and acknowledged that liability would proceed based on classwide proof, Defendants cannot now complain about such issues as an excuse for a do-over. *U.S. v. DiSantis*, 565 F.3d 354, 361 (7th Cir. 2009) ("A defendant waives an objection to jury instructions if 'the record illustrates that the defendant approved of the instructions at issue.'").

Second, even if Defendants did not affirmatively approve, they did not preserve their objections and thus forfeited this issue. At no time before the close of evidence did Defendants object to a lack of delineation between different designations of class members. At the jury instructions conference, Defendants objected to a few proposed instructions on the basis that "[t]he nonrepresentative class members should not be part of the [damages] verdict." Exh. A at 14:5-14:6. They did not make the different argument asserted here, that, if the testifying class members were included in the damages verdict form, they should be distinguished as to their status either by instruction or on the form, from damages class representatives and/or injunctive

76

class representatives. And in openings and closings, both sides referenced the class representatives without differentiating between their exact status as damages or injunctive claim representatives. Defendants did not question any of the testifying class members about their status. Nor did Defendants object to any characterization that Plaintiffs' counsel offered as to representation (such as introduction of class representatives in opening statement). These constituted yet additional opportunities during which Defendants failed to timely raise the issues that they now complain about. A finding of forfeiture is thus appropriate. *See Davis v. Wessel*, 792 F.3d 793, 802 (7th Cir. 2015) (finding that, in order to preserve objection to jury instruction, party must state "distinctly" grounds for objection, make court aware of error, and "state the same grounds" when objecting as in its motion).

Third, Defendants offer no authority or argument as to why this was error in the first place, forfeiting the matter. *Berkowitz*, 927 F.2d at 1384. It is not error. As Defendants have conceded in the agreed jury instruction: "Plaintiffs are allowed to prove their claims by evidence which applies to the class as a whole <u>as to liability</u>, and do not need to prove each class member's claim individually." Dkt. 270 at 28. The role of the class representatives vs. class members was not material to any issue the jury had to decide during the Fourth Amendment trial.

Fourth, even if there was error, there is no reason that such error had a prejudicial effect. Defendants carry the burden to "clearly articulate a reason" or "explain the practical and prejudicial result" of any error. *Consumer Prods. Rsch. & Design, Inc. v. Jensen*, 572 F.3d 436, 438 (7th Cir. 2009). They have not done so. The extent of Defendants' argument is the mere observation that the jury was not instructed as to the difference between the damages class representatives, injunctive class representatives, and other members of the class. Defendants fail to raise any argument—let alone authority—as to how the jury instructions or verdict form had a

prejudicial effect or why it constituted error in the first place. Indeed, Defendants had every opportunity to question each testifying plaintiff about their role in the case and/or explain their role during opening and closing statements but declined to do so.

Finally, Defendants' requested remedy—a new trial—requires a high bar of proof that Defendants have not made any attempt to satisfy. The district court enjoys "substantial discretion" when formulating jury instructions. *U.S. v. Matthews*, 505 F.3d 698, 704 (7th Cir. 2007). "[T]o win a new trial based on an incorrect jury instruction, [a party] must show both that (1) the instruction inadequately states Seventh Circuit law; and (2) the error likely confused or misled the jury causing prejudice to the appellant." *Giles v. United Airlines, Inc.*, 213 F.3d 365, 374-75 (7th Cir. 2000). The touchstone is whether there was "substantial harm," which is an "onerous burden" for Defendants. *Id.* at 375. Instructions are also not scrutinized one at a time but instead "as a whole" and "with deference." *Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 729 (7th Cir. 2002). Within the required holistic analysis, it is worth noting that Defendants object to one of dozens of jury instructions and does not show why this one instruction, if it were error, unduly prejudiced them in light of all the remaining instructions that were conceded to be correct. As stated before, Defendants have made no claim why the specific jury instruction in question was legally inaccurate or prejudicial. Defendants had to show both to prevail, and they have shown neither.

### D.   Defendants waived any challenges to inclusion of individual class members on the verdict form as to liability.

Defendants complain that the jury should have been instructed that each Plaintiff had to individually prove their case as to liability. Dkt. 273 at 19. Defendants present no authority or explanation in support, and so their argument is forfeited as conclusory. *Supra* at 11.

