E-FILED
Tuesday, 25 October, 2022  04:02:32 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PATRICIA PHILLIPS, et al., on behalf of themselves and a class of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 12-3087 |
| MELODY HULETT, at al., | ) ) | |
| Defendants. | ) ) | |

## OPINION

**SUE E. MYERSCOUGH, United States District Judge:**

At the conclusion of a trial beginning on May 31, 2022, a jury found Defendants Melody Hulett, Russell Reynolds, Renee Hatfield, and Troy Dawdy liable for violating the rights of the Plaintiff class of women who were subjected to strip and body cavity searches during a March 31, 2011, cadet training exercise.  See d/e 261.  The jury awarded compensatory and punitive damages to each of the six testifying class members: Plaintiffs Patricia Phillips, Ieshia Brown, Miranda Howard, Teresa Williams, Veela Morris, and Michelle Wells. Id.  Before the Court is the Defendants' Renewed Motion for

Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b) or, in the alternative, for a New Trial under Rule 59(e) [d/e 273]. For the reasons that follow, the Defendants' motion is denied.

## BACKGROUND

This case has a lengthy procedural history.  In April 2016, U.S. District Judge Richard Mills denied the Defendants' motion for summary judgment as to the Plaintiffs' Eighth Amendment claims and granted summary judgment on the Plaintiffs' Fourth Amendment claims.  See d/e 122.  The Court also left open the possibility of injunctive relief.  Id. at 19.  The case proceeded to trial in November 2016 on the Plaintiffs' Eighth Amendment claims against six Defendants, including Hulett, Reynolds, Hatfield, and Dawdy.  On November 21, 2016, the jury returned a verdict in favor of all Defendants.  See d/e 177.  In December 2016, the Plaintiffs filed a notice of appeal.  See d/e 186.

On September 2, 2020, the Seventh Circuit issued its mandate reversing the Court's entry of partial summary judgment in favor of the Defendants on Plaintiffs' Fourth Amendment claims and remanding the matter for further proceedings.  See d/e 209; Henry

v. Hulett, 969 F.3d 769 (7th Cir. 2020).  On August 19, 2021, Judge
Mills entered an Order denying the Defendants' motion for summary
judgment on qualified immunity grounds as to the Fourth
Amendment claims.  See d/e 217.  In the same Order, Judge Mills
transferred the case to the undersigned for further proceedings.  Id.
at 6.

The trial on the Fourth Amendment claims commenced on May
31, 2022.  On June 7, 2022, a jury found Defendants Melody Hulett,
Russell Reynolds, Renee Hatfield, and Troy Dawdy liable for violating
the rights of the Plaintiff class of women.  See d/e 261.

After the close of evidence, the Defendants moved for judgment
as a matter of law under Rule 50(a).  See d/e 288-1, at 21.  The
motion raised a number of grounds, including qualified immunity as
to all damages claims. Id. at 22. Specifically, the Defendants claimed
that no developed law at the time of the strip and body cavity search
told Defendants what does or does not constitute a reasonable
search.  Id. at 23.  Defendants further asserted that because a jury
had already determined that Defendants had not violated the Eighth
Amendment, they cannot be liable for punitive damages.  Id.

Additionally, the Defendants alleged that the entire class of Plaintiffs had not suffered a concrete injury.  Id.  The Defendants also contended that no representative Plaintiff made any allegations of wrongdoing as to Defendants Hatfield and Hulett.  Id. at 24.  The Defendants argued that, to the extent the Plaintiffs base their claims on crude language, that does not give rise to a claim under the Fourth Amendment.  Id. at 25.  The Defendants further contended that, while the Plaintiffs allege that the only physical injuries resulted from claims derived from cuffing and standing, neither representative Plaintiff testified that Defendants Reynolds or Dowdy had any role regarding the cuffing or standing.  Id. at 26.  The Court denied the Defendants' Rule 50(a) motion.

## DISCUSSION

### Legal standard

Federal Rule of Civil Procedure 50 authorizes district courts "to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" Passananti v. Cook County, 689 F.3d 655, 659 (7th Cir. 2012).  The

Court construes the evidence strictly in favor of the Plaintiffs as the prevailing party and "examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence."  Id.  The Court does not assess credibility or weigh the evidence, and the Court "must disregard all evidence favorable to the moving party that the jury was not required to believe."  Id.

