**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | | |
|---|---|---|---|
| PATRICIA PHILLIPS, et al., | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| -vs- | ) | No. | 12-3087 |
| | ) | | |
| MELODY HULETT, et al., | ) | | |
| | ) | | |
| Defendants. | ) | | |

**<u>PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL</u>**
**<u>OF PROPOSED CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

    I.      FACTUAL SUMMARY AND PROCEDURAL HISTORY ................................. 2

    II.     OVERVIEW OF THE PROPOSED SETTLEMENT AGREEMENT ................. 5

          A.     The Settlement Class.................................................................................. 5

          B.     The Settlement Fund and Compensation to Class Members ...................... 6

          C.     Policy Changes as a Precondition to Settlement........................................ 7

          D.     Notice ........................................................................................................ 7

          E.     Claims Administration .............................................................................. 8

          F.     Opt-Outs and Objections........................................................................... 8

          G.     Release of Claims ..................................................................................... 9

          H.     Named Plaintiffs' Incentive Awards......................................................... 9

          I.     Attorneys' Fees and Costs ........................................................................ 9

    III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMNARY
          APPROVAL ....................................................................................................... 10

          A.     The Proposed Settlement Agreement is a Fair and Reasonable
                  Resolution of this Action ........................................................................ 10

           B.     Further Litigation Would be Lengthy, Costly, and Complex ................... 11

           C.     The Proposed Settlement Agreement is Endorsed by Class Counsel ........ 12

    IV.    THE PROPOSED NOTICE PLAN SATISFIES THE REQUIREMENTS OF
          DUE PROCESS................................................................................................ 12

    V.    THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS
          OF RULE 23 AND WARRANTS CERTIFICATION FOR SETTLEMENT
          PURPOSES........................................................................................................ 13

CONCLUSION.............................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Abrams v. Van Kampen Funds, Inc.*, No. 01 C7538, 2006 WL 163023
(N.D. Ill., Jan. 18, 2006) ............................................................................................10

*Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983) .......................................14

*Bullock v. Sheahan*, 225 F.R.D. 227 (N.D. Ill. 2004) ................................................14

*Calvin v. Sheriff of Will County*, No. 03 C 3086, 2004 WL 1125922
(N.D. Ill. May 17, 2004) .............................................................................................14

*Henry v. Hulett* (a.k.a. *Throgmotion/Phillips*), Public Docket,
Case No. 16-4234 (7th Cir.)..........................................................................................3

*Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020)............................................................4

*In re AT & T Mobility Wireless Data Services Sales Litigation*, No. 10 cv 2278,
2010 WL 3190108 (N.D. Ill. Aug. 11, 2010) .............................................................15

*In re Nassau County Strip Search Cases*, No. 99 cv 2844, 2010 WL 3781573
(E.D.N.Y. Sept. 22, 2010)...........................................................................................11

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)...............................................................10

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005)................................11

*Philips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)..............................................12

*Schaffer, et al. v. County of Alameda, et al.*, No. 3:06-0310 (N.D. Cal.) ...................11

*Uhl v. Thoroughbred Technology and Telecommunications*, Inc., 309 F.3d 978
(7th Cir. 2002)............................................................................................................13

*Young v. Cook County Jail*, No. 1:06-cv-00552 (N.D. Ill.) ........................................11

## RULES

Federal Rule of Civil Procedure 23(a) .......................................................................14

Federal Rule of Civil Procedure 23(b)(3) ...........................................................6, 14, 15