In addition, any such challenge is waived, because the parties jointly agreed on and

78

submitted a class action jury instruction directly to the contrary. Dkt. 270 at 28, adopted by Court, Exh. A at 9:17-9:20. That instruction correctly instructs: "Because this case is a class action, Plaintiffs are allowed to prove their claims by evidence which applies to the class as a whole <u>as to liability</u>, and **do not need to prove each class member's claim individually**." Dkt. 270 at 28 (emphasis added). Having agreed to the exact opposite instruction, Defendants cannot now change course after receiving a trial result they did not like. *DiSantis*, 565 F.3d at 361 ("A defendant waives an objection to jury instructions if 'the record illustrates that the defendant approved of the instructions at issue.'").

Third, class action procedure is to the contrary. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" (citations omitted)). Finally, Defendants do not make or substantiate any claim of prejudice or legal error, both of which are required for retrial on this basis. *Supra* at 78.

### E. Defendants waived any challenges to damages adjudications of the testifying class members who were not damages class representatives.

Defendants' separate objection to this Court's jury instructions—that testifying class members should have been excluded from the damages verdict form—was denied during conference (Exh. A at 14:5-6 & 14:19-20) and not renewed in Defendants' post-trial motion (Dkt. 273 at 18-19). To the extent that Defendants are now vaguely arguing that only the damages class representatives (Phillips and Morris) should have been included on the verdict form, this argument also makes no claim of prejudice or legal error, both of which are required for retrial. *See supra* at 78.

As Plaintiffs noted during this Court's jury instructions conference, requiring non-damages class representatives to testify a second time to obtain damages would be burdensome

to those class members. It would waste not only their time but also this Court's resources to require Plaintiffs Brown, Howard, Williams, and Wells to re-testify when the jury had already determined their damages. Defendants have not shown why their position would either promote judicial economy or not prejudice Plaintiffs, the non-moving party. *See Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). Instead, Defendants' position apparently seeks to inconvenience Plaintiffs as much as possible and prevent a resolution in this decade-long litigation.

### F. Any argument claiming cumulative error fails.

Defendants' passing reference to cumulative error does not satisfy the required showing for a new trial. *Christmas*, 682 F.3d at 643 (Defendants must show "(1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial were so severe as to have rendered [their] trial fundamentally unfair."). Defendants have not attempted to show either, let alone satisfied their burden to do so. *See also U.S. v. Powell*, 652 F.3d 702, 706 (7th Cir. 2011) ("Only rarely will multiple insignificant errors result in sufficient prejudice to justify reversal; we take particular care not to magnify the significance of errors which had little importance in the trial merely because more than one such error occurred.").

## V. The Court properly instructed the jury about deference and did not err in rejecting Defendants' Additional Instruction No. 1.

The moving Defendants concede the correctness of nearly all of the Court's instructions, and further concede that Plaintiffs presented sufficient evidence to support a finding of Fourth Amendment liability against each of them. Nonetheless, they seek a new trial on the basis that the Court, in their view, did not properly "instruct[] the jury on the deference owed to prison administrators." Dkt. 273 at 19-20.

In raising this argument, Defendants face a high burden. The district court "is afforded

80

substantial discretion with respect to the precise wording of instructions so long as the final

result, read as a whole, completely and correctly states the law." *DiSantis*, 565 F.3d at 359

(citations omitted); *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). The law does not

require a "perfect set of jury instructions," so long as the instructions are correct legal statements.

*Lasley v. Moss*, 500 F.3d 586, 589 (7th Cir. 2007). To justify a new trial, Defendants must

demonstrate not only that the Court's instruction at issue was legally inaccurate, but also that the

resulting inaccuracy was sufficiently misleading to have caused prejudice. *Northbrook Excess &*

*Surplus v. Proctor & Gamble*, 924 F.2d 633, 638 (7th Cir. 1991) (reversal is unwarranted unless

it appears that "the jury was misled ... [and its] understanding of the issue was seriously affected

to the prejudice of the complaining party"). Reversal is appropriate, in other words, only if the

jury's comprehension of the issues is so misguided that a litigant is prejudiced. *New Burnham*

*Prairie Homes v. Burnham*, 910 F.2d 1474, 1483 (7th Cir. 1990). Defendants fail to satisfy this

burden.