"Because a post-verdict Rule 50(b) motion is 'only a renewal' of a pre-verdict Rule 50(a) motion, a Rule 50(b) motion may be granted 'only on grounds advanced in the preverdict motion.'"  Abellan v. Lavelo Property Management, LLC, 948 F.3d 820, 827 (7th Cir. 2020) (quoting Fed. R. Civ. P. 50(b) advisory committee's note to 2006 amendment).  While the non-movant may waive or forfeit these requirements, courts may enforce waiver or forfeiture if the non-movant insists on their observance.  See Abellan, 948 F.3d at 827. "A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve."  Wood v. Milyard, 566 U.S. 463, 470 n.4 (2012).

In considering a motion for a new trial under Rule 59(a), a court may order a new trial "only if the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." <u>Abellan</u>, 948 F.3d at 827.  A court's role in reviewing jury instructions is limited.  <u>See</u> <u>Jimenez v. City of Chicago</u>, 732 F.3d 710, 717 (7th Cir. 2013).  Courts assess whether the jury was confused or misled by deficient instructions.  <u>See</u> <u>id</u>. The Court would then need to find that Defendants were prejudiced before ordering a new trial.  <u>See</u> <u>id</u>.

## **Qualified immunity**

The Defendants filed a renewed motion for judgment as a matter of law under Rule 50(b) or, alternatively, for a new trial.  The Defendants claim they are entitled to qualified immunity because the Fourth Amendment right at issue here was not clearly established at the relevant time because the Seventh Circuit's *en banc* decision in this case expanded the scope of prisoners' privacy rights and, simultaneously, Defendants' liability.  <u>See</u> d/e 273, at 7-11.

Qualified immunity protects public officials from liability for money damages if "their conduct does not violate clearly established

6

statutory or constitutional rights of which a reasonable person would have known." Van den Bosch v. Raemisch, 658 F.3d 778, 786 (7th Cir. 2011) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  To defeat a qualified immunity defense by a state official, a plaintiff must show "(1) that the official violated a statutory or constitutional right; and (2) that the right was 'clearly established' at the time of the challenged conduct." Kemp v. Liebel, 877 F.3d 346, 350 (7th Cir. 2017) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).  Courts are permitted to analyze the "clearly established" prong without first considering whether the alleged constitutional right was violated.  Id. at 351.

To defeat the Defendants' qualified immunity defense, Plaintiffs have the burden of demonstrating that the alleged violations of their constitutional rights were "clearly established."  Id.  "To be clearly established at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. The key inquiry involves whether the official acted reasonably based on the particular circumstances he or she faced.  Id.

While a plaintiff need not point to an identical case that finds the alleged violation unlawful, the statutory or constitutional question must be beyond debate due to controlling Supreme Court or Seventh Circuit precedent.  <u>Id</u>.  In the absence of controlling authority or persuasive authority that is based on a clear trend in the caselaw, a plaintiff can show that a law was clearly established by proving that defendant's conduct was "so egregious and unreasonable that . . . no reasonable official could have thought he was acting lawfully."  <u>Id</u>. (quoting <u>Abbott v. Sangamon County, Illinois</u>, 705 F.3d 706, 724 (7th Cir. 2013)).

In determining whether a law was clearly established, the Court must ensure that the right allegedly violated is defined at the appropriate level of specificity.  <u>Id</u>. at 351.  A court should not define "clearly established law at a high level of generality."  <u>Id</u>. (quoting <u>al-Kidd</u>, 563 U.S. at 742).  The crucial question is "whether the violative nature of *particular* conduct is clearly established."  <u>Id</u>. (quoting <u>Mullenix v. Luna</u>, 577 U.S. 7, 12 (2015)).  "[T]he clearly established law must be "particularized" to the facts of the case."  <u>Id</u>. (quoting <u>White v. Pauley</u>, 137 S. Ct. 548, 552 (2017)).