## INTRODUCTION

Plaintiffs Patricia Phillips, Ieshia Brown, Veela Morris, and Miranda Howard, on behalf of themselves and a class of others similarly situated, respectfully submit this memorandum of law in support of their motion for preliminary approval of proposed class action settlement. The Settlement Agreement the Parties have tendered to the Court is the product of nearly twelve years of aggressive litigation.  Plaintiffs consistently pushed hard on behalf of the class members, first in discovery, then at class certification, through one round of summary judgment briefing, one jury trial, an interlocutory appeal, a successful *en banc* petition, a second round of summary judgment briefing, a second trial, and post-judgment briefing.  Plaintiffs ultimately prevailed at trial on their Fourth Amendment claims against Defendants Warden Melody Hulett, Assistant Warden Russell Reynolds, Tac Commander Troy Dawdy, and Training Instructor Renee Hatfield. As a result, they have achieved a very good result for the class of 191 confirmed class members:  a settlement of $1.4 million in compensation for the class, strip search policy changes agreed to by the Illinois Department of Corrections as an advance precondition to settlement, plus additional compensation for litigation expenses to date, costs to pay the Claims Administrator and execute the settlement, and attorney's fees, with the total recovery not to exceed $3 million. A copy of the Settlement Agreement is attached as Exhibit 1 to the accompanying motion.

The Court should approve the Settlement Agreement because it represents a fair and arm's length resolution of the claims, achieved through active litigation, and it provides substantial benefits to the class.  In accordance with the necessary procedures, Plaintiffs request that the Court enter an order that (1) preliminarily finds that the settlement is fair to the class; (2) certifies the proposed Settlement Classes under Rule 23; (3) provides for sending notice to the

1

class members per the proposed Notice Plan; and (4) sets a date for a fairness hearing and final approval of the Settlement Agreement, on or after December 1, 2023.[1]

## I.       FACTUAL SUMMARY AND PROCEDURAL HISTORY

This case arose from a public group strip search during a cadet training exercise at Lincoln Correctional Center on March 31, 2011. Plaintiffs filed their initial complaint in March 2012 seeking to represent a Rule 12(b)(3) damages class of persons who were subjected to the public group strip search at Lincoln Correctional Center. Dkt. 1, Complaint. Plaintiffs amended their complaint multiple times, including to include injunctive relief (Dkts. 24 & 25), to add the names of defendants identified through initial discovery (Dkts. 33 & 34), and to add allegations regarding a group strip searches during a cadet training exercise in October 2013 at Logan Correctional Center (Dkt. 73). They also engaged in class certification discovery, including preparing and collecting declarations from dozens of class members. *E.g.*, Dkt. 36-2.

In March 2013, Plaintiffs moved for class certification. Dkt. 36. In July 2013, the Court granted the motion in part, certifying a damages class but declining to certify an injunctive class. Dkt. 68. Plaintiffs submitted a renewed class certification motion in March 2014. (Dkts. 80-81), which was granted in October 2014 (Dkt. 87).

After successfully moving for class certification, Plaintiffs engaged in merits and expert discovery.  Among other matters, Plaintiffs deposed Defendants and Rule 30(b)(6) witnesses, obtained and digested documents, and filed motions to compel the Defendants' emails regarding the March 31, 2011 public group strip search. *E.g.*, Dkt. 104.

Following the close of discovery, in November 2015, Defendants filed for summary

---

[1] The settlement agreement asks that the fairness hearing be set approximately 105 days after the Court's entry of preliminary approval of the settlement – 60 days for expiration of the opt-out/objection deadline (Section 1.7), plus another 45 days (Section 3.14).

judgment on Plaintiffs' Eighth Amendment and Fourth Amendment claims and on Plaintiffs' claims for injunctive relief.  Dkts. 102 & 103. Defendants moved for summary judgment on Plaintiffs' Fourth Amendment claims on the basis that "Prisoners have no right of privacy under the Fourth Amendment." Dkt. 103 at 7. Defendants sought dismissal of Plaintiffs' Eighth Amendment claims on the basis that Plaintiffs presented insufficient evidence of their personal involvement.  Dkt. 103 at 9-11; Dkt. 122 at 5.  In their 65-page response to summary judgment, Plaintiffs opposed dismissal of the claims and martialed evidence in support. Dkt. 109-1. Plaintiffs' evidence included declarations from women subjected to the cadet training exercise, documentary records from Lincoln, deposition testimony from the Defendants, and the opinions of Plaintiffs' correctional expert, Wendy Still, regarding generally accepted correctional standards and practices. *Id.* The district court allowed the Eighth Amendment claims to go forward, but dismissed the Fourth Amendment claims, ruling that, pursuant to Seventh Circuit precedent, convicted prisoners lacked Fourth Amendment rights against unreasonable strip and body cavity searches absent a probing by the searching official. Dkt. 122 at 15.