### A. Defendants waived this challenge by agreeing to the Court's instruction.

Defendants' position fails at the outset because they agreed to the Court's pertinent

reasonableness instruction, and thus cannot now challenge it. In preparing its instructions, this

Court rejected Plaintiff's proposed Instructions 16, 17 and 18, as well as Defendants' Proposed 17

and Defendants' Additional No. 1 (Dkts. 224-8 & 224-9), and crafted its own middle ground: an

instruction that included elements from both sides, relied on the *en banc* decision in this case and

the Seventh Circuit pattern instruction on Fourth Amendment claims, and succinctly and correctly

stated the law. The Court's instruction stated:

> Prison officials may conduct strip searches for the purpose of preserving safety, security,
> discipline, and order. Even strip searches that are conducted to serve those legitimate
> purposes must be carried out in a reasonable manner.

81

In deciding whether the strip searches in this case were unreasonable you should consider all the circumstances, including the scope of the intrusions, the manner in which the strip searches were conducted, the justification for conducting the strip searches, and the place in which the strip searches were conducted.

You must decide whether the Defendant you are considering subjected Plaintiffs to unreasonable strip searches from the perspective of a reasonable officer facing the same circumstances that the Defendant faced. You must make this decision based on what the Defendant knew at the time the strip searches were conducted, not based on matters learned after the strip searches were conducted.

Dkt. 271 at 32-33.

At the final jury instructions conference, Defendants initially objected to this instruction, seeking the addition of the final two sentences of the instruction, which were added upon Plaintiffs' and the Court's agreement. *See* Exh. A at 20:7-21:4; Exh. N, 6/6/2022 Trial Trans. Excerpts II, at 6:9-6:25. Defendants then clarified that they had no other objection of any kind to the Court's reasonableness instruction. *Id.* Having expressly agreed to this instruction as an accurate statement of the law, Defendants cannot now turn around and claim that the Court erred in giving it. *See Doe v. Johnson*, 52 F.3d 1448, 1460 (7th Cir. 1995) ("[I]n a civil case, a litigant may not attack an instruction of which he was a proponent."). Defendants have thus waived this challenge.

## B.    The Court's instruction correctly guided the jury as to the law.

On the merits, the district court "is afforded substantial discretion with respect to the precise wording of instructions so long as the final result, read as a whole, completely and correctly states the law." *DiSantis*, 565 F.3d at 359 (citations omitted); *Calhoun*, 408 F.3d at 379. The law does not require a "perfect set of jury instructions," so long as the instructions are correct legal statements. *Lasley*, 500 F.3d at 589.

Here, the Court's instruction communicates a correct level of deference to prison officials: that "Prison officials may conduct strip searches for the purpose of preserving safety, security, discipline, and order." Dkt. 271 at 32. The Court's instruction also adheres to the guidance provided

by the Seventh Circuit's Civil Pattern Jury Instructions as to claims implicating the objective

reasonableness of conduct by law enforcement defendants. Civil Pattern Instructions No. 7.10

(excessive force), 7.11 (Fourth Amendment medical care for arrestee), and 7.12 (Fourth

Amendment excessive detention), each lay out the circumstances that should guide the jury's

assessment of reasonableness, exactly as the Court did here in its reasonableness instruction, rather

than using the deference language that Defendants claim was required. The correctness of the

Court's instruction ends the inquiry. *See Lasley*, 500 F.3d at 589 (no error if instructions

accurately state the law).

Defendants contend that the Court erred in declining to add the language in Defendants'

Additional Proposed Instruction No. 1, which stated:

> Prison officials have wide-ranging deference in the adoption and execution of policies and
> practices that in their judgment are needed to preserve internal order and discipline and to
> maintain institutional security.

Dkt. 231-9, at p. 21. Yet this instruction misstates the applicable law for three different reasons.