In rejecting the Defendants' qualified immunity defense in their motion for summary judgment following the Seventh Circuit's remand, the Court noted Kingsley v. Hendrickson, 801 F.3d 828 (7th Cir. 2015) was "somewhat analogous to this situation." See d/e 217. In Kingsley, the defendants argued that the Supreme Court had resolved a circuit split and altered the substantive law of liability. See Kingsley, 801 F.3d at 831. The defendants claimed that because the state of the law was uncertain at the time they acted, defendants could not be held liable for their actions. See id. at 831. The Defendants here contend that any reliance on Kingsley is misplaced because the Supreme Court there addressed the requisite mental state for a Fourteenth Amendment claim but did not alter the substantive law of liability—the same conduct was unlawful both before and after the Supreme Court's decision. See id. at 831-32. The Defendants allege, by contrast, that the *en banc* decision in Henry overruled existing precedent concerning the scope of a prisoner's Fourth Amendment rights to include a right to protection from visual inspections, thereby creating a new constitutional liability for Defendants. See Henry, 969 F.3d at 783 ("[W]e thus overrule the section of King addressing the plaintiff's Fourth

Amendment claim and the bright-line rule it announced.  Likewise,
we overrule our decision in <u>Johnson</u> to the extent it deems the Fourth
Amendment inapplicable to visual inspections during bodily
searches.")  The Defendants allege that, in contrast to the scenario in
<u>Kingsley</u>, Defendants could not have known that Plaintiffs' Fourth
Amendment rights were implicated by the visual strip searches
because no such right existed until the Seventh Circuit decided
<u>Henry</u> in 2020.  <u>See</u> d/e 273, at 11.  Accordingly, the Defendants
claim that <u>Kingsley</u> cannot be applied, and Defendants are entitled
to qualified immunity because the Fourth Amendment right at issue
was not established at the time of Defendants' conduct.  <u>Id</u>.

Next, in order to preserve the argument for further review, the
Defendants claim that to the extent the Seventh Circuit's decision in
<u>Kingsley</u> precludes affording Defendants the defense of qualified
immunity, <u>Kingsley</u> was wrongly decided.  <u>Id</u>. at 11-12.

The Defendants next allege that, even if it was clearly
established in 2011 that visual inspections of prisoners implicate
their Fourth Amendment rights, the contours of that right were not
clearly established because, at the time of the searches, no case law

existed which informed officials what constituted a reasonable search under those circumstances.  Id. at 12.  Beginning in 2020, a visual search of a prisoner may be found to be unreasonable, depending on "the scope of the particular intrusions, the manner in which they were conducted, the justification for initiating them, and the place in which they were conducted."   Henry, 969 F.3d at 784.   The Defendants contend that that the second jury was tasked with evaluating Defendants' actions against a standard that did not apply in 2011.  See d/e 273, at 13.  Defendants claim that qualified immunity exists to preclude retrospective immunity like that.  Id.

Additionally, the Defendants allege they could not have anticipated their pre-search measures—that Plaintiffs were cuffed too tightly for a long period while waiting to be searched, they were forced to stand while waiting, and they were not allowed to use the bathroom—would also be considered in the Fourth Amendment analysis.  Id.  The Defendants claim that no case law, not even Henry, established that the events leading up to a search might trigger the Fourth Amendment.  Id.  Accordingly, the Defendants allege they are also entitled to qualified immunity for their pre-search conduct.

The Court concludes that, because the Defendants' qualified immunity defense is not included in the proposed pretrial order [d/e 224] or final pretrial order [d/e 231], the qualified immunity defense is waived based on Defendants' failure to preserve.  Because the pretrial order supersedes the pleadings, "a defense not raised in a pretrial order is deemed waived."  SNA Nut Co. v. Haagen-Dazs Co., Inc., 302 F.3d 725, 732 (7th Cir. 2002); see also Maul v. Constan, 982 F.2d 784, 785-86 (7th Cir. 1991) (Because "[p]retrial orders supersede the pleadings," the failure to include qualified immunity in the pretrial order may result in waiver).  "In order for a pretrial order to have any value as a procedural mechanism and to protect against the possibility of either of the parties being taken by surprise at trial, the parties must be held to the issues set forth in that order."  Harper v. Albert, 400 F.3d 1052, 1063 (7th Cir. 2005).  A pretrial order "superced[es] the pleadings and establishes the issues to be considered at trial."  SNA Nut Co., 302 F.3d at 732 (explaining "While this result may seem harsh, pretrial orders help to prevent protracted litigation due to changing theories and arguments such as those that we are encountering in this case").  This "strict rule of forfeiture" is

necessary to prevent either party from being taken by surprise at trial.  See Harper v. Albert, 400 F.3d 1052, 1063 (7th Cir. 2005).