The case went to trial on Plaintiffs' Eighth Amendment damages claims against defendants including Warden Melody Hulett, Assistant Warden Russell Reynolds, Training Instructor Renee Hatfield, and Tac Team Commander Troy Dawdy. Text Order of Nov. 9, 2016. The jury trial lasted over a week and included more than 15 witnesses.  The jury found in favor of Defendants on Plaintiffs' Eighth Amendment claims. Dkt. 177, 181.

In December 2016, Plaintiffs appealed the dismissal of their Fourth Amendment claims. Dkt. 186; *Henry v. Hulett*, Public Docket, Case No. 16-4234 (7th Cir.). Following briefing and oral argument, in July 2019, a split appeals panel affirmed dismissal of the Fourth Amendment claim, holding that, in prisons, the Fourth Amendment reached only reached "procedures that

3

entail intrusions within prisoners' bodies" by the searching official. Dkt. 38 in Case No. 16-4234, at 3-4.

Plaintiff filed a petition for *en banc* rehearing, which was supported by six different amicus briefs. Dkt. No. 42 (petition); Dkt. Nos. 63-68 (amicus briefs in support of rehearing) in Case No. 16-4234.  The Seventh Circuit granted rehearing *en banc*. Dkt. 78 in Case No. 16-4234. After another round of briefing and oral argument, the Seventh Circuit Court of Appeals, sitting *en banc*, reversed and reinstated Plaintiffs' Fourth Amendment claims, holding that convicted prisoners retain Fourth Amendment rights against unreasonable strip searches.  *Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020).

In December 2020, Defendants filed a second summary judgment motion, asserting a qualified immunity defense to the Fourth Amendment claim based on a change in the law. Dkt. 211. Plaintiffs filed a 47-page response (Dkts. 214 & 215), and the Court denied the motion in August 2021 (Dkt. 217).

In May 2022, Plaintiffs proceeded to trial for this class on Fourth Amendment claims. After 7 days of trial and the testimony of more than 15 witnesses, the jury returned a liability verdict in favor of the Plaintiff class, and against four of five defendants, on their Fourth Amendment claims.  Dkt. 261. The jury awarded each of the six testifying class members and representatives $20,000 in compensatory damages and $5,500 in punitive damages.

Defendants filed post-trial motions. Dkt. 273. Among the arguments raised were Defendants' challenges that the Plaintiffs were not entitled to any compensatory damages absent a finding of a physical injury, and that Plaintiffs were not entitled to punitive damages on the Fourth Amendment claims given the jury's verdict in the Defendants' favor as to Plaintiffs' Eighth Amendment claims.  Plaintiffs responded with an 87-page filing (Dkt. 288), and the

4

district court denied the post-trial motions (Dkt. 289). Plaintiffs conducted additional discovery into their injunctive claims, including moving to compel outstanding discovery. *E.g.*, Dkt. 293.

The parties conferred on a procedure for determination of damages and presented competing proposals to the Court.  Dkt. 281. Defendants asked the district court to stay damages trials and instead certify questions for interlocutory appeal (Dkt. 298), which Plaintiffs opposed (Dkt. 300), and the Court denied (Dkt. 303).

Facing the impracticability of handling individual damages trials for each member of so large a class, the parties resumed communications to reach a potential settlement but were initially unsuccessful. With the substantial assistance of this Court at numerous mediated sessions over a period of over three months, the parties finally reached a settlement on April 5, 2023. *See* Text Order of 11/3/2022 (case referred to mediation); Text Order of 1/9/2023 (settlement conference held); Text Order of 2/23/2023 (settlement conference held); Text Order of 2/24/2023 (settlement conference held); Text Order of 3/21/2023 (settlement conference set). Text Order of 4/5/2023 (settlement reached). Over the months that followed, the parties worked to memorialize the settlement (see, e.g., Dkt. 309, 310, 313), and now submit it to the Court for preliminary approval.