First, Defendants' proposed language misreads *Henry*, 969 F.3d at 783, which states that

when deciding whether a plaintiff has presented evidence of a triable Fourth Amendment claim,

"*courts* must afford prison administrators" a certain level of deference, and ensure that there is

"substantial evidence in the record to indicate that the officials have exaggerated their response to

these considerations," although "a *court* need not give as much deference to a prison administrator's

assessment of the necessity of a training exercise as it does to measures taken in response to the

actual presence of weapons, contraband, or other immediate security concerns." *Id.* at 783-84, 81

(instructing this Court to apply such deference when determining, on remand, whether Plaintiff

stated sufficient evidence of a triable Fourth Amendment claim).[14] The same is true of the

authorities upon which *Henry* relies. *See* 969 F.3d at 783 (citing, *e.g.*, *Bell*, 1 U.S. at 520, 547). In

other words, the language Defendants cite is a policy consideration that informs courts of why the

Fourth Amendment standard is as it is, to guide judicial decisions as to whether a Plaintiff has

amassed sufficient evidence to overcome summary judgment—not a matter on which to instruct the

jury.

Second, the instruction language Defendants proposed would, at best, apply when the

defendant claims to have acted pursuant to a policy or practice of the prison, as was the case in

*Cornwell*, on which Defendants rely. *See* 963 F.2d at 96 (discussing the deference afforded to

"prison regulations that allegedly infringe on inmates' constitutional rights"). Here, the instruction

would be inapplicable because Defendants did not argue that, in carrying out the manner of the

search, they followed their own policies and procedures. To the contrary, they stipulated that the

search, as described by the Plaintiffs' evidence, directly *contravened* their policies and procedures,

and their defense was that they did not engage in the alleged misconduct. *E.g.*, Agreed Stipulations

of Fact Nos. 22-26 (Dkt. 231-6).

Third, Defendants' proposed language was incorrect, argumentative, and skewed.

Defendants' proposed instruction failed to reflect that prison staff do not have free reign to carry out

strip and body cavity searches in any manner they choose that is related to or serves some

institutional objective, but rather, because a strip search is an invasion of personal rights of the first

magnitude, "[t]he Fourth Amendment [] protects prisoners from searches that may be related to or

serve some institutional objective, but where guards nevertheless perform the searches in an

---

[14] Defendants declined to raise any challenge to whether Plaintiffs had a triable Fourth Amendment claim in their second summary judgment motion (Dkt. 211), conceding the issue, and thus this Court had no opportunity need to reach it.

unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Henry*, 969 F.3d at 781 (citing *Bell*, 1 U.S. at 559 (1979)); *see also Campbell*, 499 F.3d at 718. Defendants' proposed language failed to reflect that an unreasonable manner or place for a strip search requires a specific justification, separate and apart from the justification for generally conducting the search. *See id.* And Defendants' proposed language omitted *Henry*'s qualification that courts "need not give as much deference to a prison administrator's assessment of the necessity of a training exercise as it does to measures taken in response to the actual presence of weapons, contraband, or other immediate security concerns." 969 F.3d at 781.

Indeed, an analogous instruction proposed by Defendants was rejected by Judge Mills during the previous trial in this case. *See* Dkt. 176 (instructions at Eighth Amendment trial, declining to give this deference instruction proposed by Defendants at Dkt. 164, page 11). This, Defendants fail to establish that their defense language was required, fatal to their challenge. *Lasley*, 500 F.3d at 590 ("Because Dr. Moss' tendered instruction failed to convey the relevant legal principles in full, it was properly rejected.").

Defendants point to *Cornwell*, but that case is factually inapposite. There, a court considered instructions in a case in which the defendants had claimed that the disputed conduct involving strip searches had occurred consistent with their policies and regulations addressing emergency searches during mass prisoner disturbances, and thus the Court found error in jury instructions that did not alert the jury in any way that prison officials may reasonably carry out strip searches in line with their policies and regulations for legitimate purposes such as preserving safety and security. 963 F.2d at 913-14.