The Defendants here made no mention of a qualified immunity defense in the pretrial order, including in the sections on contested issues of fact and law and discussion of damages.  See d/e 231. Defendants did not seek to amend the pretrial order at any time through the start of trial to include qualified immunity as a defense. The Defendants did raise qualified immunity in their second summary judgment motion.  See d/e 211.  After the motion was denied (d/e 217), the Defendants abandoned the defense, declining to pursue it in an interlocutory appeal and then failing to preserve it in the pretrial order.  See d/e 224 & 231.

The Court finds it appropriate to hold the parties to the claims and defenses contained in the final pretrial order.  Undoubtedly, the information in the pretrial order affected the Plaintiffs' trial strategy in terms of what evidence to present.  Because of this reliance during trial, the Court concludes it would be unfair to allow Defendants to raise qualified immunity at the close of all evidence and following the

13

verdict.   Accordingly,   the   Court   concludes   the   Defendants   have

forfeited the qualified immunity defense.[1]


### **Punitive damages**

The   Defendants   next   claim   that   punitive   damages   are   not

available on the basis that the issue was decided at the first trial.

<u>See</u> <u>id</u>. at 14-15.  That jury found in favor of all Defendants on the

question of liability under the Eighth Amendment and thus did not

separately address punitive damages.  <u>Id</u>. at 15. The Defendants note

that   at   the   second   trial,   Defendants   objected   to   submitting   the

punitive   damages   issue   to   the   jury   along   with   liability   under   the

Fourth   Amendment,   arguing   that   a   jury   already   determined   that

Plaintiffs   were   unable   to   prove   that   punitive   damages   were

appropriate.  <u>Id</u>.  The Defendants claim they renewed that argument

in their motion for judgment as a matter of law at the close of all

evidence.   <u>Id</u>.   The   Court   overruled   the   objection   and   submitted

---

[1] The Plaintiffs also contend that Defendants waived or forfeited specific qualified immunity challenges by failing to preserve them in a Rule 50(a) motion.  <u>See</u> d/e 288, at 26-28.  Additionally, the Plaintiffs argue the evidence at trial construed in favor of the verdict on liability was sufficient to overcome a qualified immunity defense.  <u>See</u> <u>id</u>., at 28-57.  Because the Court concludes that Defendants have forfeited the qualified immunity defense, the Court need not address those arguments.

punitive damages to the second jury and denied the motion for judgment as a matter of law.  Id.

In cases bought under § 1983, a jury may assess punitive damages if a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  In cases involving the Eighth Amendment, the level of culpability required for liability is the same as the general punitive damage standard.  See Walsh v. Mellas, 837 F.2d 789, 801 (7th Cir. 1988).  However, the "objectively unreasonable" standard of the Fourth Amendment is lower than that of the Eighth Amendment.  See Williams v. Rodriguez, 509 F.3d 392, 403 (7th Cir. 2007); Henry, 969 F.3d at 780.

Because the first jury found that Plaintiffs failed to act with the requisite mental state, the Defendants claim that jury necessarily resolved the question of punitive damages.  Id. at 16.  That jury would not have been able to award punitive damages by finding that Defendants violated the lower, objective standard of the Fourth Amendment but not the higher, subjective standard of the Eighth

Amendment. Id. at 15-16. The Defendants assert it was error for the question of punitive damages to be submitted to the second jury, and that portion of the verdict should be vacated. Id.

To the extent that Defendants claim issue preclusion bars the Plaintiffs from seeking punitive damages on the Fourth Amendment claims, the Court disagrees. Two of the elements that Defendants must establish are that "(1) the issue sought to be precluded must be the same as that involved in the prior litigation, [and] (2) the issue must have been actually litigated." E.E.O.C. v. AutoZone, Inc., 707 F.3d 824, 831. The availability of punitive damages on a Fourth Amendment claim was not litigated in the prior trial. Another element is that the "determination of the issue must have been essential to the final judgment." See AutoZone, 707 F.3d at 831. No determination of the availability of punitive damages under the Fourth Amendment was essential to the jury verdict on the Eighth Amendment claim. Accordingly, the Defendants are unable to establish issue preclusion foreclosing punitive damages on a Fourth Amendment claim.

At the trial on the Plaintiffs' Eighth Amendment claims, the parties presumably were cognizant of Eighth Amendment requirements in determining trial strategy. There was no reason for the parties to consider Fourth Amendment standards in attempting to establish punitive damages should be assessed or in defending against punitive damages. Because summary judgment had been entered in favor of Defendants on Plaintiffs' Fourth Amendment claim, the Plaintiffs did not have an opportunity to present a Fourth Amendment claim at the first trial. If the Plaintiffs were able to assert a Fourth Amendment claim at the first trial, the parties' trial strategies might well have been different. The Defendants cite no authority for the proposition that a defense verdict on liability for an Eighth Amendment claim preludes punitive damages on a Fourth Amendment claim.