## II.    OVERVIEW OF THE PROPOSED SETTLEMENT AGREEMENT

Along with this motion, Plaintiffs have attached the Settlement Agreement (Exhibit 1) and attachments to that agreement (Exhibits 1-A through 1-E).  A general summary of the proposed Settlement Agreement is as follows:

### A.    The Settlement Class

The proposed settlement class is defined as follows: "All individuals who were subjected to the March 31, 2011 public group strip search at Lincoln Correctional Center."  Exh. 1,

5

Settlement Agreement, at 1.10.  The Court has already certified a substantially similar class in the context of the litigation, finding that the class satisfies the requirements for a Rule 23(b)(3) class.  *See* Dkt. 87 at 2-4; Dkt. 68 at 7-9. As discussed further in Section V, the proposed settlement class also satisfies the requirements for certification for purposes of settlement.

### B.    The Settlement Fund and Compensation to Class Members

The proposed Settlement Agreement creates a $3 million dollar settlement fund to pay compensation to class members, to provide incentive awards to certain class representatives and members, to fund notice and settlement administration costs, to repay costs incurred to date, and to award attorneys' fees for twelve years of litigation.

The precise amount of each class member's payment from the $1.4 million fund will not be known until the total number of approved claimants, and the total value of incentive awards allowed by the Court and claimed by eligible recipients, have been determined. However, assuming that all incentive awards requested are approved and claimed, settlement class members are currently expected to receive the following amounts based on the claims rates below:

- Class members: $7,535 (85% claims rate)

- Class members: $10,675 (60% claims rate)

- Class members: $14,233 (45% claims rate)

If fewer claimants than expected submit claims, then the actual payment to class members may be increased.

The proposed Settlement Agreement provides that Settlement Class members will receive their monetary awards shortly after the entry of a final order approving the settlement (and assuming there is no appeal), with checks disbursed by the Claims Administrator.  The Settlement Agreement provides that this Court will retain continuing and exclusive jurisdiction

6

over the Settling Parties to this Agreement, including all Class Members, for the purpose of the administration and enforcement of this Agreement, until all aspects of this Agreement are fully resolved.

### C.       Policy Changes as a Precondition to Settlement

Prior to finalization of the settlement, and as a precondition for the settlement, the Parties negotiated and agreed upon certain policy changes in the Illinois Department of Corrections' confidential strip search policies relating to privacy during strip searches, strip searches of prisoners who are menstruating, and a prohibition on the conduct of strip searches for the sole purpose of training. The policy issues were raised during the settlement conferences and the final policy language was agreed by the Parties as of June 20, 2023, as reported to the Court during the June 30, 2023 status.

### D.       Notice

The Parties have also agreed to a Notice Plan that the parties support as being the best practicable plan to apprise class members of the Settlement Agreement, and of their rights to submit a claim for payment, exclude themselves, or object to the Settlement Agreement.  Using Illinois Department of Corrections housing records, the parties have agreed on a Class List that reflects 191 confirmed class members. *See* Exhibit 1-E (filed under seal). The Notice Plan involves mailing individual notice packets to those class members at their last known addresses, conducting skip-tracing and additional efforts for returned mail, and establishing a designated website and call center.  The mailed notice packets include the class notice, attached as Exhibit 1-B, which includes detailed information to class members about their rights under the Settlement Agreement.  Plaintiffs' Class Counsel will maintain a designated website on which the Notice and other settlement documents will be posted.  Individuals will also be able to

download a Claim Form from the website.  As discussed further in Section IV, the Parties'
Notice Plan satisfies the requirements of due process and apprises Settlement Class members of
their rights to submit a claim, to exclude themselves from the Settlement Agreement, and/or to
file an objection.

### E.    Claims Administration

The Parties have agreed to use of a claims administrator, Rust Consulting, Inc. ("Rust").
Both Parties believe Rust will provide professional, competent and neutral service.  Rust has
many years of experience in settlement claims administration and has a proven record of
achieving high claims rates.  The Parties have agreed to the procedures and documents that Rust
will use to validate the claims.