Here, Defendants did not argue that they acted pursuant to written or unwritten policies or regulations that justified the misconduct alleged by the Plaintiffs. To the contrary, they

stipulated that the search, as described by the Plaintiffs' evidence, directly *contravened* their policies and procedures and those of the Illinois Department of Corrections. *E.g.*, Dkt. 231 at Agreed Stipulations of Fact Nos. 22-26; *see also supra* at 17-19. The dispute at trial was about the question of whether the search had occurred as the Plaintiffs asserted, which Defendants disputed. *See* Dkt. 231 at 3-4 (uncontested and contested issues of fact). Defendants did not argue that, for example, they were justified in threatening compliant women with batons, yelling degrading comments and insults at them, depriving them of menstrual products, forcing them to stand on floors contaminated with menstrual blood, and exposing their naked bodies to spectators, including men, who were not conducting the searches. Their defense was that such conduct did not occur. Accordingly, Defendants can show no prejudice from omission of language instructing the jury to defer to "policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security" which are nonexistent and inapplicable on the facts of this case.

Moreover, the *Cornwell* jury did not receive, as here, a Fourth Amendment reasonableness instruction (agreed upon by the Defendants, Exh. N at 6:9-6:25), that advised them that prison officials may conduct strip searches for the purpose of preserving safety, security, discipline, and order. *Cornwell* is also an out-of-circuit decision that conflicts with the guidance provided in the Seventh Circuit pattern instructions. Defendants have not identified a single decision within the Seventh Circuit that has adhered to its ruling regarding jury instructions in the thirty years since that decision was issued. They have not established a basis for a new trial.

### C.   Defendants identify no prejudice, let alone prejudice sufficient to justify a new trial.

Independent of the foregoing, Defendants' motion makes no attempt to satisfy the required standard for a new trial on the basis of a single disputed instruction, forfeiting the issue and

86

providing yet another independent basis for rejection of their argument. *Narducci*, 572 F.3d at 324

(arguments raised for the first time on reply are forfeited). Nor can Defendants do so. They concede

in their motion the correctness of all other instructions (apart from, possibly, a few minor issues

relating to class-related instructions), and thus concede that the Court correctly instructed the jury as

to the instructions on Fourth Amendment claim elements, the reasonableness instruction,

supervisory liability, failure to intervene, and all other instructions apart from Defendants' preferred

language regarding deference.  Even if Defendants were right about needing an additional deference

instruction separate from the reasonableness instruction, thus, there is still no meaningful prejudice

because such an instruction could not have affected the jury's verdict; Defendants concede the

accuracy of the Court's reasonableness instruction, and thus must acknowledge that the jury

received accurate information about the Fourth Amendment claims. *See Hicks v. Forest Pres. Dist.*

*of Cook County,* 677 F.3d 781, 790-92 (7th Cir. 2012) ("A district court enjoys wide latitude in

crafting jury instructions, and as long as those instructions do not misstate the law or fail to convey

the relevant legal principles in full, they will stand."). Inclusion of Defendants' language would

have had no impact on the result, let alone constituted sufficient prejudice because here,

Defendants did not argue that, in carrying out the manner of the search, they followed Defendants'

policies and procedures. *See supra* at 86-87. Finally, nothing stopped Defendants from introducing

evidence and arguing based on the reasonableness instruction language that Defendants conducted

the searches in the manner alleged by the Plaintiffs to serve legitimate security or safety purposes.

Defendants' challenge fails.

## CONCLUSION

Though Defendants are unhappy with the trial's result, it was fair. Defendants have fallen

well short of justifying another trial, and their motion should be denied.

RESPECTFULLY SUBMITTED,

/s/ Ruth Brown_____
*Attorney for Plaintiffs*

Arthur Loevy
Michael Kanovitz
Jon Loevy
Russell Ainsworth
Ruth Brown
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900

## **CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.1(B)(4), the undersigned counsel certifies that this memorandum complies with the type volume limitations of Rule 7.1(B)(4), as altered by the oversize Word counts approved by the Court (Text Order of 7/14/2022), because it contains 28,518 words, including footnotes, as determined by Microsoft Word.

/s/ Ruth Brown_____

## **CERTIFICATE OF SERVICE**

I, Ruth Brown, an attorney, certify that on September 16, 2022, I caused the foregoing to be served on all counsel of record via CM/ECF electronic filing.

/s/ Ruth Brown_____