Additionally, the Defendants acknowledge that the Fourth Amendment jury was correctly instructed that it could assess punitive damages if it found that a Defendant's conduct was "accompanied by ill will or spite" or "reckless disregard of Plaintiff's [Fourth Amendment] rights," because "Defendant simply did not care

about Plaintiff's safety or [Fourth Amendment] rights." <u>See</u> d/e 271, at 38.  The jury in the Fourth Amendment trial could have found that Defendants recklessly exceeded the permissible scope of a strip search, without finding their intent was to punish or humiliate, because they simply did not care about Plaintiffs' Fourth Amendment rights.  Even if the two verdicts were inconsistent, however, the Court concludes that the second verdict should take precedence given that Plaintiffs had an opportunity to present their Fourth Amendment claim at the second trial, and the jury was instructed on the applicable law.  Accordingly, the Court has no basis to find that the punitive damages issue was necessarily resolved by the first jury and should not have been submitted to the second jury.  The Court will deny this portion of Defendants' motion.

### **Compensatory damages**

The Defendants next allege that compensatory damages are not available under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), which bars compensatory damages for mental or emotional injuries without a prior showing of a physical injury or the commission of a sexual act.  <u>Id</u>.  A sexual act is defined in 18 U.S.C.

§ 2246 and is not at issue in this case.  The Defendants contend none of the Plaintiffs' allegations constitute a "physical injury," which is not defined in the PLRA and has not been defined by the Seventh Circuit.  Id. at 16-17.

The Defendants state that, at the close of evidence, Defendants moved for judgment as a matter of law on the basis that Plaintiffs had failed to allege a physical injury.  Id. at 17.  The Court denied that motion.  Id.  The Defendants argue this was error, as standing and wearing cuffs, even when applied too tightly, may be uncomfortable but does not constitute a physical injury that satisfies the PLRA.  Id.  On that basis, the Defendants claim the Court should vacate the award of compensatory damages.  Id.

The Defendants further allege that, assuming the Court viewed the issue of physical injury as one for the jury to decide, the Court erred in not instructing the jury on the PLRA limitation after Defendants submitted a proposed instruction that would have informed the jury of the PLRA limitation.  Id.  Ultimately, the Defendants claim that without such an instruction, the jury awarded compensatory damages for mental and emotional injuries without

determining if a physical injury occurred.  Id.  The Defendants ask the Court to vacate the award of compensatory damages or grant Defendants a new trial in which the jury is properly instructed regarding the PLRA.  Id.

The Defendants next allege that, to the extent the Plaintiffs claim that the PLRA does not apply because not all the Plaintiffs were incarcerated when the original complaint was filed, Plaintiffs' argument is contrary to the plain language of the statute.  Id.

The Court finds that Defendants waived their PLRA physical injury defense by failing to include it as a barrier to compensatory damages in the final pretrial order.  The Defendants did identify "whether Plaintiffs suffered damages" as a contested legal issue.  See d/e 231, at 5.  However, that framing of the issue is far broader than whether the physical injury provision precluded compensatory damages.  Defendants did not identify the physical injury requirement in the final pretrial order even though Plaintiffs indicated they were seeking damages for "emotional injury including humiliation, embarrassment, shame, and degradation, as well as

20

damages associated with the violation of their constitutional rights."
<u>See</u> d/e 231, at 6.

Before trial, the parties eventually agreed that liability and
damages should be decided at the trial.   <u>See</u> d/e 247 & 252.
However, the Defendants did not seek to amend the pretrial order to
add a legal or factual issue regarding physical injury or address the
issue prior to trial.  Because the issue was not properly preserved in
the final pretrial order, the Court finds that the physical injury
defense, like qualified immunity, has been forfeited.

Additionally, the Defendants did not raise the physical injury
defense in their summary judgment motions.  Defendants did not
raise a challenge based on the PLRA's physical injury requirement in
the first round of summary judgment briefing.  <u>See</u> d/e 102 & 103.
On appeal, the Defendants attempted to raise the issue but the
Seventh Circuit declined to reach it stating:

> Defendants moved for summary judgment. . . . Defendants did
> not  . . . argue that Plaintiffs failed to present evidence of
> physical injury pursuant to the Prison Litigation Reform Act . .
> . .
> Defendants did not raise this argument below, and therefore
> have waived it for purposes of this appeal. . . .