In addition, Class Counsel will be hosting two public clinics during the claims period.
Class members can attend, ask questions and receive assistance filling out claim forms.  The
clinics will be held at Plaintiff's counsel's office at Loevy & Loevy in Chicago. The clinic
information will be provided to the class members in the mailed notice and on the website.

### F.    Opt-Outs and Objections

Settlement Class members will have sixty (60) days from the mailed notice date to
request exclusion from the Settlement Classes or to file an objection to the Settlement
Agreement.  For Settlement Class members whose Mailed Notice and/or Claim Form is returned
as undeliverable but for whom the claims administrator subsequently obtains a current address,
the claims administrator will re-mail the Mailed Notice and Claim Form to the current address.
The deadlines for any such Class Members, including the date by which a Claim Form must be
postmarked and any objection or exclusion must be received by, will be extended by fourteen
(14) days.

### G.     Release of Claims

The Settlement Agreement provides that all members of the Settlement Class, who have not properly or timely excluded themselves, will release the Defendants from any and all claims, demands, rights, causes of action, compensatory and punitive damages, attorneys' fees, costs, debts that could have been, or were asserted in the lawsuit or that arise out of the public group strip search on March 31, 2011 at Lincoln Correctional Center.

### H.     Named Plaintiffs' Incentive Awards

The settlement allows for incentive awards, subject to the Court's approval, to be paid from the Settlement Fund, for class members who served as class representatives, testified at either of the two trials in the case, or who prepared and appeared at trial to testify but were not called to testify. The amounts of the incentive awards are: $15,000, for longstanding class-representatives who also testified at trial; $10,000 for class members who either testified at trial, served as class representatives for a shorter period of time, or both; and $2,000 for class members who prepared and appeared to testify but were not called.

### I.     Attorneys' Fees and Costs

The Settlement Agreement further provides that Class Counsel may petition the Court for an award of their actual costs incurred to date in this litigation and the costs that will be incurred to effectuate the settlement and for the Claims Administrator (up to $125,000); and up to $1.475 million in attorney's fees for more than twelve years of representation, including two trials and appellate proceedings that included *en banc* rehearing.

### III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Court should approve the proposed Settlement Agreement because it provides substantial monetary relief to the Settlement Classes.  Further, settlement was a reasonable decision due to the time, expense, and impracticability of trying individual damages claims for the entire class.  Accordingly, the proposed Settlement Agreement provides a reasonable and fair resolution of the claims.  Moreover, "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citations omitted).

Before final approval of the proposed Settlement Agreement, the Court will need to evaluate the following factors as they may apply: (1) the strength of the Plaintiffs' case compared to the amount of the settlement offer; (2) an assessment of the likely complexity of a trial; (3) the length and expense of the litigation; (4) the amount of opposition to settlement among affected Parties; (5) the opinion of competent Counsel; and (6) the stage of the proceedings and amount of discovery completed at the time of settlement.  *Isby*, 75 F.3d at 1199-1200; *Abrams v. Van Kampen Funds, Inc.*, No. 01 C7538, 2006 WL 163023, at *1 (N.D. Ill., Jan. 18, 2006) (analyzing the above factors for final approval of a class action settlement).  Each of the relevant factors also supports the Court's preliminary approval of the proposed Settlement Agreement.

### A.    The Proposed Settlement Agreement is a Fair And Reasonable Resolution of this Action

Under the Settlement Agreement, all class members who submit valid claims will receive monetary payments.  Although the exact amounts cannot be determined until the end of the claims period, Class Counsel estimates that class members will receive payments between approximately $7,535 (85% claims rate) and $14,233 (45% claims rate). The Settlement Class members' monetary award provides adequate compensation and is far greater than settlements

that other courts have approved as fair in strip search cases. *See, e.g., In re Nassau County Strip Search Cases*, No. 99 cv 2844, 2010 WL 3781573, at *25 (E.D.N.Y. Sept. 22, 2010) (awarding $500 as general damages per arrest after a bench trial on damages); Class Notice, *McBean v. City of New York*, 228 F.R.D. 487, 494-95 (S.D.N.Y. 2005) (class members awards of $750 if strip-searched once or $1,000 if strip-searched two or more times) (attached as Exhibit 2); Class Notice, *Schaffer v. Alameda County*, No. 06 cv 310 (awarding $200, $1,000 or $1,500 per strip search depending on class membership for up to two arrests) (attached as Exhibit 3); Class Notice, *Young v. Cook County Jail*, No. 1:06-cv-00552 (N.D. Ill.) (dkt. 624-3 (awarding expected payments of $500, $700, and $1000 for strip searches) (attached as Exhibit 4).