Because the district court granted summary judgment on Plaintiffs' Fourth Amendment claim, it did not assess any of these arguments pertaining to the availability of remedies as to that claim. We thus also leave these issues for the district court's initial determination on remand.

Henry, 969 F.3d at 775, 787. Following the mandate, Judge Mills set a dispositive motion deadline of December 18, 2020, at which time any issues consistent with the Seventh Circuit's Opinion were to be addressed. See Text Order of Sept. 29, 2020. However, the Defendants did not raise the physical injury requirement challenge in their second summary judgment motion. See d/e 211.

The Defendants obviously knew they had attempted to raise the physical injury requirement challenge before the Seventh Circuit. However, the issue was not raised in the summary judgment motion following the mandate. Accordingly, the issue was also waived or forfeited at this stage.[2]

---

[2] It appears that the physical injury requirement challenge was first raised approximately one week before jury selection in the Eighth Amendment trial. See d/e 144, Pls. MIL No. 9. Plaintiffs immediately asserted waiver. Id. The Court denied the motion as premature because damages had been bifurcated. See d/e 157, at 4. Although the issue was never adjudicated, this appears to be another basis for finding that Defendants waived the PLRA physical injury defense.

For all of these reasons, the Court concludes that the physical injury requirement has been forfeited.

### Case as a class action

The Defendants next claim that the case proceeded improperly as a class action.  <u>See</u> d/e 273, at 18.  At the second trial, the Plaintiffs called as witnesses both damages class representatives (Phillips and Morris) and both injunctive class representatives (Ieshia Brown and Howard), as well as two non-representative class members.  <u>Id</u>.  The Defendants claim that the jury was not instructed which witnesses were damages class representatives, and all six were included on the verdict form without distinction.  <u>Id</u>.

The Defendants state that, at the close of all evidence, Defendants objected to the class as certified as part of their motion for judgment as matter of law.  <u>Id</u>.  Defendants claim that trial evidence showed the damages class representatives were not typical of the class.  <u>Id</u>.  The Court denied Defendants' motion.  <u>Id</u>.

The Defendants further allege that, the damages class representatives—Phillips and Morris—did not have experiences on March 31, 2011, that were typical of the other class members.  <u>Id</u>.

Neither Phillips nor Morris testified that any of the Defendants put the cuffs on them, had any knowledge that the cuffs were too tight, or were requested to loosen the cuffs; neither class representative testified that Defendants told them they could not sit; and neither testified about the denial of the bathroom and the unhygienic conditions during the searches. Id. at 18-19. Therefore, the Defendants claim that the representatives were not typical of the class and all class members were not subjected to the same set of conditions. Id. at 19. Citing Federal of Civil Procedure 23(c)(1)(C), the Defendants note that an order granting or denying class certification can be amended at any time before entry of judgment. Id. at 18.

The Defendants further claim the Court erred in including all six class members on the verdict form without distinguishing as to who was a class representative and in refusing to instruct a  jury what to do if it did not believe each representative had proved her case. Id. at 19. Defendants seek a new trial with proper instructions regarding the class representatives and their burden of proof. Id.

As the Plaintiffs note, the Defendants' arguments regarding class action  procedure are conclusory, unsupported by record citation, and almost entirely devoid of authority.[3]  <u>See</u> d/e 288, at 77. The Defendants' challenges to commonality and typicality are unsupported.  Defendants make allegations about handcuffing, standing and hygiene without citing to the record.  In 2013, the Court certified the class over Defendants' objections, finding the class representatives' experiences typical of the class.  <u>See</u> d/e 68, at 8 and 87, at 7-8.  Defendants did not ask the Court to reconsider that ruling or seek a Rule 23(f) appeal of the class certification ruling.  Between 2013 and the close of evidence at the June 2022 trial, the Defendants did not challenge commonality or typicality or seek decertification or disqualification of any class representatives.  Defendant also did not raise such issues in their first summary judgment motion, at any time prior to the Eighth Amendment trial, or immediately following the Eighth Amendment trial.

---

[3] The Defendants do cite Federal Rule of Civil Procedure 23(c)(1)(C) for the proposition that an order denying or granting class certification can be altered or amended any time before entry of judgment.