The Settlement Agreement also provides for all administration and notice expenses, as well as incentives, costs, and attorney's fees. Defendants are contributing $3 million dollars in total to pay these sums.

### B.     Further Litigation Would Be Lengthy, Costly and Complex

If the parties were to continue to litigate this action through individual damage trials, each side would expend considerable time and money in prosecuting and defending their positions. Moreover, as a practical matter, these trials would take years and years to complete. There are approximately 200 individuals in the Settlement Class, and those trials will require adjudication of both compensatory and damages claims. Even if each trial lasted just 2 days (and they are likely to take longer), it would take multiple years just to try the claims of the class members, not even considering the Court's busy schedule. Needless to say, most of the class members would never obtain any relief, and the total expense to try the cases for those lucky ones who did get to trial would be enormous. By contrast, the proposed Settlement Agreement provides compensation now to all of the class members who wish to submit a claim.

In addition, Defendants have raised challenges to the liability verdict and to damages, including that the Plaintiffs are not entitled to any compensatory damages at all due to the physical injury provision of the Prison Litigation Reform Act, and that Plaintiffs are not entitled to punitive damages on the Fourth Amendment claims given the defense verdict on Plaintiffs' Eighth Amendment claims. Accordingly, it is in the interest of Plaintiffs to avoid any possible appeal of the determinations in their favor.

###           C.      The Proposed Settlement Agreement Is Endorsed by Class Counsel

Class Counsel supports the proposed Settlement Agreement as a fair and reasonable resolution of the action.  Counsel has reached this opinion after careful consideration of the risks and benefits of further litigation, including any appeals that Defendants might take.  Moreover, Class Counsel supports the agreed Notice Plan as providing the best practicable means to reach potential settlement class members, as well as the claims procedures for individuals to submit claims and receive compensation.  Class Counsel is also satisfied that the monetary relief in the proposed Settlement Agreement provides adequate compensation that exceeds that in other strip search settlements.

### IV.    THE PROPOSED NOTICE PLAN SATIFIES THE REQUIREMENTS OF DUE PROCESS

The parties have negotiated a Notice Plan that is the "best practicable [plan], reasonably calculated under the circumstances to apprise interested parties of the pendency of the action" so that they can exclude themselves, object, get more information about the action, or present their claims. *See Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  The proposed Notice Plan has been designed to reach as many potential class members as possible.  The parties have cooperated to agree on a class list of 191 confirmed class members, using housing records of the Illinois Department of Corrections. Exhibit 1-E (under seal). The Illinois Department of

12

Corrections has provided its last known contact information for each confirmed class member; in addition, Class Counsel has communicated with numerous class members for over a decade; has solicited information from class members on contact address changes; and has maintained organized records on class members' contact information. The Notice Plan involves mailing individual notice packets to those class members at their last known addresses, conducting skip-tracing and additional efforts for returned mail, and establishing a designated website and call center.

The Notice Plan also establishes a call center accessible through a toll-free telephone number that individuals may call to have their questions answered and assist with filling out a claim form as well as a non-toll-free number accessible to incarcerated individuals. Plaintiffs' Class Counsel will maintain a designated website on which the Notice and other settlement documents will be posted. Individuals will also be able to download a Claim Form from the website. In addition, Class Counsel will be hosting two clinics at the offices of Loevy & Loevy to answer questions and assist members in filling out their Claim Form. The dates of these clinics will be announced in the Notice. The Parties agree that the Notice Plan is the best practicable plan.

## V.   THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND WARRANTS CERTIFICATION FOR SETTLEMENT PURPOSES

The proposed Settlement Class satisfies Rule 23's requirements for certification of a settlement class. *See Uhl v. Thoroughbred Technology and Telecommunications*, Inc., 309 F.3d 978, 985 (7th Cir. 2002) ("the Supreme Court [has] emphasized that although settlement is relevant to class certification, the requirements of Rule 23 must still be satisfied"). Indeed, the

Court has already certified a substantially similar class as a litigation class under Fed. R. Civ. P. 23(b)(3). *See* Dkt. 87 at 2-4; Dkt. 68 at 7-9.

The Settlement Class meets the four prerequisites under Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  The Parties estimate that up to 200 unique individuals are members of the class, having been housed at units 2B and 4B at Lincoln Correctional Center, which each held up to 100 persons, on March 31, 2011. The Parties have identified 191 confirmed class members based on Illinois Department of Corrections records and have agreed on a procedure to use Illinois Department of Corrections records to verify claims submitted by persons not on that list.

Likewise, there are common factual and legal questions on the class members' claims because each claim arises from a public group strip search. Dkt. 87 at 2-4; Dkt. 68 at 7-9. Indeed, courts have repeatedly held that "class actions challenging blanket strip search policies satisfy Rule 23(a)(2)'s commonality requirement." *Id.* (citing *Bullock v. Sheahan*, 225 F.R.D. 227, 229 (N.D. Ill. 2004)).  *See also Beth G. v. City of Chicago*, 723 F.2d 1263, 1267 (7th Cir. 1983) (class challenge to police department strip search policies); *Calvin v. Sheriff of Will County*, No. 03 C 3086, 2004 WL 1125922, at *3 (N.D. Ill. May 17, 2004) (same, jail policies).  Relatedly, the Named Plaintiffs' claims are typical of the claims of the class members, and each of the Named Plaintiffs testified at the recent trial of Plaintiffs' Fourth Amendment claims.  Finally, the Named Plaintiffs and Class Counsel adequately represent the interests of settlement class members.  As stated above, the Court has already found that the class satisfies all the prerequisites of Rule 23(a). Dkt. 87 at 2-4; Dkt. 68 at 7-9.

The Settlement Class also meets the requirements for certification under Rule 23(b)(3). Common questions predominate over any questions affecting only individual members and class

14

resolution is superior to individual lawsuits.  *See*, *e.g.*, *In re AT & T Mobility Wireless Data Services Sales Litigation*, No. 10 cv 2278, 2010 WL 3190108, at *9 (N.D. Ill. Aug. 11, 2010) (applying Rule 23(b)(3) standards for certification to preliminarily certify class action for settlement purposes).  The class members were subject to a single public group strip search training exercise, on the same day, at the same correctional facility; they have suffered the "same core injury" (Court Order, Dkt. 87 at 3); and they all rely on the same legal theories and facts to prove their case.

Finally, a class action is superior to individual litigation here because class members' claims arise from the Defendants' common strip search practice during a group strip search on March 31, 2011, and individual actions are impracticable, time-consuming, and costly to pursue. Judicial economy also supports preliminarily certifying the settlement classes for purposes of this class action settlement.

## CONCLUSION

For the foregoing reasons, the Court should: (1) grant preliminary approval of the proposed Settlement Agreement; (2) preliminarily certify the settlement class; (3) order that notices be sent to the Settlement Class per the Notice Plan; and (4) set a date for the final approval hearing on or after December 1.


Dated: August 11, 2023


RESPECTFULLY SUBMITTED,

/s/ Ruth Brown
*Attorney for Named Plaintiffs and*
*Settlement Classes*

Ruth Brown
Russell Ainsworth
Michael Kanovitz
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900

### CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(B)(4), the undersigned counsel certifies that this memorandum complies with the type volume limitations of Rule 7.1(B)(4), because it contains 4,289 words, including footnotes, as determined by Microsoft Word.

/s/ Ruth Brown_____

### CERTIFICATE OF SERVICE

I, Ruth Brown, an attorney, certify that on August 11, 2023, I caused the foregoing to be served on all counsel of record via CM/ECF electronic filing.

/s/ Ruth Brown_____