When the Seventh Circuit initially considered the Plaintiffs' appeal of the dismissal of the Fourth Amendment claims, the Defendants did not raise any issue as to certification. After rehearing *en banc* was granted, the Defendants did raise the issue, stating: "Even if plaintiffs were to survive summary judgment on their Fourth Amendment theory and overcome the bar on compensatory and punitive damages, the damages class would have to be de-certified because the summary judgment evidence established that the inmates had not presented questions of law or fact common to the class." <u>See</u> Case No. 16-4234 (7th Cir.), at 56. The Seventh Circuit declined to consider the issue because it was outside the scope of the court's review absent a cross-appeal. <u>See</u> <u>Henry</u>, 969 F.3d at 787.

On remand, the parties were given the opportunity to file dispositive motions. <u>See</u> Text Order of Sept. 29, 2020. The Defendants did not raise any challenges to the class action procedure in their second summary judgment motions. <u>See</u> d/e 211, 241. Moreover, Defendants did not challenge the certification or typicality of class representatives in any other pretrial filing. The Defendants had no objection to the substitution of Veela Morris and Miranda

Heyward as class representatives in place of previous representatives.  <u>See</u> d/e 226, at 2; Text Order of Dec. 17, 2021; Text Order of May 18, 2022.  Additionally, the Defendants proffered no objection to class action procedures in the final pretrial order [d/e 231].  The parties agreed on the class action damages instruction and jointly submitted the instruction.  <u>See</u> d/e 270, at 28, adopted by Court at 288-1, 6/6/2022 Trial Trans. Excerpts, at 9:17-9:20.  Only after the close of evidence did Defendants, for the first time, raise an issue about the class representatives.  Based on the foregoing, the Court concludes that Defendants have forfeited any challenges to class certification through their delay, their omission of such challenges in the pretrial order, and their contrary stipulations.  Accordingly, any challenge to class action procedures--including any challenge to damages representatives, injunctive representatives, testifying class members, and verdict forms—has been forfeited.

### <u>Jury instruction on deference to prison administrators</u>

The Defendants next allege the Court erred in not instructing the jury on the deference owed to prison administrators.  <u>Id</u>.  "When evaluating reasonableness, in the context of strip searches of

prisoners as in others, courts must afford prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Henry, 969 F.3d at 783 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).  The Defendants claim the Court erred in refusing Defendants' jury instruction that conveyed that information, and a new trial should be granted with an appropriate instruction on the issue.  Id. at 19-20.

The Court rejected proposed instructions from the Plaintiffs and Defendants and gave the following instruction:

> Prison officials may conduct strip searches for the purpose of preserving safety, security, discipline, and order.  Even strip searches that are conducted to serve those legitimate purposes must be carried out in a reasonable manner.

> In deciding whether the strip searches in this case were unreasonable you should consider all the circumstances, including the scope of the intrusions, the manner in which the strip searches were conducted, the justification for conducting the strip searches, and the place in which the strip searches were conducted.

> You must decide whether the Defendants you are considering subjected Plaintiffs to unreasonable strip searches from the perspective of a reasonable officer facing the same circumstances that the Defendant faced.  You must make this decision based on what the Defendant knew at the time the strip

searches were conducted, not based on matters learned after
the strip searches were conducted.

<u>See</u> d/e 271, at 32-33.  Although the Defendants initially objected to this instruction before the final two sentences were added, the Defendants stated they had no objection after those sentences were included.  <u>See</u> d/e 288-1, at 20:7-21:4; 288-14, at 6:9-6:25.  Because the Defendants agreed to this instruction as an accurate statement of the law, Defendants cannot show the Court erred in giving it.  <u>See</u> <u>Doe v. Johnson</u>, 52 F.3d 1448, 1460 (7th Cir. 1995) ("[I]n a civil case, a litigant may not attack an instruction of which he was the proponent.").    Accordingly, the Court concludes that Defendants have forfeited a challenge to instructing the jury regarding the deference owed to prison administrators.

## CONCLUSION

The Court concludes that each of the Defendants' challenges to the jury verdict are either forfeited or fail on the merits.  Accordingly, the Court will deny the motion for judgment as matter of law under Rule 50(b) or, alternatively, for a new trial under Rule 59.

For the reasons stated herein, the Defendants' Renewed Motion for Judgment as a Matter of Law or, in the alternative, for a New Trial [d/e 273] is DENIED.

ENTER: October 25, 2022

/s/ *Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE